## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

KENNETH COLE,                    )
                                 )
             Plaintiff,          )
                                 )
        v.                       )          C.A. No. 05-270  KAJ
                                 )
DELAWARE TECHNICAL AND           )
COMMUNITY COLLEGE,               )
                                 )
             Defendant.          )

## DELAWARE TECHNICAL AND COMMUNITY COLLEGE'S
## ANSWER AND AFFIRMATIVE DEFENSES
## TO COMPLAINT

### INTRODUCTION

1.      Admitted Kenneth Cole ("Plaintiff") brings this action pursuant to the statutory provisions cited in Paragraph 1 of the Complaint.

### PARTIES

2.      Defendant, Delaware Technical and Community College ("the College"), has insufficient information to affirm or deny the allegation Plaintiff resides at 3102 Wilmont Drive, Wilmington, Delaware  19810.

3.      Admitted.

### JURISDICTION

4.      Admitted Plaintiff contends this Court has jurisdiction pursuant to the statutory provisions cited in Paragraph 4 of the Complaint.

5.      Admitted Plaintiff seeks to invoke the pendant jurisdiction of this Court.

## FACTUAL BACKGROUND

6.     Admitted.

7.     Admitted, with the exception that Kate Sullivan ("Sullivan") was not the Program Manager of the Upward Bound Classic Program ("Upward Bound Classic") in 1999.

8.     Admitted.   By way of further answer, Upward Bound Classic was awarded additional funding and the program grew in its size and scope.   The proposed move of Upward Bound Classic would accommodate its growth and further the College's goal of physically aligning such programs in adjacent working areas.

9.     The College has insufficient information to affirm or deny the allegations in Paragraph 9 of the Complaint.

10.     Denied.

11.     Denied; except admitted the Special Programs Director has oversight responsibility for the TRIO programs, including Upward Bound Math Science ("UBMS").

12.     Admitted.

13.     Denied.

14.     Denied; except admitted that Paul Morris ("Morris") met with Plaintiff and the UBMS staff on August 12, 2002 informing them UBMS would be moved into Suite 408. Morris explained the move was consistent with the College's goal of having all the TRIO Programs work together in defined office space and collectively as a group on the 4th Floor.

15.     The College is without sufficient information to affirm or deny the allegations in Paragraph 15 of the Complaint.   The office space in Suite 408 was adequate to accommodate UBMS, its staff, occasional visitors, its files, equipment, and resources.   Suite 408 was previously occupied by the "To the Max" Program which staffed 4 full-time employees

2

serving 150 students, in contrast to UBMS which staffed only 3 full-time employees, 1 part-time employee, and served 50 students.

16.    Denied.

17.    The College is without sufficient information to affirm or deny the allegations relating to Plaintiff's alleged meeting with his co-workers, what he discussed with them, and what Plaintiff believed about the proposed move.   Denied UBMS was being forced into a smaller, single office.

18.    The College is without sufficient information to affirm or deny the allegation Plaintiff and the UBMS staff prepared an agenda after speaking with their Program Manager.  The remainder of  the allegations in Paragraph 18 refer to a written agenda which speaks for itself.

19.    Denied; except admitted that Plaintiff and the UBMS staff  met with Ann DelNegro ("DelNegro") and Morris on August 29, 2002 to discuss the proposed move planned for September 4th, 2002.

20.    Denied; except admitted that Plaintiff and the UBMS staff met with DelNegro and Morris on August 29, 2002 and explained all the reasons they opposed the proposed move to Suite 408.   At no time during the meeting did Plaintiff state he felt discriminated against on the basis of race.

21.     Denied; except admitted that DelNegro at one time occupied Suite 408.

22.    Denied; except admitted that Plaintiff told his supervisors the move could impact employee relations, morale, and productivity.

23.    Denied; except admitted Plaintiff told his supervisors he felt the proposed move to Suite 408 was due to a personal conflict which existed among employees in the Upward

Bound Classic Program.  Denied the UBMS staff provided any reasonable alternatives to the proposed move.

24.    The College is without sufficient information to affirm or deny the allegation Plaintiff left the meeting feeling his concerns were unheard.   The remainder of the allegations in Paragraph 24 are denied; except admitted that DelNegro told the UBMS staff she would recommend to Susan Zawislak ("Zawislak") the move continue as planned.   At no time during the meeting did Plaintiff state he felt discriminated against on the basis of race.

25.    Denied; except admitted Plaintiff and Brigitte Brown ("Brown") met with Cara J. Stanard ("Stanard") on September 3, 2002 and explained their opposition to the move. At no time during the meeting did Plaintiff state he felt discriminated against on the basis of race.

