BRIGITTE L. BROWN

1          She is also African-American, is she not?

2     A.    Correct.

3     Q.    And is it because she is African-American that

4    you believe that the decision by the college to

5    promote her was discriminatory on the basis of race?

6     A.    I believe if Andrea Coleman wasn't black, there

7    may be a chance she wouldn't have been there.  Again,

8    it feels like they are going to -- they filed

9    discrimination, so let us keep the blacks in there.

10   That's in their thinking.  But as far as black people,

11   it's like getting the blacks to take care of the

12   blacks.

13          I mean, and then she didn't even -- she

14   didn't even become manager of her own program that she

15   had worked with for three years as program manager.

16   You know, she didn't have any Upward Bound

17   Math/Science position, but, yet, they walked Andrea

18   Coleman in and it's like, Why?  And there was another

19   black person.

20          I probably would have thought actually

21   about that one differently if it was a white person

22   that walked in, but, again, it was another black

23   person that they are trying to get us to -- to keep

24   us, I don't know.

BRIGITTE L. BROWN

1    future opportunities for advancement."

2              Was it this program manager's decision

3    that really triggered your resignation?

4    A.    There was so much going on there with us, and

5    that was the last straw.  Absolutely.  Absolutely.

6    And then after all -- and not getting an interview,

7    No. 1, knowing Paul Morris is on the committee,

8    screening committee, No. 2, finally getting an

9    interview, within the next two to three days getting a

10   letter, no one is coming in, no one is coming in, and

11   then they bring Andrea Coleman in who started after I

12   who never even got her program manager's position, it

13   just --

14   Q.    Turn to page 15 and 16.  Interrogatory No. 18

15   asks about -- asks for you to detail every attempt you

16   have made to find employment, seek a promotion, or

17   pursue education or training?

18   A.    This is page 15, you said?

19   Q.    The question is on page 15.  The answer is on

20   the next page, page 16.

21   A.    Okay.

22   Q.    Is this a complete listing of every attempt you

23   have made to find employment, seek a promotion, or

24   pursue education or training?

BRIGITTE L. BROWN

1    A.    Yeah.    There was a couple other things that's

2    not included that I asked for, but, to me, it was no

3    big deal.    Like when I wanted to help with certain

4    things, they were having -- redoing our grant, and,

5    you know, I let her know I was open because they were

6    all stressed out trying to get this grant completed

7    and I knew I had very good computer skills and they

8    were having training that if I could go to the

9    training and help with any of the things that they

10   needed, but that's no big deal.    It's not on there.

11   But, yes, this is --

12   Q.    And tell me again when you resigned.

13   A.    June 27th, I think.    The end of June.

14   Q.    Of 2005?

15   A.    Yes.

16   Q.    And the question asks about every attempt you

17   made to find employment or pursue education or

18   training since January 1, 2001, to the present.

19   Nothing is listed subsequent to January 2005.    I

20   assume, if this is a complete list, that means that

21   you haven't sought any employment opportunities since?

22   A.    Well, sir, after January, 2005, I realized

23   there was no way I was going to put myself through

24   that ever again.    I had been stressed.    Like you said,

BRIGITTE L. BROWN

1    my stomach, my hair.

2              After they got Andrea Collins in there, I

3    knew there was no way, and I knew there was no way I

4    was going to even continue or even try.  I was told

5    earlier by my program manager once that Paul Morris

6    had mentioned to her that if I continued doing things,

7    like not conforming, that Brigitte won't go far at

8    DelTech.  Those words echoed through my ears after I

9    saw Andrea Coleman walk in.

10    Q.    Well, the question, though, is, this asked for

11    every attempt you have made to find employment

12    beginning January 1, 2001, to the date of the answer

13    of the answer to the interrogatory.  And my question

14    is:  Is it correct that you haven't made any effort to

15    seek other employment subsequent to the time you

16    resigned?

17    A.    You mean at DelTech?

18    Q.    Anywhere.

19    A.    No.

20    Q.    So this is not a complete answer?

21    A.    I am getting a little confused.  I don't know

22    what you are saying.

23              MS. BREWINGTON:  Can you back up?  I think

24    she is confused.

BRIGITTE L. BROWN

1          THE WITNESS:  I am totally confused.

2          MS. BREWINGTON:  Back it all the way up.

3    BY MR. WILLIAMS:

4    Q.    The question that you are responding to,

5    Interrogatory No. 18 --

6          MS. BREWINGTON:  Can I interrupt?  I think

7    what she thinks is -- you are asking her about

8    positions at DelTech?

9          THE WITNESS:  Yes.

10         MS. BREWINGTON:  I think you kind of need

11   to explain you are talking about.

12         MR. WILLIAMS:  Let me, between you and I,

13   say that it seems to me that what we are hearing is

14   that this is not a complete answer to the

15   interrogatory, and either we need to get an update or

16   she needs to update it now.

17         MS. BREWINGTON:  No.  She is telling you

18   that she thought -- I guess she is thinking DelTech.

19         MR. WILLIAMS:  That's not what the

20   interrogatory says.

21         MS. BREWINGTON:  We need to find out what

22   she understood at the time she completed that.

23         THE WITNESS:  Yes.  In fact, I did seek

24   other things on the Internet.  I sought other

BRIGITTE L. BROWN

1    positions through the Internet, yes, I did.

2                MR. WILLIAMS:  Well, what I am suggesting

3    to you is we need a listing -- if you are going to

4    answer the interrogatory fully and completely, we need

5    a listing of what they are and we haven't received it

6    to date.

7                MS. BREWINGTON:  Can you confirm that

8    there are additional from January to October?

9                THE WITNESS:  We are talking about until

10   now?  I don't understand.

11               MS. BREWINGTON:  You said "until present,"

12   but present on this is October 31st, 2005.  So the

13   question is:  Did she seek employment from January 1,

14   2001, through October, 2005, outside of Delaware

15   Tech.?

16   BY MR. WILLIAMS:

17   Q.   Between the time that you resigned and the time

18   that you signed this affirmation on October 31, 2005,

19   did you seek other employment opportunities?

20   A.   Yes.

21   Q.   And are they listed here?

22   A.   No.

23   Q.   And subsequent to October 31, 2005, between

24   that date and today, have you sought other employment

BRIGITTE L. BROWN

1    opportunities?

2      A.    Yes.

3      Q.    Are they listed here?

4      A.    No.

5      Q.    Well, I will send you a letter, but, I mean,

6    it's clear to me that we have an incomplete answer to

7    this interrogatory, and I'd, when we get a complete

8    answer, reserve my right to ask her questions about

9    whatever other employment opportunities she has sought

10    since then.

11      A.    You don't want to ask that now?

12      Q.    I tried to ask earlier and you told me that you

13    didn't really -- couldn't tell me.  If you can give

14    me --

15      A.    I sent to TRIO programs at colleges.  I have

16    been looking under the TRIO program.

17      Q.    I want to know what colleges, when you

18    submitted applications, and for what positions?

19      A.    Okay.

20      Q.    Can you tell me?

21      A.    Not offhand.  I have -- I do have a file.

22      Q.    You have a file?

23      A.    At home, mm-hmm.

24      Q.    Do you have, apart from that file, do you have

A 157

BRIGITTE L. BROWN

Page 104

1    other documents that are relevant to this litigation

2    which you have not provided to your counsel?

3        A.    Like what?  If I thought they were relevant, I

4    submitted them.  And you say I have an incomplete

5    answer; I never understood the question.  So up until

6    January -- this whole thing, even sitting here talking

7    to you, and reading it, I thought it meant DelTech.