26.    Denied; except admitted the move did not occur on September 4th, 2002.

27.    Denied; except admitted Plaintiff's written grievance speaks for itself.

28.    Denied; except admitted that DelNegro and Zawislak arranged individual meetings with the UBMS staff to again address the reasons they opposed the move.

29.    Denied; except admitted that Plaintiff met with Zawislak and DelNegro on or about September 6, 2002 and Plaintiff discussed all the reasons he opposed the move.   At no time did Plaintiff state he felt discriminated against on the basis of race.

30.    Denied.

31.    The College is without sufficient information to affirm or deny the allegations in Paragraph 31 concerning how Plaintiff felt, or what he perceived about the individual meetings.   The College denies Plaintiff's allegation that most of his answers were turned around by his supervisors and restated.

32.     Denied; except admitted the September 9, 2002 memorandum speaks for itself.

33.     Denied; except admitted Plaintiff met with Zawislak on September 12, 2002 and restated his opposition to the proposed move and suggested alternatives.

34.     Denied; except admitted the purported E-mail message speaks for itself.

35.     Denied; except admitted a meeting took place on October 2, 2002 including Zawilsak, DelNegro, Morris, Plaintiff, and the rest of the UBMS staff.   Admitted Zawilsak told the group UBMS would be moved into Suite 408.

36.     Denied; except admitted the written supplement to Plaintiff's grievance speaks for itself.

37.     Denied; except admitted that Plaintiff and the UBMS staff were moved into Suite 408 on October 8, 2002, and technical assistance was provided by College personnel.

38.     The College is without sufficient information to affirm or deny what personal beliefs Plaintiff holds.   The remainder of the allegations in Paragraph 38 are denied. By way of further answer, Plaintiff had multiple meetings with supervisors where his concerns were discussed and evaluated at length.    At no time did Plaintiff state his belief that race was the reason behind the move.

39.     Denied.

40.     The College is without sufficient information to affirm or deny how Plaintiff feels each day he is at work.   The remainder of the allegations in Paragraph 44 are denied.

41.     Denied; except admitted the October 8, 2002 letter speaks for itself.

42.     Denied; excepted admitted the October 8, 2002 letter speaks for itself.

43.     Denied; except admitted the October 8, 2002 letter speaks for itself.

44.     Denied; except admitted Plaintiff filed a charge of discrimination with the Delaware Department of Labor and the written charge speaks for itself.

45.     Denied.    Concerns with Rosetta Henderson's ("Henderson") work performance arose many  months before the UBMS group was moved into Suite 408.

46.     Denied.

47.     Denied.

48.     Denied; except admitted the Upward Bound Classic Program Manager, Sullivan,   resigned in October 2003 and the job vacancy was posted internally from approximately October 17th through October 27th, 2003.   Plaintiff did not apply for the Upward Bound Classic Program Manager position.

49.     Denied; except admitted that DelNegro was promoted in August 2003 to Director of Corporate and Community Programs, and Jacquita Wright ("Wright") was appointed to Acting Assistant Director of Corporate and Community Programs.

50.     Denied; except admitted that Morris was appointed to Acting Department Chair of Community and School Projects, a position formally held by Wright.   Admitted Morris was given supervisory responsibility over all the TRIO programs, and Wright was assigned to supervise Henderson.    Admitted Roseanna Brown-Simmons ("Simmons"), an African-American female, was appointed to Acting Program Manager of Educational Talent Search.

51.    The College is without sufficient information to affirm or deny Plaintiff's beliefs concerning the assignment of his supervisors.    The remainder of the allegations in Paragraph 51 are denied.

52.    Denied; except admitted the Upward Bound Classic Program Manager position became vacant in October 2003, and the vacancy was posted internally from October 17th through October 27th, 2003.    There were a total of 4 applicants, and Angi McCloskie was chosen for the position.  Plaintiff did not apply.

53.    Denied.

54.    Admitted.

55.    The College is without sufficient information to affirm or deny the statements Henderson allegedly made to Plaintiff.    The remainder of the allegations in Paragraph 55 are denied.  Henderson was placed on leave in February 2004, and was terminated in April 2004.

56.    Denied; except admitted the College did not ask Plaintiff to become UBMS Program Manger.

57.    Denied; except admitted that  Wright was assigned additional supervisory duties until the UBMS Program Manager position was filled.  Wright has extensive supervisory experience, was a prior program manager, and had substantial experience working with youth programs.

58.    Denied.

59.    The College is without sufficient information to affirm or deny Plaintiff's beliefs concerning the posting of the UBMS Program Manager position.  The remainder of the allegations in Paragraph 59 are denied; except admitted the UBMS Program Manager position

was posted externally from March 15th to March 29th, 2004. The final candidate for the March 2004 posting was an African-American and declined the position. Plaintiff did not apply for the position in the March 2004 posting.