8    That's why.

9        Q.    With respect to your claim that you have

10   suffered pain, suffering, humiliation, other than your

11   testimony about that, are there other witnesses that

12   you intend to offer if this case goes to trial?

13       A.    My coworker, Ken Cole, my secretary, my

14   children, my fiancee.

15       Q.    Can you identify your children and fiancee?

16       A.    Okay.  Yes.  Anthony Brown, Eyan, E-y-a-n.

17       Q.    I am sorry?

18       A.    E-y-a-n, Eyan Evans Brown.

19       Q.    Okay.

20       A.    Brigitte, same name, Evans Brown.  Eli is too

21   small.  I have one more child, but that's Eli Evans

22   Brown.  Jimmy Bunkley.

23       Q.    Jimmy Bunkley?

24       A.    Yes, my fiancee.  Ken Cole, he is a witness.

*ALL OF THE ITEMS MUST BE COMPLETED IN ORDER FOR THIS APPLICATION TO BE CONSIDERED VALID. Attaching a resume does not preclude you from completing all sections of this application in full. Please type or clearly print your responses.*

*We consider applicants for all positions without regard to race, color, religion, sex, national origin, age, marital or veteran status, the presence of a non-job-related medical condition or disability, or any other legally protected status.*

## PLEASE TYPE OR PRINT

REDACTED

**Personal Data**

Name (Last) (First) (Middle): **Brown, Brigitte L**

Social Security Number: **-5020**   Date of Application: **3-25-04**

Address (Number) (Street) (City): **1321 West 8th Street   Wilmington, DE 19801**
(State) (Zip)

Home Telephone Number: **302-888-0622**
Work Telephone Number: **302-657-5104**
Cell Phone Number: **302-897-5915**
E-mail Address: **bbrown@college.dtcc.edu**

Position Title applied for: **Program Manager Upward Bound M/S**

[✓] Full-Time
[ ] Part-Time

Have you been employed with us before? [✓] Yes [ ] No
If yes, give date: **Present**

Are you currently employed? [✓] Yes [ ] No

May we contact your present employer? [✓] Yes [ ] No

On what date would you be available for work? **Immediately**

Does your VISA or Immigration Status allow you to be lawfully employed in this country? *Proof of citizenship or immigration status will be required upon employment.* [ ] Yes [ ] No

Have you ever been convicted of a criminal offense? [ ] Yes [✓] No
If yes, please explain. *Conviction will not necessarily disqualify an applicant from employment.*

If you are under 18 years of age, can you provide required proof of your eligibility to work? [ ] Yes [ ] No

**Education (Official transcripts of all relevant education are required before any final offer of employment can be made)**

Circle or (click on) the highest grade completed in each school category.
Secondary School  7 8 9 10 11 ●
Technical, Business School or College  1 2 3 ◆
Graduate School  1 2 3

| | Name of School | City and State | Dates Attended From | To | Did you Graduate? Yes or No | Type of Diploma or Degree Rec'd | Subject or Specialization |
|---|---|---|---|---|---|---|---|
| High School | William Penn | New Castle, DE | ███ | | Yes | Diploma | College Prep |
| College or University | University of DE | Newark, DE | 1985 | 1988 | Yes | Bachelors | Visual Comm. |
| | University of DE | Newark, DE | 1985 | 1988 | Yes | Minor | Br. History/Biology |
| | Delaware Tech | Wilmington, DE | 2001 | 2001 | Yes | Certificate | Beg. Ed. Technology |
| Other | Delaware Tech | Wilmington, DE | 2003 | 2003 | Yes | Certificate | Guiding Our Youth |

| Employment (List most recent first) | If more space is required, use Additional Information page (included) | | |
|---|---|---|---|

| Employer | Telephone Number(s) | Dates Employed | |
|---|---|---|---|
| **Delaware Tech** | 571-5301 | **From** Month/Year | **To** Month/Year |
| Address | Position Held | | |
| 333 Shipley Street, Wilmington, DE 19801 | Student Enrichment Coordinator UBMS | 1-01 | Present |
| Reason for Leaving | Supervisor's Name | Hourly/Annual Salary | |
| Still Employed in this Capacity | Jaquita Wright-Henderson | **Starting** | **Final** |
| Work Performed | | $33,000 | 34,500 |
| Plan,develop and coordinates fieldtrips, programs, wk. shops and summer schedules. Recruits students,supervise and train PT staff closely monitor participants collect input submits data for Perform.Reports. Coord.,research develops program material. Understanding of the UBMS budget and accounting. | | **Full-Time** ☑ | **Part-Time** ☐ |

| Employer | Telephone Number(s) | Dates Employed | |
|---|---|---|---|
| **Dimensional Enterprises, Inc.** | 302-888-0622 | **From** Month/Year | **To** Month/Year |
| Address | Position Held | | |
| 1321 W. 8th, Wilmington, DE | Owner/President | 1996 | present |
| Reason for Leaving | Supervisor's Name | Hourly/Annual Salary | |
| N/A | N/A | **Starting** | **Final** |
| Work Performed | | varied | appx $32,000 |
| Designs, develop, supervise the marketing, manufacturing and quality control of patented Multi-Image Displays, trains indep. contr. for marketing/sales, designer and serves as a consultant. Maintain all budget and the financial aspects of the company. | | **Full-Time** ☐ | **Part-Time** ☑ |

| Employer | Telephone Number(s) | Dates Employed | |
|---|---|---|---|
| **Red Clay Consolidatated School District** | 683-6600 | **From** Month/Year | **To** Month/Year |
| Address | Position Held | | |
| 2916 Duncan Road, Wilmington, DE | Long Term Educator | 1-97 | 1-01 |
| Reason for Leaving | Supervisor's Name | Hourly/Annual Salary | |
| New Position | N/A | **Starting** | **Final** |
| Work Performed | | $125 a day | $136 a day |
| Planned, developed, organized and taught lessons to students in the fields of Chemisty and Life Science. Work along with a team to ensure that all students were receiving a proper education according to the State of Delaware Standards. Planned and organized field trips around classroom subjects. | | **Full-Time** ☑ | **Part-Time** ☐ |

| Employer | Telephone Number(s) | Dates Employed | |
|---|---|---|---|
| **Spectrum Design Studios, Inc** | 1-877-896-3997 | **From** Month/Year | **To** Month/Year |
| Address | Position Held | | |
| 33 Dryden Road, New Castle, DE 19720 | Owner/designer | 6-88 | 1-97 |
| Reason for Leaving | Supervisor's Name | Hourly/Annual Salary | |
| Merged into new company | N/A | **Starting** | **Final** |
| Work Performed | | $25 hr | $35 hr |
| Designed, developed promotional and marketing materials such as brochures, catalogs, logos, flyers for commercial clients. Hand painted boards, signage, and vehicles on site. Maintain the budget and the financial aspects of the company as well as hiring independent contractors. | | **Full-Time** ☑ | **Part-Time** ☐ |

A 160

DEF 000484

## Employment (continued)

| Employer | Telephone Number(s) | Dates Employed | |
|---|---|---|---|
| **Christina Cultural Arts Center** | **302-652-0101** | From Month/Year | To Month/Year |
| Address | Position Held | | |
| **705 N. Market Street** | **Creative Design Instructor** | **2-95** | **3-97** |
| Reason for Leaving | Supervisor's Name | Hourly/Annual Salary | |
| Program Ended | **Raye Jones** | Starting | Final |
| Work Performed | | **$12.00** | **$12.00** |
| Instructed students on creative designs techniques using different mediums. | | Full-Time | Part-Time |
| | | ☐ | ☑ |

| Employer | Telephone Number(s) | Dates Employed | |
|---|---|---|---|
| **D. C. Enterprises** | unknown | From Month/Year | To Month/Year |
| Address | Position Held | | |
| **Virginia Beach, VA** | **Entertainment Promoter** | **2-82** | **4-84** |
| Reason for Leaving | Supervisor's Name | Hourly/Annual Salary | |
| Relocated | **Roger Smith** | Starting | Final |
| Work Performed | | %Commissions | %Commissions |
| Concert marketing and promotions in the state of Virginia for entertainment groups such as Prince, Hall & Oates and Weather Report. Distributed information through newspaper, radio and television. Ran local radio promotion contest, marketed upcoming concert. | | Full-Time | Part-Time |
| | | ☐ | ☑ |

## Skills/Organizations

List any special skills you possess that are relevant to this position; for example, software applications/programs (word processing, spreadsheets, databases, etc.), computer or foreign languages, machines/equipment, etc.