60. The College is without sufficient information to affirm or deny what job succession seemed "natural" to Plaintiff. The remainder of the allegations in Paragraph 60 are denied.

61. Denied; except admitted the Delaware Department of Labor's Notice of Reasonable Cause Finding dated July 30, 2004 speaks for itself.

62. Admitted.

63. Admitted.

64. Denied; except admitted on January 26, 2005, Zawislak announced Andrea Coleman ("Coleman"), an African-American, transferred to the UBMS Program Manager position. Coleman was a prior Student Enrichment Coordinator, as well as a Corporate and Community Youth Program Manager.

65. Denied; except admitted Coleman had managed youth camps and Corporate and Community Youth Programs prior to being named UBMS Program Manager.

66. Denied; except admitted Plaintiff was not offered the position of UBMS Program Manager.

67. Denied; except admitted the Equal Employment Opportunity Commission's Notice of Right to Sue Letter dated February 2, 2005 speaks for itself.

## COUNT I
**(Racial Discrimination)**

68. The College incorporates by reference its answers to Paragraphs 1 through 67.

69.    Denied.

70.    Denied.

71.    The allegations in Paragraph 71 of the Complaint contain conclusions of law to which no responsive pleading is required.

72.    Denied.

## COUNT II
### (Title VII – Retaliation)

73.    The College incorporates by reference its answers to Paragraphs 1 through 72.

74.    Denied.

75.    Denied.

76.    Denied.

77.    Denied.

## COUNT III
### (Racial Discrimination – Failure to Promote)

78.    The College incorporates by reference its answers to Paragraphs 1 through 77.

79.    Denied.

80.    Denied.

81.    Denied.

82.    Denied.

## COUNT IV
### (Breach of Covenant of Good Faith and Fair Dealing)

83.    The College incorporates by reference its answers to Paragraphs 1 through 82.

84.    Denied.

85.    Denied.

86.    Denied.

87.    Denied.

## ADDITIONAL DEFENSES

1.    Plaintiff's claims for monetary relief are barred or diminished to the extent he failed to mitigate his damages.

2.    Plaintiff's claims are barred, in whole or part, by the applicable statute of limitations.

3.    To the extent Plaintiff is claiming discrimination or bringing any statutory claim, Plaintiff's claims are barred for failure to satisfy the statutory and/or jurisdictional prerequisites to the institution of an action under any such statute.

4.    Plaintiff's demand for punitive damages is barred, in whole or in part, because the College has made good faith efforts to comply with anti-discrimination laws at all times and has adopted, publicized, and enforced policies against the type of discrimination alleged in the Complaint.

5.    All actions taken with respect to Plaintiff were taken in good faith and without discriminatory, harassing, or retaliatory motive and for legitimate, non-discriminatory reasons.

6.    The College has in place a strong policy against discrimination and otherwise exercised reasonable care to prevent and correct promptly any discrimination, and Plaintiff unreasonably failed to take advantage of any preventative and corrective opportunities provided by the College or to otherwise avoid the alleged harm.

7.    The College would have made the same decisions even in the absence of any impermissible factor.

8.    Plaintiff's claims are barred by the Eleventh Amendment and the doctrine of sovereign immunity.

9.    The Complaint fails to state a claim upon which relief can be granted, in whole or in part.

WHEREFORE, the College requests the Court grant judgment in its favor and against Plaintiff on all claims, and award the College its reasonable attorney's fees and costs incurred in defending against this action.


MORRIS, JAMES, HITCHENS & WILLIAMS LLP



David H. Williams (#616)
Jennifer L. Brierley (#4075)
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE  19899
(302) 888-6900
dwilliams@morrisjames.com
jbrierley@morrisjames.com
        Attorneys for Defendant,
        Delaware Technical & Community College


Dated:   July 8, 2005

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KENNETH COLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No.  05-270 KAJ |
| | ) | |
| DELAWARE TECHNICAL AND | ) | |
| COMMUNITY COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF  ELECTRONIC SERVICE**

I hereby certify that on July 8, 2005, I electronically filed the attached **DELAWARE TECHNICAL AND COMMUNITY COLLEGE'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Jeffrey K. Martin, Esquire
> Margolis and Edelstein
> 1509 Gilpin Avenue
> Wilmington, DE  19806

David H. Williams (#616) (dwilliams@morrisjames.com)
Jennifer L. Brierley (#4075) (jbrierley@morrisjames.com)
MORRIS, JAMES, HITCHENS & WILLIAMS, LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900
Attorneys for Defendant

Dated:  July 8, 2005

1251636/1