I am very proficient in using the PC word processing, spreadsheets, Fed gov. UBMS Tool database, publisher, knowledge of access effect using periphials such as; scanners, digital cameras and camcorder. Knowledge of copier and fax machines . . .

List membership(s) in relevant trade and/or professional organizations.

Member and past Secretary of Delaware State TRIO Organization DSTO, Member of Mid Easter Atlantic of Educational Opportunity Personel MEAEOPP, Member of the Metropolitan Urban League, National Coalition of 100 Black Women

## Applicant's Statement

I certify that this application and any other documentation accompanying this application are true and complete. I understand that misrepresentation or omission of facts called for hereon or in any interview(s) will be sufficient cause for cancellation of consideration for employment or dismissal from College service if I have been employed. I understand, also, that I am required to abide by all rules and regulations of the employer, including participation in direct deposit of paychecks, presentment of social security card, and participation in pre-employment drug screening. I further understand an annual report outlining crime statistics for the Campus is available upon request from the Campus Human Resources Office.

I authorize the release of any information from previous employers or character references.

I certify that if I am male, born after January 1, 1960, and required to register, I have registered for selective service. I understand that I may be required to document registration.

APPLICANT SIGNATURE                                    Date 7-25-04

**If selected for an interview, signature will be requested prior to the interview.**

DEF 000485

A 161

**REQUIRED FORM**

Name: Brigitte Brown          Position: Program Manager UBMS          Date: 3-25-04

## DTCC MINIMUM QUALIFICATIONS SUMMARY

Please identify how you meet **each** required qualification listed on the Classification Specification. Please use Additional Information page (included) if necessary.

### Education/Training:

Due to continuous training in TRIO by means of yearly State and Regional Conferences, I have attended many workshops. Professional Development, Annual Performance Reports, EDGER, Retention, Student Diversity, and Personal Development. I've participated in breakout session in which TRIO professional discussed benefits of TRIO and how to implement successful programs. I received certificates from DTCC for training in Guiding Our Youth A Professional Approach and Educational Technology.

### Experience:

Currently, I help develop program ideas and procedures based on objective in the UBMS Grant. For the past three years I have developed the UBMS program materials and information such as brochures, flyers, forms, invitations, handbooks, Power Point presentations, public service announcements, and tee shirt design. I have participated in the hiring of Part-time staff and I presently help train and supervise all Youth Care Workers and Tutors. I've taken the lead by have coordinating many programs according to objectives and budgetary requirements specified. I have a thorough understanding of the UBMS budget and have worked with my former Manager and Secretary on budget and financial accounting matters. I also have experience in running my own businesses where I handle all budgetary matters.

I have processed information, gathered/input data, and submitted the annual performance reports to the U.S. Deptment of Education for the past 3 years. I supervise and help maintain our Inhouse data base. and student files. I have a great rapport with the current/past UBMS participants and school counselors. I've coordinated tutoring sessions for our students through their counselors, peer tutors and outside tutors and utilize DTCC Youth program's tutoring for Delaware students. I have performed other related duties when asked. I work well with the existing TRIO and Youth Programs staff at DTCC. In 2002 I took over as DSTO Conference Chair (due to illness), in which the the conference was very successful and the most attended in DSTO history.

### Other Requirements (to include Selective and/or Knowledge, Skills, and Abilities):

I have knowledge of operations at DTCC; it's policies, practices and procedures. I frequently attend teleconferences that provides updates on federal regulations policies and procedures. I have a clear understanding of state and federal program policies, procedures and regulation. For the pass three years, I developed the summer educational program at UBMS, scheduled all the students for classes, and developed all instructors' schedules. I assisted in managing the 14 Part-time Staff and 50 Residential Students during the summer. I am a very effective communicator verbally and non-verbally. I have had the honor to speak on many occasions on my late mothers accomplishments. Through the use of Power Point Presentation, public speaking, workshops and break out sessions I have become very skilled in this area. My past and present job performance is an indicator that I have the ability to organize, analyze and systematically utilize complex information and data.

DEF 000486

## Additional Information

I have been working for the Upward Bound Math Science Program as a Student Enrichment Coordinator for over three years at DTCC. I have the knowledge, skills and abilities to manage, maintain and continue to develop the UBMS Initiative Program according to the prescribed policies, procedures and objectives. I continue to attend teleconferences, workshops, and classes in order that may continue to grow and keep up with the ever-changing policies and procedures of the federal government. The former Program Manager requested on many occasions that I perform duties that are described in the classification of this job [i.e. the interviewing process, assisting with maintaining the budget; identifying additional funding sources and developing funding proposals; training, supervising and evaluating subordinates; program staff and students; process data & information to prepare various reports; conducting designated specialized program assignments, etc.] and I have performed those duties in a competent and efficient manner.

I was a former student participant in the Upward Bound Program and a recent TRIO Achiever award winner. There is a connection that I have with this program and I will strive to develop the UMBS program to where GCP KOTCC can be proud. Likewise, I have been and continue to perform many of the principal accountabilities outlined while managing my current environmental endeavors for the past few years [see application]. Lastly, I would like to mention that I have been representing my mother for her past accomplishments in the Brown v. Board of Education 1954 Supreme Court decision by conducting presentations at DTCC, Cecil Community College, NYU and other various speaking engagements. I believe that the transition from Student Enrichment Coordinator to Program Manager for UMBS would be a very smooth transition for DTCC, UMBS, and the staff and student participants alike considering the summer residential program and other deadlines are quickly approaching. Thank you in advance for your consideration of me for this wonderful opportunity and I look forward to speaking with you further.

A 163





## Staff Vacancy Announcement
### Wilmington Campus
# Program Manager
### (Upward Bound Math/Science)

*Corporate and Community Programs Division*
*Special Funded Position*

*Revised Date*

Opening Date:            Friday, March 12, 2004
Closing Date/Time:       Friday, March 26, 2004 at 4:30 p.m.
Paygrade/Min. Entry Salary:   B16; $41,902/yr

♦♦Highly Competitive Benefits Package♦♦

See Delaware Tech website for complete listing—http://www.dtcc.edu/hr.

♦ ♦ ♦ ♦

#### Summary Statement

The incumbent in this position is responsible for the development and administration of an academic year program and summer program for Upward Bound Math/Science, in accordance with federal regulations and College policies and guidelines.

#### Minimum Qualifications

♦ Bachelor's degree in a relevant field. (i.e. Math or Science)

♦ Four (4) year of relevant work experience, including supervision, or equivalent additional years of education.

♦ Strong writing and interpersonal skills.

♦ Strong organizational and analytical skills.

♦ Ability to effectively communicate and relate to a diverse population in a multicultural environment.

In order to be considered for this position, a DTCC Employment Application must be received by the College by the due date/time. Request an application and list of Principle Accountabilities by emailing jobs@hopi.dtcc.edu, or by calling (302) 454-3916 or (302) 573-5469.

Direct Deposit of paychecks, presentment of Social Security Card, and participation in Pre-Employment Drug Testing are required for all new employees.    An Affirmative Action/Equal Opportunity Employer

Approved by: _____    Date _3/10/04_

**CONFIDENTIAL**
**A 164**

DEF 000480



**DELAWARE TECH**

◆ *Dover* ◆ *Georgetown* ◆ *Stanton* ◆ *Wilmington*

April 26, 2004

Ms. Brigitte L. Brown
1321 West 8th Street
Wilmington, DE 19801

Dear Ms. Brown,

Thank you for your application for the position of Program Manager in the Corporate &
Community Programs Division at the Wilmington Campus.

The members of the screening committee have carefully reviewed the applications of those
qualified and have selected finalists who, in their opinion, are best suited for this position. We
are unable to pursue your application any further at this time; however, to learn about future
openings at DTCC, we encourage you to visit our website at www.dtcc.edu/hr.

Thank you for your continued support of Delaware Tech.

Sincerely,

Tammy L. Fenimore
Human Resources Specialist II
Wilmington Campus

DEF 000482

A 165

**Chronology of**
**Program Manager –UBMS**
**\*\*First Posting\*\***
**Corporate & Community Programs**

| | |
|---|---|
| March 12 – 26, 2004 | Position Posted<br>14 Applicants<br>1 Applicant withdrew from the process<br>*Including Brigitte Brown |
| April, 2004 | Screening Committee screened qualified applicants for interview.<br><br>Committee Members<br>Paul Morris, Committee Chair<br>Andrea Coleman<br>Sam Panella<br>Tammy Fenimore |
| April 26, 2004 | Letters sent to applicants not selected for interviews |
| May 4, 2004 | Interviews Conducted – 6 Candidates<br>Work Sample |
| May 5, 2004 | Letters sent to candidates not recommended to next level of interviews. |
| May 14, 2004 | Recommended candidate interviewed by Dean/Director<br><br>Candidate interviewed by Campus Director's Office<br>Rhonda Carter declined offer due to salary<br>Position Reposted |

**CONFIDENTIAL**

DEF 000478

A 166



## Staff Vacancy Announcement
### Wilmington Campus
# Program Manager
### (Upward Bound Math/Science)

*Corporate and Community Programs Division*
*Special Funded Position*

| | |
|---|---|
| Opening Date: | Monday, June 14, 2004 |
| Closing Date/Time: | Monday, June 28, 2004 at 4:30p.m. |
| Paygrade/Min. Entry Salary: | B16; $41,902/yr |

### ◆◆Highly Competitive Benefits Package◆◆
See Delaware Tech website for complete listing—http://www.dtcc.edu/hr.
◆◆◆

### Summary Statement

The incumbent in this position is responsible for the development and administration of an academic year program and summer program for Upward Bound Math/Science, in accordance with federal regulations and College policies and guidelines.

### Minimum Qualifications

◆ Bachelor's degree in a relevant field. (i.e. Math or Science)
◆ Four (4) year of relevant work experience, including supervision, or equivalent additional years of education.
◆ Strong writing and interpersonal skills.
◆ Strong organizational and analytical skills.
◆ Ability to effectively communicate and relate to a diverse population in a multicultural environment.

In order to be considered for this position, a DTCC Employment Application must be received by the College by the due date/time. **Request an application and list of Principle Accountabilities by emailing jobs@hopi.dtcc.edu, or by calling (302) 454-3916 or (302) 573-5469.**

Direct Deposit of paychecks, presentment of Social Security Card, and participation in Pre-Employment Drug Testing are required for all new employees.     An Affirmative Action/Equal Opportunity Employer

Approved by: _____          Date 3/10/04

CONFIDENTIAL

A 167

DEF 000706



July 26, 2004

Ms. Brigitte L. Brown
1321 West 8th Street
Wilmington, DE 19801

*Brigitte*

Dear Ms. Brown:

Thank you for taking the time to interview for the regular full-time Program Manager position for the Corporate & Community Programs division at the Wilmington Campus. The hiring process is continuing.

While your qualifications were impressive, we are unable to pursue your application any further at this time. However, we encourage you to apply for future positions that may become available. You may visit our website at www.dtcc.edu/hr

Again, thank you for your interest in Delaware Tech.

Sincerely,

*Tammy L Fenimore*

Tammy L. Fenimore
Human Resources Specialist II
Wilmington Campus

*Delaware Technical & Community College*
Stanton/Wilmington Campus
Stanton Campus: 400 Stanton-Christiana Rd., Newark, DE 19713-2197   Phone: (302) 454-3900   Fax: (302) 368-6620
Wilmington Campus: 333 N. Shipley St., Wilmington, DE 19801-2499   Phone: (302) 571-5300   Fax: (302) 577-2548
Equal Opportunity/Affirmative Action Institution

DEF 000852

A 168

**Chronology of**
**Program Manager –UBMS**
**.\*\*Second Posting\*\***
**Corporate & Community Programs**

June 14 – 28, 2004     Position Posted
                       16 Applicants
                       \*Including Brigitte Brown

July 15, 2004          Screening Committee screened qualified applicants
                       for interview.

                       Committee Members
                       Paul Morris, Committee Chair
                       Rueben Evans
                       Sam Panella
                       Andrea Coleman
                       Tammy Fenimore

July 23, 2004          Interviews Conducted – 5 Candidates
                       Work Sample
                       \*Including Brigitte Brown

July 26, 2004          Letters sent to candidates not recommended to next level
                       of interviews.

August, 2004           Candidate interviewed by Campus Director's Office
                       Samtra Devard offered employment
                       Candidate withdrew due to daughter's illness
                       Declined LHM's Offer
                       Position Reposted

CONFIDENTIAL

DEF 000704

A 169

<u>**MEMORANDUM**</u>

**TO:**     Susan Zawislak
            Director of Corporate & Community Programs

**FROM:**   Lawrence H. Miller
            Vice President & Campus Director

**DATE:**   October 17, 2002

**RE:**     <u>**UPWARD BOUND MATH/SCIENCE EMPLOYEES**</u>

Outlined below are a series of allegations raised by employees, Elizabeth Wilson, Brigitte Brown and Kenneth Cole, in the Upward Bound Math/Science program of Corporate & Community Programs.

<u>Issue #1 – Change in Ken Cole's working hours</u>

According to these employees, Ken Cole's working hours have always been 8:00 a.m. – 2:00 p.m. and there was never any question regarding his working hours in the past until the employees raised concerns regarding the relocation of their office space ("the move"). The employees view your actions as retaliatory.

<u>Issue #2 – Change in Elizabeth Wilson's working hours</u>

Ms. Wilson has been working an adjusted work schedule for over one year (9:00 a.m. – 5:00 p.m.) which was verbally approved by you. After the discussion regarding "the move" and over one year later, you requested Ms. Wilson to submit a memo requesting a change in hours that had already been approved previously. The employee views your actions as retaliatory.

<u>Item #3– Revoked Brigitte Brown's request for change in working hours</u>

Ms. Brown's request to change her working hours to 9:00 a.m. – 5:00 p.m. was denied. According to Ms. Brown, you stated that changing her hours would not be in the best interest of the college. Ms. Brown is now submitting ½ hour of leave time each day. According to Ms. Brown, she is working a full 7.5-hour workday by actually working until 5:00 p.m., and this would be considered a plus for the program as additional students could be contacted later in the day. The employee views your actions as retaliatory.

Sue Zawislak                    - 2 -                    October 16, 2002

### Item #4 – Micro-managing UBMS

You have asked the UBMS Student Enrichment Coordinators to produce lists of students, their schools and a calendar of visits from now thru the end of December. In addition, annual program planning, containing trips during the summer, including budget costs by October 31. Not only has this information never been requested to be provided in two years, no other division has been asked to provide this or similar information. Trips are normally scheduled in February or March and new time lines are generally developed during the January staff meeting. With three levels of supervision between yourself and these employees, why would you personally request this information? "It seems since August and after questioning "the move," everything our program does is being scrutinized by upper management." Your actions are viewed as retaliatory.

### Item #5 – Conducted interrogating and intimidating "fact finding" meeting

All employees reported having to meet with both you and Ann DelNegro individually, rather than in a group to address their concerns collectively. "The same questions were repeatedly asked, even asked differently to get a different answer than was previously given." This meeting was viewed as interrogating and intimidating and also described as a "witch hunt."

### Item #6 – Asking members of UBMS team to move without due consideration of their concerns

Because these employees expressed their concerns regarding "the move," they believe they have experienced retaliation.

Please respond to each issue individually providing relevant detailed information to me no later than October 24, 2002.

**A 171**

Page 1 of 1

ken cole

From:     "Rose Henderson" <rhenders@college.dtcc.edu>
To:       <Kcole@college.dtcc.edu>; <rhenders@college.dtcc.edu>
Sent:     Thursday, September 19, 2002 11:17 AM
Subject:  Re: working hours

This is to formally document our discussion regarding working hours. Dr Zawislak
has informed me that working hours are from 8:30 am-4:30 pm and that I
do not have the authority to permit you to start at 8:00 am. You
informed me that when you started working for UBM/S ~ 3 years ago we had
an informal agreement that you could begin work at 8:00 am and that you
are asking me to get an official ruling from Human Resources, based on
the fact that you are TPT and that you are under contract and that are
limited to 15 to 29 hrs/week.

Rosetta M. Henderson
Program Manager
Upward Bound Math Science
Del Tech & Community College
302-657-5110
fax 657-5187

11/7/02

A 172



**DELAWARE TECH**
*Community College of the Year*
*National Alliance of Business*

December 13, 2002

Mr. Kenneth Cole
3102 Wilmont Drive
Wilmington, DE 19810

Dear Kenneth:

I am writing once again to request that you provide to me, at Mr. Miller's request, a physician's note indicating the number of hours per day during which you are able to work, the medical basis for any limitation below six hours per day or 29 hours per week and an indication as to the duration of any such limitations. On December 4 I requested that you provide your physician's note in the specified format by December 9. Rather than provide the requested information, you raised a number of issues that, although I am happy to address, have no bearing on your obligation to provide appropriate substantiation of your request for a reduction in hours due to medical reasons.

You have asserted that since a 'part-time employee' is defined by the Personnel Policy Manual as one who works 15-29 hours per week, and you are working 20 hours per week, you are necessarily satisfying the "terms and conditions of (your) contract and the Personnel Policy Manual." Your position reflects a misunderstanding of both your Part-time Employment Contract and the College policy pertaining to work schedule.

The reference to hours in the definition of part-time employee in the Personnel Policy Manual establishes the parameters under which an employee may be considered "part-time." It does not establish an employee's option to choose how many part-time hours he or she will work. The privilege and responsibility to establish Working Hours resides in the Vice President and Campus Director under Section 6.01 of the Personnel Policy Manual where it states: "...(T)he Vice President and Campus Director in charge of the campus, is authorized to establish working periods and to designate work assignments..." The Part-time Employment contract sets forth the maximum number of hours per week for which an employee will be paid.

In your case, the Part-time Employment Contract reflects that you may not work in excess of 29 hours per week. Since the College employed you in 1999, you have been scheduled to work from 8:30 a.m. to 2:30 p.m. The Upward Bound Math/Science Grant award includes funds to pay you for 29 hours per week during the term of the Grant.

*Delaware Technical & Community College*
♦ Dover ♦ Georgetown ♦ Stanton ♦ Wilmington

**Stanton/Wilmington Campus**
Stanton Campus: 400 Stanton-Christiana Rd., Newark, DE 19713-2197   Phone: (302) 454-3900   Fax: (302) 368-6620
Wilmington Campus: 333 N. Shipley St., Wilmington, DE 19801-2499   Phone: (302) 571-5300   Fax: (302) 577-2548
*Equal Opportunity/Affirmative Action Institution*

**A 173**

Kenneth Cole                    -2-                    December 13, 2002

Neither your employment contract nor the Grant that supports it suggests that your schedule is less than 29 hours per week. Mr. Miller has determined that you are to work from 8:30 a.m. to 2:30 p.m. Monday through Thursday and 8:30 a.m. to 1:30 p.m. on Friday. In order to meet the terms and conditions of your employment you are obligated to maintain this work schedule.

Since Mr. Miller has the authority to establish working periods, clearly he has the authority to adjust a work schedule upon a proper request supported by appropriate documentation. You asserted when you returned from your absence in August that your physician had advised you to adjust your schedule for medical reasons. My request to you is that you provide a physician's note identifying the precise limit of working hours, the medical basis for such limitations and the extent to which these limitations will endure. Any time an employee asks for an accommodation of work schedule for medical reasons he or she is required to substantiate the medical basis for the request. The purpose for making the request is to enable Mr. Miller to determine whether, in light of an employee's limitations (including duration), the employee is still able to perform the essential functions of the position, including the requirement that he or she meet a specified work schedule. In your case, Mr. Miller must decide whether you are able to provide the required hours of work to meet the terms and conditions of the Grant that pays your salary. The issue at this point is not one of substantiating the reasons for your absence but of determining whether or not you can continue to perform your obligations given your medical limitations. You have asked, "(W)hen I take off, what is the loss in terms of sick time, leave and vacation time to Del Tech? I do not get paid for those days." The loss to Delaware Tech when you are not on the job as required is that the job responsibilities do not get accomplished and the Grant is jeopardized.

Because you have failed to provide the requested documentation, I have been directed to inform you that you are expected to report for work from 8:30 a.m. to 2:30 p.m. Monday through Thursday and 8:30 a.m. to 1:30 p.m. on Friday commencing upon your receipt of this letter. You will not be excused from adhering to this schedule absent an appropriately documented request for an alternate schedule for a finite period of time. If you cannot meet your work schedule and are not excused from meeting it your employment may be terminated. Should you have any questions please feel free to contact me.

In the meantime, in response to your inquiry of December 6, Dr. George has transmitted the Notice of Appeal and attendant documents to the College Grievance Committee for determination. It has the "authority to issue (a) final and binding decision on behalf of the College." It may make a decision based upon the documents submitted (the Level I and II Grievance and decisions), by either upholding the decision at Level II or it may modify or overturn the decision or it may decide to hold a hearing. You will be notified of the Committee's choice to pursue one of these options within the next 30

Kenneth Cole                    - 3 -              December 13, 2002

working days.  If you have any further questions regarding the grievance procedure please review Section XIII of the Personnel Policy Manual.

Sincerely,

*Jacqueline D. Jenkins*

Jacqueline D. Jenkins
Director of Human Resources

cc:  Lawrence H. Miller, Vice President and Campus Director
cc:  Susan Zawislak, Director of Corporate & Community Programs

**A 175**



**UPWARD BOUND**
MATH/SCIENCE INITIATIVE

## MEMORANDUM

**TO:**      Jackie Jenkins
             Director of Human Resources

**FROM:**    Kenneth Cole
             Student Enrichment Coordinator
             Upward Bound Math/Science

**DATE:**    December 4, 2002

**RE:**      Physician's Statement

I am in receipt of your letter dated November 27, 2002 and have enclosed per your request a copy of the signed document from my doctor's office.

My doctor and I feel that you have been provided with the necessary information that was initially requested. All questions about the actual number of hours I am able to work and to what extent is full activity is covered under Patient Discussion. Any liability issues that may concern you about my presence at DelTech has been addressed as well.

In reference to your comment about me being able to resume my temporary part-time Student Enrichment Coordinator's schedule of 29 hours is contrary to my contract and DelTech's Personnel & Policy Manual (P&PM). I have fulfilled all terms and conditions of my contract and the requirements as a part-time employee, working 15-29 hours per week as stated in the P&PM, Section II, 2.02 and my contract Section 5, (g).

In addition, Mrs. Henderson, my immediate supervisor stated in a letter dated November 13, 2002 and e-mail dated October 30, 2002 that she supports my request to work reduced hours and indicated that she is satisfied with the quality and quantity of my work. She also stated to me that she felt the doctor's note is adequate and should answer all questions pertaining to working hours.

DELAWARE TECHNICAL & COMMUNITY COLLEGE
333 SHIPLEY STREET • WILMINGTON, DELAWARE 19801
TELEPHONE (302) 830-5220 • FAX (302) 657-5187

A 176

It is my belief that these continued requests are "Acts of Retaliation" and request that you as Director of Human Resources conduct an investigation and stop them.

It is also my request to you to reply back to me with the status of Step 3 of Grievance No. W03-102, which was hand delivered to Mr. Miller's office on Monday, November 4, 2002 and confirmed by telephone on Wednesday, November 6, 2002 by Monica Staszesky that it was delivered to Mr. Miller via Connie Winner.

If you have any questions, please call me at 302-434-5561 or e-mail at kcole@college.dtcc.edu.

cc:   Orlando George
      Lawrence Miller
      Sue Zawislak
      Rose Henderson

DEF 000379

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KENNETH COLE,                        )
BRIGITTE BROWN,                      )
                                     )
                Plaintiffs,          )
                                     )
        v.                           )        C.A. No. 05-270 (KAJ)
                                     )
DELAWARE TECHNICAL AND               )
COMMUNITY COLLEGE,                   )
                                     )
                Defendant.           )

### PLAINTIFF BRIGITTE BROWN'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES DIRECTED TO PLAINTIFF, BRIGITTE BROWN

Answering Plaintiff, Brigitte Brown, by and through her undersigned counsel, hereby propounds the following Answers to Defendant's First Set of Interrogatories, pursuant to Federal Rule of Civil Procedure 33 in accordance with the following definitions and instructions.

A.    **Definitions**

        1.    "Document" or "documents" means any written, recorded, filmed or graphic matter, whether produced, reproduced, or on paper, cards, tapes, films, electronic facsimile, E-mail, computer storage devices or any other media, including but not limited to memoranda, notes, minutes, records, photographs, correspondence, telegrams, diaries, bookkeeper entries, financial statements, tax returns, checks, check stubs, reports, studies, responses to questionnaires, charts, graphs, statements, notebooks, handwritten notes, applications, agreements, books, pamphlets, periodicals, appointment calendars, notes, records, and recordings of oral conversations, work papers, and also including but not limited to, originals

and all copies which are different in any way from the original whether by interlineation, receipt stamp, notation, indication of copies sent or received, or otherwise, and drafts.

2.    The term "communication" means the transmission of any information, in any form, including but not limited to orally, in writing, by conduct, by gesture, by electronic or computerized transmission, whether communicated intentionally and/or knowingly or not, and specifically includes but is not limited to all conversations, meetings, telephone calls, tape recordings of telephone calls, facsimiles, letters, emails and writings of any kind.

3.    A request that you "describe in detail" or identify "the factual basis" of a matter means that you must describe that matter fully, by reference to underlying specific facts and specific times, places, people and actions.

4.    The term "identify" when used with reference to an individual person, business or other entity shall mean to state its full name (or if not known, provide sufficient description so that the person, business or other entity will be identifiable to the recipients of your answer), business affiliation, and last known business or home address and phone number.

5.    The term "identify" when used with reference to a document or written communication shall mean to state the type of document or communication (e.g. memorandum, employment application, letter, handwritten notes, etc.) to state its date, to briefly describe it content, to identify the author (and if different, the originator and signer), and to identify the person (or, if widely distributed, the organization or classes of persons) to whom the document or communication was sent.

6.    The term "identify" when used with reference to an oral communication, discussion, conversation, meeting, conference, or any other oral statements, shall mean to describe in detail the substance of, to state the date and location of, and to identify the

2

participants in each such communication, discussion, conversation, meeting, conference, or statement.

**B.    Instructions**

1.    In answering the interrogatories, you must furnish all information that is available to you, including information in the possession of your attorneys, healthcare providers and/or any other person or entity subject to your direction or control. If, after exercising due diligence, you cannot answer an interrogatory in full, state that fact and answer to the extent possible.

2.    If you need additional space to respond to any interrogatory, you may attach additional pages as necessary, provided however that you must clearly identify the particular interrogatory to which the additional pages respond.

3.    If you claim any form of privilege or other protection from disclosure as a ground for withholding responsive information, set forth each and every fact or basis on which you claim a privilege with sufficient specificity to permit the court to make a determination as to whether the claim of privilege is valid.

4.    The interrogatories are continuing in nature and you have an affirmative obligation to promptly supplement your responses as required by any new or changed information. You must produce all responsive information and documents as soon as they become known or available to you, and in all events prior to trial of this action.

**C.    Interrogatories**

1.    Identify each person from whom you have obtained or will obtain a written statement concerning the facts of this case and identify each such written statement.

3

**ANSWER:**

**No statements have been procured.**

2.     Identify each and every communication made between you and any agent or employee of the College concerning your allegations of racial discrimination and retaliation. For each such communication, identify the following: (a) the date, time, place and manner in which the communication was made; (b) whether such communication was in writing; (c) the person or persons to whom or from whom the communication was made; (d) any other persons who would have witnessed the communication in whole or in part; and (e) the substance of any conversation during which the communication occurred, including your best recollection of each statement made and each response thereto.

**ANSWER:**

   a)  **Email dated April 12, 2002 from Rose Henderson to Brigitte Brown responding to Brigitte's email titled if you need me**

   b)  **Email dated April 15, 2002 from Ann Del Negro to Brigitte Brown and Rose Henderson regarding the MEAEOPP Achiever Awards**

   c)  **Letter dated May 16, 2002 from Alina Columbus to Brigitte Brown thanking her for her participation in the "Making Wise Education Decisions for Our Children's Future" program**

   d)  **Email dated June 4, 2002 from Paul Morris regarding Office Protocol.**

   e)  **Letter dated July 10, 2002 from Mariko Tapper-Taylor to Brigitte Brown regarding her speaking at the Delaware State University's Classic Upward Bound Program's Annual Banquet**

4

f) Letter dated August 14, 2002 from Brigitte Brown, Kenneth Cole, and Elizabeth Wilson, to Susan Zawislak and Ann Del Negro requesting meeting

g) Email dated August 30, 2002 from Brigitte Brown to Susan Zawislak requesting meeting with Susan Zawislak and her staff

h) Memorandum from Brigitte Brown to Lawrence Miller requesting work hour changes

i) Email dated September 3, 2002 from Ann Del Negro to Rose Henderson requesting an explanation of the number of children Ms. Brown serviced

j) Email dated September 5, 2002 from Rose Henderson to Ann Del Negro explaining the services Ms. Brown delivered to the students

k) Memorandum dated September 9, 2002 from Susan Zawislak to CCP Staff revising the CCP August Update

l) Memorandum dated September 13, 2002 from Susan Zawislak to Brigitte Brown informing her she cannot recommend the change in work hours to Mr. Miller

m) Memorandum dated October 2, 2002 from Susan Zawislak to Rosetta Henderson regarding School Visits for Student Enrichment Coordinators Brigitte Brown and Kenneth Cole

n) Email dated October 7, 2002 from Brigitte Brown, Kenneth Cole and Elizabeth Wilson to Connie Winner informing her of East Building Youth Program Move, October 8, 2002

o) Memorandum dated October 7, 2002 from Connie Winner to Brigitte Brown, Kenneth Cole and Elizabeth Wilson, regarding the East Building Youth Program Move, October 8, 2002

p) Memorandum dated October 8, 2002 from Lawrence Miller to Brigitte Brown and Elizabeth Wilson regarding Performance Issues

q) Email dated October 11, 2002 from Susan Zawislak to Rose Henderson regarding the Memorandum dated October 2, 2002

r) Memorandum dated October 14, 2002 from Rosetta Henderson to Susan Zawislak regarding the SEC's Monthly Calendars

s) Memorandum dated October 15, 2002 from Brigitte Brown to Lawrence Miller after review of Ken Cole's grievance, and a supplement to the grievance

t)  Memorandum dated October 15, 2002 from Brigitte Brown to Connie
Winner regarding the Youth Program Move

u)  Email dated May 22, 2003 from Brigitte Brown to Susan Zawislak regarding
Ms. Brown's Whitehouse trip

v)   Letter dated April 26, 2004 from Tammy L. Fenimore to Brigitte Brown
informing Ms. Brown she was not selected for an interview for the UBMS
Manager position

w)  Email dated April 28, 2004 from Brigitte Brown to Jacquita Wright

regarding the Programs Manager position

x)  Email dated April 28, 2004 from Jacquita Wright to Brigitte Brown

regarding the Programs Manager position

y)  Email dated May 11, 2004 from Brigitte Brown to Jacquita Wright

requesting reasons she was not given an interview for the UBMS Program

Manager position

z)  Email dated May 11, 2004 from Brigitte Brown to Jacquita Wright

confirming Ms. Wright's telephone call to Brown regarding not receiving

and interview for the UBMS Manager position.

aa) Email dated May 12, 2004 from Jacquita Wright to Brigitte Brown

confirming her understanding of their telephone conversation was correct

bb) Email dated May 13, 2004 from Brigitte Brown to Jacqueline Jenkins

requesting the names of those on the screening committee for the UBMS

Program Manager Interview selection.

cc) Email dated May 19, 2004 from Jacqueline Jenkins to Brigitte Brown

informing Ms. Brown that she has answered her question via memorandum

6

dd) Memorandum dated May 18, 2004 from Jacqueline Jenkins to Brigitte Brown explaining the reason Ms. Brown was not selected for an interview for the UBMS Manager position

ee) Letter dated July 26, 2004 from Tammy L. Fenimore to Brigitte Brown informing Ms. Brown she was not selected for the regular full-time Program Manager position for the Corporate & Community Programs division.

ff) Email dated September 20, 2004 from Jacquita Wright-Henderson to Brigitte Brown regarding sick-leave requests

gg) Email dated February 3, 2005 from Jacquita Wright-Henderson to Brigitte Brown and Kenneth Cole telling them to go to Human Resources to obtain a grievance form

hh) Memorandum dated February 9, 2005 from Susan Zawislak to Brigitte Brown regarding the Grievance

ii) Memorandum dated February 21, 2005 from Susan Zawislak to Brigitte Brown regarding the Grievance

3.      Identify each expert you have consulted regarding the facts of this case.  For each expert, please: (a) state the substance of the opinion of the expert; (b) summarize the grounds for each such opinion; and (c) whether you have reason to believe that you will call the expert to testify at trial.

**ANSWER:**

No expert witnesses have been identified at this time.  Answering Plaintiff reserves the right to retain experts and if such experts are retained to testify at trial, to the

7

extent this information does not violate the attorney client privilege, work product doctrine or any other privilege, the appropriate information will be provided as a supplement to these Answers to Interrogatories or during the discovery process.

4. State whether you contend that any admissions with respect to the subject matter of this action have been made by any agent or representative of the College, and if so: (a) identify the person who made each admission; (b) set forth the substance of each admission and state when it was made and whether it was oral or written; (c) identify all documents that constitute, refer or relate to each admission; and (d) identify each person to whom you have reason to believe may have information or knowledge concerning each admission.

**ANSWER:**

**Upon information and belief, there have been no admissions made.**

5. Describe in detail the types and amounts of all damages you are seeking in the Complaint, and set forth the calculation of damages that you are seeking in this case, and detail the manner in which you calculated such damages.

**ANSWER:**

**Answering Plaintiff is unable to determine an exact amount of damages at this time. When Answering Plaintiff is in a better position to determine and/or approximate total damages for this matter, the information will be provided as a supplement to this Interrogatory.**

6.    Describe in detail any and all other claims including, but not limited to, lawsuits, Delaware Department of Labor charges, EEOC charges, and grievances against current or former employers for which you have alleged discrimination and for each claim state: (a) the name and address of the employer; (b) the name and address of the attorney representing the employer, if any; (c) the name and address of the attorney representing you, if any; (d) the company, organization, court, or agency to which the claim was filed and the file number or identification number; (e) the substance of the allegation; and (f) the resolution of the claim.

ANSWER:

**Objection:**    Answering Plaintiff objects to this Interrogatory in that it seeks information that is not relevant to, or reasonably calculated to lead to the discovery of admissible evidence in this litigation. Answering Plaintiff objects further, in that the interrogatory seeks information that does not pertain either specifically or generally to issues relevant to this litigation. To this extent, the Interrogatory is overly broad, unduly burdensome and seeks information neither relevant to nor reasonably calculated to lead to the discovery of admissible evidence in this litigation. Without waiving said objection: None.

7.    Identify each person whom you know or believe has knowledge or information concerning any allegations in the Complaint, and for each such person, describe in detail the nature of his or her knowledge and information and state how you became aware of that person's knowledge.

ANSWER:

**A 186**

a) The parties to this lawsuit along with their employees and representatives.

b) Employees of Margolis Edelstein. The information possessed by these individuals is protected by attorney client privilege and/or work product doctrine.

c) By way of further answer: Kenneth Cole, Rosetta Henderson, Elizabeth Person (Wilson), Tonia Conley, Kate Sullivan, Susan Zawislak, Ann Del Negro, Paul Morris, Cara Standard, Connie Winner, Larry Miller, Jackie Jenkins, Orlando George, Jackie Wright Henderson, and Andrea Coleman (Collins).

Answering Plaintiff believes that the above-named individuals may have knowledge related to his specific allegations in this litigation or evidence in support of his claims.

8.    Describe in detail any and all emotional, mental, and/or psychological injuries you encountered due to the conduct of Defendant as alleged in Paragraphs 85, 87, 92, and 96 of the Complaint.

ANSWER:

Answering Plaintiff suffered mental anguish, degradation, humiliation as well as stress, and nervousness. Plaintiff had trouble eating and sleeping and her hair started falling out. Plaintiff went to the doctor for the stress and was referred to a therapist.

A 187

9.      Identify all physicians, psychologists, psychiatrists or other health care providers from whom you have sought or received treatment because of the physical or emotional injuries Plaintiff alleges to have suffered because of the conduct of Defendant, and for each health care provider identified, describe in detail:

   (a).     the dates upon which you began and ended treatment with the health care provider;

   (b).     the medical care provided, including the name of any medication prescribed by the health care provider and the dates during which you took such medication and any surgical procedures or operations conducted on you by the health care provider; and

   (c).     any physical therapy program prescribed or overseen by the health care provider; and

   (d).     any work restrictions placed upon you by any health care provider and the dates those restriction were in effect.

**ANSWER:**

**a) Dr. Tamala Walker and Dr. Senu-Oke began Answering Plaintiff's treatment in October 2002 and treatment is ongoing.**

**b) Answering Plaintiff was put on anti-depressant medication in 2003. The name of the medication is in Plaintiff's medical records. Answering Plaintiff has had 2 biopsies and an examination of the thyroid glands.**

**c) None.**

**d) None.**

A 188

10.     Identify all judicial and administrative civil actions to which you have been a party or testifying witness, and include all identifying numbers assigned by the agency or court, as well as a description of the nature of the action.

**ANSWER:**

<u>Objection:</u>     **Answering Plaintiff objects to this Interrogatory in that it seeks information that is not relevant to, or reasonably calculated to lead to the discovery of admissible evidence in this litigation. Answering Plaintiff objects further in that the interrogatory seeks information that does not pertain either specifically or generally to issues relevant to this litigation. To this extent, the Interrogatory is overly broad, unduly burdensome and seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this litigation. Without waiving said objection: None.**

11.     Identify and describe in detail each of the "complaints" referred to in Paragraph 90 of the Complaint.

**ANSWER:**

    a)   **Plaintiff grieved the placement of Andrea Coleman (Collins) as Program Manager.**

    b)   **Plaintiff's work environment became hostile after she filed the grievance.**

    c)   **See documents provided. Plaintiff and her co-workers were moved into an office not big enough to comfortably house the staff.**

A 189

12.     Describe in detail each and every action taken by Defendant which you claim

was motivated by an intent to discriminate on the basis of race.

**ANSWER:**

**The move of four black employees out of their offices into a confined space different**

**from the rooms two other program participants occupy.  Plaintiff also feels the**

**following promotions were discriminatory: the promotion of Paul Morris without**

**posting; the acting position of Jacquita Wright Henderson; the promotion of**

**Andrea Collins over UBMS and the lateral move of Rosanna Brown-Simmons over**

**the UBMS program.  Program calendars for on-site school visits were changed from**

**30 days to 90 days and requests for modified work schedules were denied.**

13.     Describe in detail each and every action taken by Defendant which you claim

was motivated by an intent to retaliate.

**ANSWER:**

**Answering Plaintiff's work hours were changed; she was harassed through email**

**and there was a scrutiny of her work schedule.**

14.     Describe in detail each of the "promotions" and "transfer requests" referred to in

Paragraph 90 of the Complaint.

**ANSWER:**

**Answering Plaintiff was very qualified for the position of Program Manager.  Refer**

**to application, resume and documents provided, along with Answer to Interrogatory**

**number 12.  Angie McCloskie, a white female who became manager of Upward**

13

**A 190**

Bound Classic in November 2003, referred to her resume in documents. The entire program was secluded and there was inadequate space which was humiliating.

15. Describe in detail the "employment opportunities" referred to in Paragraph 87 of the Complaint.

ANSWER:

Answering Plaintiff was qualified for the position of Program Manager and due to the ongoing retaliation; Answering Plaintiff was denied the promotional opportunity. This has resulted in the loss of additional pay and additional stress related symptoms; this ongoing retaliation has led Answering Plaintiff to resign which would eliminate future opportunities for advancement. For further detail please also refer to Answer to Interrogatory numbers 12 and 14 above.

16. Describe in detail the "numerous opportunities for career advancement" referred to in Paragraph 95 of the Complaint.

ANSWER:

By not granting the first interview for Program Manger, plaintiff was denied advancement opportunities. Plaintiff was granted an interview on the second posting after the defendant had received a letter form the Department of Labor. See documents provided.

17. Describe in detail each and every "request and application for promotion" referred to in Paragraph 95 of the Complaint.

14

A 191

**ANSWER:**

**Please see Answer to Interrogatory number 16 above.**

18. Beginning on January 1, 2001, and continuing until the present, describe in detail each and every attempt you made to find employment, seek a promotion, or pursue education, training, or other alternatives. For each such attempt:

    (a) identify the employer to whom you made application for employment and/or promotion, formally or informally;

    (b) set forth the specific date(s) such application was made (if you cannot remember the specific date(s), so state and set forth the approximate date(s));

    (c) describe in detail what you did initially to request employment and/or seek promotion from the employer;

    (d) describe in detail every subsequent step in the process that you took with regard to the employer, including but not limited to, any interviews you attended, any correspondence you wrote, and any tests or forms you filled out;

    (e) describe in detail the salary, wages, and the value of any and all benefits, including but not limited to medical insurance, life insurance, retirement plan benefits, and fringe benefits for profit sharing; and

    (f) identify each document which refers or relates to, or upon which you rely in support of, the answers to this Interrogatory.

**ANSWER:**

**A 192**

See Answer to Interrogatory number 14 above. By way of further answer:

a) <u>October 2001</u>: Certificate Program in Educational Technology

b) <u>January 2002</u>:  Web Design and HTML language to help with website.

c) <u>August 2002</u>: Paul Morris' promotion- Special Program Manager- job was not posted.

d) <u>January 2003- November 2004</u>: Guiding our Youth Certificate Program

e) <u>March 2004</u>: Application for Program Manager UBMS; Jacquita Wright-Henderson hired as acting Program Manager for UBMS, I was not given an opportunity.

f) <u>July 2004</u>: Program Manager UBMS, see documents under position.

g) <u>January 2005</u>: Andrea Collins was transferred; this lateral move transfer option was not posted.

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (#2407)
1509 Gilpin Avenue
Wilmington, Delaware 19806
302-777-4680 phone
302-777-4682 facsimile
jmartin@margolisedelstein.com
Attorney for Plaintiff Brigitte Brown

Dated:    October 31, 2005

A 193

## AFFIRMATION

I, Brigitte Brown, hereby affirm:

1.  I am a Plaintiff named in the above-captioned civil action.

2.  I have read the within and foregoing Responses to the Interrogatories served by

    Defendant Delaware Technical and Community College, and know the contents

    thereof.

3.  The facts stated therein are true and accurate to the best of my knowledge and belief.


BRIGITTE BROWN


_____
Brigitte Brown, Plaintiff


Dated: October 31, 2005

**A 194**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KENNETH COLE,                          )
BRIGITTE L. BROWN,                     )
                                       )
                    Plaintiffs,        )
                                       )
            v.                         )      C. A. No.  05-270 KAJ
                                       )
DELAWARE TECHNICAL AND                 )
COMMUNITY COLLEGE,                     )
                                       )
                    Defendant.         )

### CERTIFICATE OF SERVICE

I, James H. McMackin, III, hereby certify that on April 17, 2006, I served a copy

of the **APPENDIX TO DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS**

**MOTION FOR SUMMARY JUDGMENT** by hand delivery on the following counsel:

> Jeffrey K. Martin, Esquire
> Lori A. Brewington, Esquire
> Margolis and Edelstein
> 1509 Gilpin Avenue
> Wilmington, DE  19806

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

_____
David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III, Esquire
jmcmackin@morrisjames.com
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900/5849
Attorneys for Defendant

Dated:  April 17, 2006