## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH COLE,<br>BRIGITTE BROWN,<br><br>Plaintiffs,<br><br>v.<br><br>DELAWARE TECHNICAL AND<br>COMMUNITY COLLEGE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No.  05-270 (KAJ)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III ) (#4284)
jmcmackin@morrisjames.com
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE  19899
(302) 888-6900/5849
Attorneys for Defendant

Dated:  June 2, 2006

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ........................................................................................1

ARGUMENT................................................................................................2

I.       SUMMARY JUDGMENT MUST BE GRANTED WHEN THE
NON-MOVING PARTY CONCEDES, OR FAILS TO ADDRESS,
THE MOVING PARTY'S DISPOSITIVE ARGUMENTS....................2

       A.     Claim Relocation Of Office Was Retaliatory ..............................2

       B.     Morris' "Promotion".....................................................................2

       C.     Work Hours..................................................................................3

       D.     Denial of Transfers .....................................................................3

       E.     Covenant Of Good Faith And Fair Dealing.................................3

       F.     Insisting On Following Established Procedures ...........................4

       G.     Constructive Discharge................................................................4

       H.     Mitigation....................................................................................5

II.      THE ABSENCE OF AN ADVERSE EMPLOYMENT ACTION
AND DISPARATE TREATMENT IS FATAL TO A TITLE VII
EMPLOYMENT DISCRIMINATION CLAIM.......................................5

       A.     The Relocation Or Assignment To An Objectively
Reasonable Location Is Not An Adverse Employment
Action..........................................................................................5

              1.     Plaintiffs Do Not Meet Their Burden Of Proof...............5

              2.     Plaintiffs Fail To Challenge The Cases Present
In The Opening Brief........................................................6

              3.     Cases Cited By Plaintiffs Do Not Support
Their Claim ......................................................................8

4.   Plaintiffs Attempt To Defeat Summary Judgment
By Suggesting There Are Issues As To
Immaterial Facts.............................................................11

B.   Plaintiffs' Disparate Treatment Allegations Fall Short .............11

C.   Cole Was Not Subject To Adverse Employment
Action When His Schedule Was Aligned With The
Standard Schedule Of Other College Employees.......................12

III.   PLAINTIFFS CANNOT ESTABLISH A *PRIMA FACIE* CASE OF
RACE DISCRIMINATION REGARDING THE MORRIS
RECLASSIFICATION BECAUSE THE COLLEGE COULD NOT
HAVE KNOWN COLE WANTED THE POSITION, HE COULD
NOT HAVE WORKED THE HOURS REQUIRED OF THE
POSITION, AND THE COLLEGE WAS NOT SEEKING
APPLICANTS FOR THE POSITION....................................................13

IV.   A PLAINTIFF WHO FAILS TO SHOW CAUSATION AND
FAILS TO SHOW SOMEONE FROM A DIFFERENT
CLASS RECEIVED A PROMOTION CANNOT MEET
HER BURDEN OF ESTABLISHING A *PRIMA FACIE*
CASE OF RACE DISCRIMINATION ..................................................15

V.   PLAINTIFFS CANNOT ESTABLISH RETALIATION
BECAUSE THERE IS NO OBJECTIVE EVIDENCE OF
A HOSTILE WORK ENVIRONMENT ...............................................16

VI.   CLAIMS FOR PROSPECTIVE EARNINGS MUST BE
DENIED WHEN A PLAINTIFF OFFERS NO EVIDENCE
TO SUPPORT THE CLAIM ..................................................................18

CONCLUSION..............................................................................................................20

# TABLE OF AUTHORITIES

**PAGE**

### Cases

*Bazile v. New York Housing Authority*,
    2002 U.S. Dist. Lexis 1639 (S.D. NY 2002) .................................................15

*Bickerstaff v. Vassar College*,
    354 F. Supp. 2d 276 (S.D. NY 2004).............................................................8, 10

*Buffa v. NJ Dept. of Judiciary*,
    56 Fed. Appx. 571 (3rd Cir. 2003).....................................................................4

*Chesapeake v. O. Ry. Co. v. Kelly*,
    241 U.S. 485 (1916).........................................................................................18

*Chuang v. University of California at Davis*,
    225 F.3d 1115 (9th Cir. 2000) ............................................................................6

*Clary v. Marley Cooling Tower Company*,
    1997 WL 150048 (D. Kan. 1997) ...................................................................7, 8

*Coleman v. Pepsi-Cola Gen. Bottlers, Inc.*,
    1998 U.S. Dist. Lexis 20114 (N.D. Ill. 1998)...............................................13

*Collins v. Illinois*,
    830 F.2d 692 (7th Cir. 1987) ...........................................................................8, 9

*Commonwealth of PA v. Thorp, Reed & Armstrong*,
    361 A.2d 497 (Pa. Cmwlth. 1976) ..................................................................10

*Daniel v. Skudder Kemper Investments, Inc.*,
    2002 WL 1160934 (N.D. Ill. May 23, 2002)...................................................7

*Daves v. Payless Cashways, Inc.*,
    661 F.2d 1022 (5th Cir. 1981) ........................................................................14

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)......................................................................................4, 17

*First Nat'l Bank v. City Serv. Co.*,
    391 U.S. 253  (1968).......................................................................................4, 5

*Goosby v. Johnson and Johnson Medical, Inc.*,
   228 F.3d 313 (3rd Cir. 2000) ...............................................................16

*Gorniak v. National R.R. Passenger Corp.*,
   889 F.2d 481 (3d Cir. 1989)................................................................18

*Grande v. State Farm Mut. Auto. Ins. Co.*,
   83 F. Supp. 2d 559 (E.D. PA. 2000) ....................................................6

*Haimovitz v. US Dept. of Justice*,
   720 F. Supp. 516 (W.D. PA 1989),
   *aff'd* 902 F.2d 1560 (3d Cir. 1990) ...................................................6, 7

*Hamlett v. Gonzales*,
   2005 WL 1500819 (N.D. Tex, June 15, 2005) .....................................8

*Harris v. Richards Manufacturing Co.*,
   511 F. Supp. 1193 (W.D. Tenn. 1981)...................................................9

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993)..............................................................................17

*Jensen v. Potter*,
   435 F.3d 444, (3rd Cir. 2006) ..............................................................17

*Lafate v. Chase Manhattan Bank (USA)*,
   123 F. Supp. 2d 773 (D. Del. 2000)....................................................10

*Lake v. V.I. Water and Power Authority*,
   875 F. Supp. 283 (D.V.I. 1994) ..........................................................16

*McBride v. Hospital of the University of Pennsylvania*,
   2001 WL 1132404 (E.D. PA. September 21, 2001) .............................16

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973).......................................................................13, 16

*Murray v. City of Winston-Salem*,
   203 F. Supp. 2d 493 (M.D. NC 2002) ..................................................8

*Nielsen v. Acorn Corrugated Box Co.*,
   2002 WL 1941365 (N.D. Ill. Aug. 21, 2002) .................................6, 7, 13

*Obi v. Anne Arundel County, MD*,
   142 F. Supp. 2d 655 (D. MD 2001),
   *aff'd* 28 Fed. Appx. 333 (4th Cir. 2002) ..............................................8

iv

*Olabode v. William Hecht Inc.,*
  1997 WL 805187 (E.D. PA Dec. 30, 1997)........................................................18

*Pellei v. International Planned Parenthood*
*Federation/Western Hemisphere Region, Inc.,*
  1999 WL 787753 (W.D. NY 1999) ...................................................................10

*Robinson v. BT Financial Corporation,*
  2003 WL 288402 (W.D. PA 200)........................................................................6

*Robinson v. City of Pittsburgh,*
  120 F.3d 1286 (3rd Cir. 1997) .............................................................................9

*Rodriquez v. Board of Education,*
  620 F.2d 362 (2nd Cir. 1980)...............................................................................9

*Thomas v. Secretary of Health and Human Services,*
  1999 WL 637214 (D. OR. Aug. 20, 1999) ..........................................................8

*Trout v. Hidalgo,*
  517 F. Supp. 873 (D.D.C. 1981)..........................................................................9

*Williams v. Rene,*
  72 F.3d 1096 (3rd Cir. 1995) .............................................................................18

*Wooley v. Colonial School Dist.,*
  1993 WL 431208 (D. Del. 1993)..........................................................................5

## Statutes and Other Authorities

Fed. R. Civ. P. 56(e) ............................................................................................17

42 U.S.C. § 2000, *et. seq.*.....................................................................................1

## INTRODUCTION

On April 17, 2006, defendant Delaware Technical and Community College (the "College") filed its Motion for Summary Judgment (the "Motion") on the complaints of Plaintiff Brigitte L. Brown ("Brown") and Plaintiff Kenneth Cole ("Cole", and together with Brown, the "Plaintiffs").  In the opening brief in support of the Motion (the "Opening Brief")[1], the College establishes the Plaintiffs' claims for race discrimination and retaliation under Title VII of the Civil Rights Act of 1963, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII") fail because they cannot establish the required elements of a *prima facie* case for such claims.  More specifically, Cole cannot establish intentional discrimination. Plaintiffs cannot show protected activity caused allegedly retaliatory conduct.  Plaintiffs never sought transfers.  Cole never applied for a promotion.  Plaintiffs cannot establish a hostile workplace.  The College also establishes Plaintiffs' claims for breach of the covenant of good faith and fair dealing fail due to the absence of evidence of fraud, deceit or misrepresentation. Finally, Plaintiffs' claims for prospective damages fail because Brown resigned and failed to mitigate, and Plaintiffs failed to identify experts.

Plaintiffs' answering brief (the "Answering Brief")[2] concedes the claims for failure to transfer and retaliation regarding the office relocation, implicitly concedes numerous other claims by ignoring arguments set forth in the Opening Brief, and raises no cogent factual or legal argument that would save their remaining claims from summary judgment.  Instead, they engage in an effort to muddle the immaterial facts surrounding the case in an attempt to sustain the case to trial.

This Reply Brief highlights some of the more important factual and legal inaccuracies in the Answering Brief, and underscores the reasons why the Court should grant summary judgment on all claims.

---

[1] Citations to the Opening Brief are designated "OB, Page(s) ___ ".

[2] Citations to the Answering Brief are designated "AB, Page(s) ___ ".

**ARGUMENT**

**I.    SUMMARY JUDGMENT MUST BE GRANTED WHEN THE NON-MOVING PARTY CONCEDES, OR FAILS TO ADDRESS, THE MOVING PARTY'S DISPOSITIVE ARGUMENTS**

### A.    Claim Relocation Of Office Was Retaliatory

Plaintiffs each filed a complaint (respectively, the "Brown Complaint" and the "Cole Complaint," and collectively, the "Complaints") alleging, *inter alia*, the relocation of the Upward Bound Math/Science ("UBMS") department to office number 408 ("Office 408") at the College was an act of retaliation against them for Cole engaging in protected activity.    (A-64)[3] ("Defendant …discriminated against Plaintiff in retaliation…when it (c) forced Plaintiff to relocate…"); (A-130) (same).    Faced with the inescapable fact that their retaliation claims fail because the relocation to Office 408 preceded any protected activity, Plaintiffs now deny alleging the relocation was retaliatory.    (AB, page 25) ("the Plaintiffs have not alleged that the move to Room 408 was in retaliation…").    Since the Plaintiffs now concede the relocation to Office 408 preceded the allegedly protected activity, summary judgment is warranted as to Count II of each of the Complaints regarding the office relocation.

### B.    Morris' "Promotion"

The Answering Brief disregards the fact Cole was ill shortly after Paul Morris ("Morris") was reclassified to Special Program Director in July 2002 and was unable to work more than 20 hours per week on doctor's orders. (OB, page 24).    As a result, Cole could not have performed the Special Programs Director position for long even if he was awarded the position.    As he did not attempt to refute this argument in the Answering Brief, he concedes he could not have worked the hours the Special Programs Director position demanded.    Therefore, summary judgment is warranted as to Count I (Racial Discrimination) with respect to the Morris reclassification and Count III (Failure to Promote) of Cole's Complaint.

---

[3] Citations to "A___" refer to the Appendix filed with the Opening Brief.

2

### C.    Work Hours

The Answering Brief makes no reference to the fact all employees of the College generally were required to maintain the working hours of 8:30 a.m. to 4:30 p.m. (OB, page 29). Nor does it address the fact Rose Henderson ("Henderson") disregarded College policy in permitting Cole to work hours other than 8:30 a.m. through 4:30 p.m. (OB, page 29). Furthermore, it ignores the fact the College did not foreclose the chance Cole would be allowed to continue to work hours outside of the established working hours if he documented the need to do so. (OB, pages 29-30). Therefore, the College is entitled to judgment as a matter of law with respect to Cole's allegations that his hours were changed in retaliation for allegedly engaging in protected activity.

### D.    Denial Of Transfers

Plaintiffs allege in the Complaints the College retaliated against them by denying transfers. (A 64; A 130). The Answering Brief concedes the Plaintiffs did not apply for a transfer because they were not "eligible to request a transfer into the Program Manager position because a transfer requires that the position change be within the same pay grade." (AB, page 41). There is no evidence this facially neutral policy is discriminatory or retaliatory, or was applied in a discriminatory or retaliatory manner. Therefore, summary judgment should be granted as to Count II of each of the Complaints with respect to the denial of transfers.

### E.    Covenant Of Good Faith And Fair Dealing

Among the requirements for establishing a *prima facie* case of breach of the covenant of good faith and fair dealing is evidence of fraud, deceit or misrepresentation. (OB, page 36). Plaintiffs do not refute this standard,[4] nor do they use the words "fraud," "deceit" or "misrepresentation" anywhere in the portion of their brief addressing this issue. (AB, page 33). Instead, they ground their breach of the covenant of good faith and fair dealing claim on a "public

---

[4] In fact they incorporate the same standard by reliance upon a Delaware Supreme Court case for the same proposition.

policy" argument due to allegations of discrimination and retaliation. They do so without citation to authority. Because the Plaintiffs do not plead and cannot prove fraud, deceit, or misrepresentation, summary judgment must be granted as to Count IV of each the Complaints.

###### F.      Insisting On Following Established Procedures

Plaintiffs wholly ignore the College's arguments and supporting cases which state that demanding employees follow procedures and be accountable is not an adverse employment action. (OB, pages 21-22). *See Buffa v. NJ Dept. of Judiciary*, 56 Fed. Appx. 571, 576 (3rd Cir. 2003).[5] Furthermore, they disregard the College's argument that an employer who requires employees to document their whereabouts and be accountable for their job duties is not placing a burdensome demand on its employees – just an inconvenience which is not actionable for purposes of Title VII. (OB, page 22). *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998). Therefore, summary judgment should be granted with respect to the alleged "micro-management" of the UBMS department.

###### G.      Constructive Discharge

Plaintiffs ignore the College's argument that Brown cannot <u>prove</u> constructive discharge. (OB, pages 36-37). Brown falls short of meeting the high burden of showing constructive discharge "even if she alleges her resignation (nearly three years after the alleged discriminatory and retaliatory conduct commenced) was a constructive discharge..." (OB, page 37). Brown ineffectively attempts to sidestep the fatal flaws in her constructive discharge claims in two ways. First, Brown advances a convoluted argument with respect to pleading standards. Second, Brown argues the Brown Complaint alleges constructive discharge. At this stage of the proceeding, it is not enough to plead constructive discharge. *First Nat'l Bank v. City Serv., Co.*, 391 U.S. 253, 289-90 (1968) (A non-moving party is not entitled "to get to a jury on the basis of the allegations in their complaints coupled with the hope that something can be developed at trial in the way of

---

[5]All unreported cases cited herein were cited in either the Opening Brief or the Answering Brief.

evidence to support those allegation."). In order to defeat summary judgment, Brown must offer evidence supporting her claim. In short, Brown cannot salvage the claim by focusing on the pleading of allegations. Constructive discharge is a high burden for a plaintiff to meet. Brown offers no evidence to meet this burden. Consequently, if any of her claims survive summary judgment, damages cease at the moment of her resignation.

### H.    Mitigation

The final issue left unanswered by the Answering Brief is the fact Brown has produced no evidence she attempted to find work after leaving the College.[6] In her deposition testimony she stated that she tried to find work, but she failed to produce evidence she submitted any applications for employment. Brown attempts to shift her burden to the College by suggesting the College must prove Brown failed to make an effort to mitigate. The College does not bear the burden of proving Brown did not apply for jobs. Furthermore, Brown cannot hope something materializes at trial to support her case. *See First Nat'l Bank*, 391 U.S. at 289-290. Rather, the burden must be on Brown to produce, before the close of discovery, some evidence (e.g., an email, a fax cover sheet, a phone bill, a letter) showing she applied for jobs. Without such evidence, she cannot show she attempted to mitigate her purported losses, and, as a result, she is not entitled to prospective damages.

## II.    THE ABSENCE OF AN ADVERSE EMPLOYMENT ACTION AND DISPARATE TREATMENT IS FATAL TO A TITLE VII EMPLOYMENT DISCRIMINATION CLAIM

### A.    The Relocation Or Assignment To An Objectively Reasonable Location Is Not An Adverse Employment Action

#### 1.    Plaintiffs Do Not Meet Their Burden Of Proof

Plaintiffs cite a Ninth Circuit case for the proposition that a substantial interference with work facilities constitutes a material change sufficient to amount to an adverse employment

---

[6] Plaintiffs' effort to distinguish *Wooley v. Colonial School Dist.*, 1993 WL 431208 (D. Del. 1993) because the issue of mitigation arose therein during a jury charge, rather than during briefing on summary judgment, does not hold water. In *Wooley*, the jury charge was warranted, as here, because of an absence of proof of efforts to mitigate.

action. *See Chuang v. University of California at Davis*, 225 F.3d 1115 (9th Cir. 2000). Plaintiffs focus the Court on *Chuang* because the relocation of lab space there is found to be adverse employment action. However, the Court reaches this conclusion because the lack of facilities subsequent to the relocation made it impossible for the employees to perform their job functions. *Id.* at 1125-1126 (finding the relocation of the plaintiffs' laboratory resulted in, *inter alia*, disrupted research, lost experimental subjects, lost and withheld research grants which provided the plaintiffs' salaries, damaged and lost equipment, and a lack of necessary facilities). In this case, Plaintiffs make no allegations (much less produce evidence) they could not perform their job functions in Office 408. Plaintiffs focus on how they felt when working in Office 408 rather than attempting to paint a picture of an objectively unreasonable place to work. Whether an adverse employment action occurs is decided using an objective standard. *Haimovitz v. US Dept. of Justice*, 720 F. Supp. 516, 526-527 (W.D. PA 1989), aff'd 902 F.2d 1560 (3rd Cir. 1990); *Grande v. State Farm Mut. Auto. Ins. Co.*, 83 F. Supp. 2d. 559, 564 (E.D. PA. 2000); *Robinson v. BT Financial Corporation*, 2003 WL 288402 at *5 (W.D. PA Feb. 11, 2003). They fail to produce objective evidence showing the relocation was a material change in the terms and conditions of their employment, and therefore cannot meet this standard.

### 2. Plaintiffs Fail To Challenge The Cases Present In The Opening Brief

The College cites numerous cases comparing various office relocations that are and are not adverse employment actions. (OB, pages 13-15). The Plaintiffs take issue with only two of the cases. First, they purport to distinguish *Nielsen v. Acorn Corrugated Box Co.*, 2002 WL 1941365 (N.D. Ill 2002) on the basis of the amount of time the employee was subject to an allegedly adverse employment action.[7] The College cites *Nielsen* for purposes of the comparison

---

[7] Plaintiffs state the case is distinguished because the employee in *Nielsen* was only relocated for "a brief period of time." (AB at 16). The *Nielsen* Court does not indicate the time was brief. The employee was relocated to the "inferior" workspace on October 9, 2000, *Id.* at *2, and continued to work there until she was terminated on December 7, 2000. *Id.* at *3. By correlation, the UBMS department was relocated on October 8, 2002 and Cole filed a grievance on October 7,

between the circumstances in *Nielsen* (the plaintiff was subjected to a "'broken down tiny little makeshift desk' that had 'dangerous wires all over the place'") and the circumstances here (the UBMS department had new furniture). *Nielsen* is not cited for, and does not stand for, the proposition that there are varying degrees of adverse employment actions dependent upon the duration of exposure to an "inferior" workspace as Plaintiffs suggest. Furthermore, the College cites *Nielsen* because the *Nielsen* Court finds instructive the fact there was no loss of salary, benefits, title or responsibilities related to the relocation there, and the employee's replacement occupied the same "inferior" workspace. *Id.* at *2. By the same token, Plaintiffs suffered no loss of salary, benefits, or responsibility, and Brown's replacement continues to occupy Office 408.

Second, Plaintiffs mention *Clary v. Marley Cooling Tower Co.*, 1997 WL 150048 (D. Kan. 1997) without making an effort to distinguish it. Instead, they admit no safety violations were present in Office 408, and incorrectly suggest the Fire Marshall instructed the College to install another electrical outlet.[8]

Plaintiffs' ineffectual attempt to address the two cases addressed above is not accompanied by an effort to distinguish or even address the litany of other cases offered by the College which show what is, and what is not, adverse employment action with respect to an office relocation. For example, they completely ignore the fact courts reject claims that similar office relocations are adverse employment action, when, for example, the office is adequately equipped, adequately furnished, well-lit, easily accessible and not in a hallway, the employees had a secretary before and after the relocation, and there were no safety concerns. (OB, pages 13-15).

Plaintiffs also disregard the cases cited in the Opening Brief which reject claims that inconvenient relocations are adverse employment action. (OB, pages 17-18). *See Haimovitz*, 720 F. Supp. at 526-527; *see also Daniel v. Skudder Kemper Investments, Inc.*, 2002 WL 1160934 at

---

2002- even before exposure to the "inferior" workspace. Therefore, distinguishing *Nielsen* on a purported "brief" period of time is inapposite.
[8] A review of document B-0086, cited for the suggestion the College was so instructed, does not support that conclusion.

7

*6 (N.D. Ill. May 23, 2002); *Bickerstaff v. Vassar College,* 354 F. Supp. 2d 276, n.6 (S.D. NY 2004); *Nielsen,* 2002 WL 1941365 at *6; *Obi v. Anne Arundel County, MD,* 142 F. Supp. 2d 655, 674 (D. MD 2001), aff'd 28 Fed. Appx. 333 (4th Cir. 2002); *Hamlett v. Gonzales,* 2005 WL 1500819 at *15 (N.D. Tex, June 15, 2005); *Clary,* 1997 WL 150048 at *18.  Nor do they address the argument that accepting inconvenience or unhappiness caused by a relocation as adverse employment action would open the floodgates to a wave of litigation focusing on disputes over office locations and assignments of workspace. (OB, pages 18-19).

Plaintiffs attempt to bolster their claim of adverse employment action by contending the terms of the funding grant were violated by a purported lack of privacy and adequate workspace. (AB, pages 15-16).  Plaintiffs offer no evidence of a finding that the federal grant was violated. Moreover, they offer no plausible connection between the grant and adverse employment action. While Plaintiffs dwell on the fact they allegedly had inadequate privacy, they make no effort to distinguish *Thomas v. Secretary of Health and Human Services,* 1999 WL 637214 at *7 (D. OR. Aug. 20, 1999) ("The loss of a private office is not a significant enough change in the conditions of employment to be considered an adverse employment action.") or *Murray v. City of Winston-Salem,* 203 F. Supp. 2d 493, 502 (M.D. NC 2002) ("relocating Plaintiff's work space from a private office to a cubicle is not sufficient to constitute adverse employment action.").

### 3.   Cases Cited By Plaintiffs Do Not Support Their Claim

Plaintiffs cite cases in support of their contention the relocation amounted to adverse employment action.  First, they cite *Collins v. Illinois,* 830 F.2d 692 (7th Cir. 1987).  *Collins* is not a change in work location case.  Rather, it is a change in job function case.  Indeed, the plaintiff:

> "was transferred away from a job she enjoyed.  She was placed in a new department.   Her supervisors seemed unsure of what plaintiff's responsibility and authority would be at the newly created job.   Plaintiff was relegated to doing reference work instead of consulting.   Plaintiff previously had her own office, a telephone at her desk, printed business cards, and listings in professional publications as a library consultant. After her transfer plaintiff was placed at a desk out in the open.  She did not have her own office.   Her desk was situated just outside her supervisor's office where a receptionist's desk typically would be located.

8

> Plaintiff had no telephone at her desk with which she could conduct her business responsibilities.   She was not allowed to have business cards printed and she was no longer listed in professional publications as a library consultant." *Id.* at 704.

*Collins*, therefore, does not present facts analogous to the facts here and does not support a finding of adverse employment action.

Next, Plaintiffs cite *Rodriquez v. Board of Education*, 620 F.2d 362 (2nd Cir. 1980) for the proposition that there can be adverse impact without a reduction in salary and benefits. Numerous Third Circuit cases can be cited for this same proposition, which is not in dispute. *See, e.g., Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir. 1997).

Plaintiffs cite *Trout v. Hidalgo*, 517 F. Supp. 873 (D.D.C. 1981) for the proposition that the Court finds "discriminatory action where [plaintiff] was removed from her office to an undesirable location." (AB, page 17).  This is a misleading interpretation of *Trout*. The office relocation was merely an element in a sequence of discrimination.  The plaintiff met her burden under Title VII when, among other things, she received unwarranted inferior ratings, had her office removed to an undesirable location, did not receive appropriate training, and failed to have her position graded comparably to other similarly functioning employees.  *Id.* at 890, n. 67.  The case offers nothing about the conditions of the plaintiff's new office location, and therefore lends little support for Plaintiffs' position.

Plaintiffs cite *Harris v. Richards Manufacturing Co.*, 511 F. Supp. 1193 (W.D. Tenn. 1981) in an effort to support the conclusion that being moved to an isolated corner is adverse employment action.  (AB, page 17).  However, *Harris*' move to an isolated corner was only part of the story.  Plaintiff, who was the only employee in the company's history to file a EEOC charge while still employed, was instructed to stop filing complaints with the federal government, had numerous false and disparaging memos placed in her personnel file without her knowledge, and was fired for insubordination (a non-terminable offense according to the company handbook) for her refusal to accept a position relocating her to the isolated corner.  The new position would

9

have been a permanent demotion of "a high seniority employee, from a highly technical and skilled job in hygienic surroundings to an unskilled, eyeball inspection of dirty and greasy in-process…goods in an isolated area of the plant." *Id*. at 1203. Therefore, there is much more to the finding of adverse employment action in *Harris* than the mere fact that the relocation was to an isolated area.

Plaintiffs cite to *Commonwealth of PA. v. Thorp, Reed & Armstrong*, 361 A.2d 497 (Pa. Cmwlth. 1976) for the proposition that directing an employee to "relocate her personal files to some other facility" amounts to adverse job impact. (AB, page 17). To begin with, this is not a Title VII case. More importantly, the case is not a relocation of workspace case. It is, in substance, a termination case. *See Id.* at 500 (the law firm was "disassociate[ing] her from the firm."). Indeed, the Court found retaliation for filing a charge where the employee was placed on an indefinite leave of absence, relieved of a fee sharing agreement, directed to relocate her personal files, and directed to cease using firm stationary because the law firm where she worked was, in effect, severing its ties with her. *Id.* at 503. In all events, this case does not support Plaintiffs' position because it is not a relocation of workspace case.

Plaintiffs cite *Pellei v. International Planned Parenthood Federation/Western Hemisphere Region, Inc.*, 1999 WL 787753 (W.D. NY 1999) for the holding that a relocation to a dimly lit, small and isolated cubicle may be adverse employment action. (AB, page 17). This case is readily distinguishable because Office 408 is not a cubicle, and it is not dimly lit. (A 142) (Office 408 had natural sunlight). *See Bickerstaff,* 354 F. Supp. 2d at 282 (finding that a relocation of office space was not an adverse employment action because, *inter alia*, plaintiff had sufficient lighting to complete her job duties).

Finally, Plaintiffs rely on *Lafate v. Chase Manhattan Bank (USA)*, 123 F. Supp. 2d 773 (D. Del. 2000), stating the facts are "nearly identical to the present case." (AB, page 18). The only common thread between *Lafate* and this case is that both cases have an office relocation component. In *Lafate* there was a sequence of conduct, including being ignored and belittled by

10

supervisors, being untrained for assigned work, and having confidential personnel information shared improperly. The office relocation was a "small part of the conduct at issue." *Id.* at n.2. Here, rather than being ignored by supervisors, there were a litany of meetings held for the Plaintiffs' benefit and at their request so they could complain about their office relocation. There is no objective evidence Plaintiffs were belittled by supervisors, or untrained for assigned work. Moreover, the office relocation is the central thrust of Plaintiffs' case, as opposed to a small part of the conduct at issue.

### 4. Plaintiffs Attempt To Defeat Summary Judgment By Suggesting There Are Issues As to Immaterial Facts

Plaintiffs seek to divert attention from the absence of an adverse employment action by focusing on immaterial facts. First, Plaintiffs present contradictory assertions regarding who was located in Office 408 at different times. (AB, page 18). Second, Plaintiffs object to their previous statements (that a racial conflict between non-parties prompted the move) being characterized as inconsistent with their allegations of racial discrimination. (AB, pages 18-19). Third, they attempt to negate the significant fact a relocation of the UBMS office space was contemplated before Plaintiffs started working at the College by arguing it was not until after they started working at the College the decision was made to locate them in a certain office. (AB, page 20). None of these arguments involve material facts, or have merit. More importantly, such arguments fail to address the fact Office 408 was an objectively reasonable place to work, and Plaintiffs can perform their job functions in Office 408. The focus must be on the Plaintiffs' failure to satisfy their burden of presenting proof the relocation to Office 408 subjected them to an adverse employment action. The absence of such evidence dictates that summary judgment be granted.

### B. Plaintiffs' Disparate Treatment Allegations Fall Short

Plaintiffs allege a number of ways they purportedly were treated differently than their Caucasian colleagues. (AB, page 21). First, they contend similarly situated Caucasian

11

employees had their own offices which allowed for confidentiality and sufficient space. In support, they cite to the record at B-0044-0053. (AB, page 21). A review of the pictures in this range show nothing but some offices. There is no indication the offices are "better" or "worse" than Office 408, and they do not support Plaintiffs' position that Caucasians were treated more favorably than Plaintiffs. Second, they state other similarly situated employees were provided with partitions but they were not. (AB, page 21). Putting to the side whether such a contention would be material if true, the argument is at war with the record. Plaintiffs refused partitions, claiming the room was too small for partitions. (C 1,2).[9] Plaintiffs imply, without offering evidence, they are the only College employees the College relocated from "private" offices to shared offices, who had too little space for files and furniture, or who had circuit breakers trip on occasion. (AB, pages 15, 21). Finally, they complain of noise and heating and cooling issues in Office 408. (AB, page 16). However, the "noisy staplers" and heating and cooling issues in an office exist whether there is one employee in the office or three. Therefore, the fact three persons were in Office 408 is irrelevant and does not show disparate treatment. Furthermore, Plaintiffs ignore the undisputed fact the College was going through growing pains at the time of the relocation. (OB, page 19). Therefore, they do not set forth evidence sufficient to meet their burden of showing they were treated less favorably than their Caucasian colleagues, and summary judgment is warranted.

### C.    Cole Was Not Subject To Adverse Employment Action When His Schedule Was Aligned With The Standard Schedule Of Other College Employees

Plaintiffs contend the change of Cole's start time from 8:00 a.m. to 8:30 a.m. was an adverse employment action because it reduced his work hours and his income. They offer no support for this contention. Nothing in the record suggests his income was reduced or he had to continue to leave at 2:00 p.m.[10] Instead, the record shows he was to continue to leave work at

---

[9] Citations to "C__" refer to the Appendix, filed contemporaneously herewith.

[10] Cole cannot have it both ways. He has not explicitly stated he had to leave at 2:00 p.m. to attend to his side business, but that is the implication which must be drawn when he contends the

12

2:30 p.m., which results in no lost compensation- just a one half hour change in the beginning and end of his workday. (A 56). Furthermore, in Cole's deposition he was asked to identify his lost pay. (C 3). He stated he claims loss of pay regarding the Morris promotion, but he did not say he claims lost pay resulting from the change in his work hours. (C 3). Therefore, the sole case Plaintiffs rely on, *Coleman v. Pepsi-Cola Gen. Bottlers, Inc.*, 1998 U.S. Dist. Lexis 20114 (N.D. Ill. 1998), is irrelevant because the change in work hours resulted in no lost compensation. Furthermore, Plaintiffs do not try to distinguish *Nielsen,* 2002 WL 1941365 at *5, which found a one half-hour change in working hours did not amount to adverse employment action. This provides another basis for the grant of summary judgment.

### III.   PLAINTIFFS CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RACE DISCRIMINATION REGARDING THE MORRIS RECLASSIFICATION BECAUSE THE COLLEGE COULD NOT HAVE KNOWN COLE WANTED THE POSITION, HE COULD NOT HAVE WORKED THE HOURS REQUIRED OF THE POSITION, AND THE COLLEGE WAS NOT SEEKING APPLICANTS FOR THE POSITION

Plaintiffs contend in the Answering Brief "There has been no evidence presented to indicate that Cole was not qualified for the position of Special Programs Director." (AB, page 23). However, it is not the College's burden to establish Cole was not qualified for Morris' position. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Further, Plaintiffs bear the burden of establishing, among other things, the circumstances surrounding the promotion give rise to an inference of unlawful discrimination. *Id.* There are no such circumstances.

Plaintiffs produced no evidence the College knew or should have known Cole was interested in Morris' position. To the contrary, the reclassification had nothing to do with Cole. Indeed, there is no evidence suggesting the College had reason to know Cole was interested, might be interested, or was a candidate for the job. Instead, all evidence points to Cole being disqualified as a candidate in that: (1) He was a part-time employee; (2) He had never applied for

---

changed start time effected his compensation. However, if he had to leave at 2:00 p.m., then he is tacitly admitting his side business did not afford the flexibility to accommodate working Morris' hours. *See* Section III.

13

any other position, full-time[11] or part-time; (3) He never requested a promotion; and (4) He never informed the College of his interest in another position. (OB, pages 22-24). Plaintiffs in the Answering Brief only attempt to rebut the first ground - he was a part-time candidate. (AB, page 24). They ignore the fact the reclassification was not about Cole, and he has never applied for, requested, or expressed an interest in any other position. (OB, pages 22-24). As a consequence, the College had no reason to even consider him available for the position. *See Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1026 (5th Cir. 1981) ("Appellant has fallen short of meeting her *prima facie* burden for a very simple, and fundamental, reason. She failed in the first instance to place herself in a position where Payless' promotion policy would have considered her available for the job she sought.").

The Answering Brief suggests Cole may have considered seeking assistance to manage his side-business and thus been able to work the hours demanded of Morris' full-time position. (AB, page 24). Assuming this is true, (which is dubious because Cole still refuses to commit to an interest in the Special Programs Director position (A 18)), the Answering Brief does not address the College's argument that shortly after Morris was reclassified to Special Program Director in July 2002, Cole was unable to work more than 20 hours per week upon doctor's orders.[12] (OB, page 24). The record shows Cole was only able to work 20 hours per week, so he could not have performed the Special Programs Director position for long and his damages must be limited accordingly.

Finally, Plaintiffs ineffectively attempt to create a material issue of fact in responding to the College's argument it was not seeking applicants at the time of the Morris reclassification.

---

[11] The fact he has not applied for a full-time position in the three and one half year period since the Morris reclassification (or before) is both telling of Cole's unwillingness to work full-time, and evidence he has not attempted to mitigate his alleged "damages" from not being offered Morris' full-time position.

[12] Notably, Cole is claiming damages commencing from the time Morris was "promoted" going forward, purportedly calculated at Morris' rate of compensation. However, Cole is claiming damages as if Morris was never "declassified" back to his former position, subsequent to Cole's grievance. (A 56). The position, therefore, went away upon the filing of the grievance and Cole's alleged damages must be cut off as of the time the "promotion" was rescinded.

14

(OB, pages 24-25; AB, pages 24-25). Assuming the vacancies Plaintiffs assert in the Answering Brief existed, the fact remains Plaintiffs fail to produce evidence the College was seeking applicants for the Morris position. Rather, the Plaintiffs merely point to vacancies, as opposed to open positions for which applicants were sought. Therefore, Plaintiffs cannot establish a *prima facie* case and summary judgment is warranted.

**IV.   A PLAINTIFF WHO FAILS TO SHOW CAUSATION AND FAILS TO SHOW SOMEONE FROM A DIFFERENT CLASS RECEIVED A PROMOTION CANNOT MEET HER BURDEN OF ESTABLISHING A *PRIMA FACIE* CASE OF RACE DISCRIMINATION OR RETALIATION**

Brown cannot sustain her failure to promote claim on the basis of race discrimination for the obvious reason that someone of her protected class received the promotion she sought and Brown has offered no counter, or explanation, to this fact.[13] (A 151). Brown cites *Bazile v. New York City Housing Authority*, 2002 U.S. Dist. Lexis 1639 (S.D. NY 2002) for the proposition that "An employer may not escape liability for discrimination against an African-American employee on the basis of race because it can prove that it promoted other African-Americans." (AB, page 29). Reliance on this case is misleading and inapposite. First, *Bazile* does not involve this situation, where a member of a protected class (i.e. Brown) lost out on a promotion to another member of the same protected class (i.e. Coleman). Rather, only Caucasians received the disputed promotions in *Bazile*. *Id.* at *40. *Bazile* addresses the issue of the promotion or hiring of members of a protected class when the employer argued that minorities received <u>other</u> promotions, not the disputed promotions. *Id.* at *41. Second and most important, the law in this Circuit is just the opposite of what Plaintiffs suggest to the Court. In a case directly on point involving a racial discrimination claim brought by an African-American female who lost out on a promotion to another African-American female, the Court holds: "[b]ecause the position was filed by someone in the same class as plaintiff, there can be no inference of discrimination under the

---

[13] Plaintiffs make note of the fact Andrea Coleman ("Coleman") was on Brown's interview committee and use this fact to argue pretext. However, Coleman, as is Brown, is African-American. This Court certainly cannot lend credence to the suggestion an African-American discriminated against Brown on the basis of her race in denying Brown's application.

*McDonnell-Douglas* proof scheme." *Lake v. V.I. Water and Power Authority*, 875 F. Supp. 283, 285 (D.V.I. 1994). Brown cannot possibly counter the undisputed fact that both she and the successful candidate, Coleman, belong to the same protected class. Therefore, her failure to promote claim fails because she cannot establish a *prima facie* case.

By the same token, Brown cannot establish the award of the promotion to another African-American employee constitutes retaliation.[14] Without attempting to distinguish *Goosby v. Johnson and Johnson Medical, Inc.*, 228 F.3d 313, 323 (3rd Cir. 2000) (finding a fifteen month period- the same length of time present here- to be too attenuated for purposes of establishing adverse action), Brown contends the mere passage of time does not suffice as proof against a finding of retaliation. However, Brown offers no evidence to show a causal link between her charge of discrimination and her denial of the Program Manager promotion fifteen months later. Therefore, summary judgment is warranted on Brown's retaliation by failure to promote claim.

## V.    PLAINTIFFS CANNOT ESTABLISH RETALIATION BECAUSE THERE IS NO OBJECTIVE EVIDENCE OF A HOSTILE WORK ENVIRONMENT

Plaintiffs attempt to refute the overwhelming evidence showing the UBMS department was not a hostile workplace with statements about how they "felt." Plaintiffs argue Cole was subject to a hostile workplace because he "felt as if he was being talked down to and belittled because he was African-American, and that nothing he said made any difference," he "feels degraded each day he goes to work," and he feels "embarrassed, humiliated." (AB, pages 31, 32). Furthermore, Brown says she "felt intimidated, interrogated and that Defendant was on a 'search

---

[14] Plaintiffs state in the Answering Brief Brown had an intention of engaging in protected activity. (AB, page 19). However, the fact remains she did not express any purported feelings of discrimination until she filed her charge of discrimination. Furthermore, Plaintiffs have mis-stated the standard in this Circuit for what is protected activity. They state "A plaintiff is deemed to have engaged in protected opposition…if he can establish he had a reasonable belief that Title VII was violated." (AB, page 19). This is not the standard. *See McBride v. Hospital of the University of Pennsylvania*, 2001 WL 1132404 at *7 (E.D. PA. September 21, 2001) (holding that complaints of unfair treatment on at least one other occasion did not constitute a protected activity for Title VII purposes). In this Circuit, unless a plaintiff "mention[s] race or discrimination," complaints do not suffice for purposes of establishing protected activity. *Id.*

and destroy' mission. Brown also felt as if she was being talked down to and belittled because she was African-American." (AB, page 32). Critically, in this Circuit, courts review hostile work environment claims upon an objective standard. *Jensen v. Potter*, 435 F.3d 444, 451 (3rd Cir. 2006) ("Of course, Jensen's subjective reaction to the discrimination is not enough. She must also show an objectively hostile work environment."). Plaintiffs offer no evidence in support of these "feelings" and no evidence showing these feelings are objectively reasonable.

Plaintiffs ignore the high standard for asserting a hostile workplace claim. *Faragher*, 524 U.S. at 788. First, the Cole Complaint is the only evidence Plaintiffs rely on for their contention that other College employees visit Office 408 and comment on its size.[15] (B-0121, B-0123). They offer nothing further and cannot simply rely on the pleadings. *See*, Federal Rule of Civil Procedure 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading"). Second, Cole says he was threatened with termination due to his need to reduce his work hours. (AB, page 32). However, he refused to provide the documentation requested by the College, prompting the threat of termination for refusing to document his reduced schedule. Importantly, regardless of how this request for documentation made Cole feel, one single threat of termination cannot possibly equate to a workplace "permeated by discriminatory intimidation, ridicule and insult that [was] sufficiently severe and pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Third, Brown attempts to support her hostile workplace claim with a comment purportedly made by Morris to Henderson.[16] (AB, page 32). Assuming such a comment was "hostile,"[17] it was not made in Brown's presence and therefore is not actionable as a matter of law. (OB, 35). The alleged non-employee "monkeys" comment which occurred outside Brown's presence suffers from the same flaw. Finally, Plaintiffs'

---

[15] Plaintiffs ignore the fact raised in the Opening Brief that Cole still works at the College 3 ½ years after the allegedly discriminatory and retaliatory conduct commenced. (OB, pages 34-35).

[16] The sole evidentiary support offered for such comment is an untested affidavit submitted with the Answering Brief.

[17] The Court can only speculate on the context in which the statement was allegedly made.

17

argument that meetings came across as witch hunts is wholly contradicted by the simple fact most of the numerous meetings held before and after the relocation of the Plaintiffs' workspace were held <u>at the Plaintiffs' request</u>. (e.g., A 71; A 72; A 74; A 77). Were this a witch hunt, one would think the College instigated the meetings.

## VI.    CLAIMS FOR PROSPECTIVE EARNINGS MUST BE DENIED WHEN A PLAINTIFF OFFERS NO EVIDENCE TO SUPPORT THE CLAIM

Plaintiffs claim they can prove prospective earnings without hiring economic expert witnesses but make no efforts to distinguish *Olabode v. William Hecht Inc.*, 1997 WL 805187 at *12 (E.D. PA Dec. 30, 1997) (in post-trial briefing, reversing a jury award of front-pay damages when the plaintiff failed "to produce evidence on which the jury could have reasonably based a calculation of front pay damages," and noting "[p]laintiff also did not present expert testimony concerning his future economic losses"). They cite authority for the proposition that expert testimony is required when the jury will hear evidence it does not understand, yet they refuse to identify expert witnesses who must testify as to Plaintiffs' claims for prospective earnings.

An expert witness will be necessary to determine prospective earnings damages because any such award would have to be reduced to net present value. *See Chesapeake & O. Ry. Co. v. Kelly*, 241 U.S. 485, 490 (1916) ("But, as a rule, and in all cases where it is reasonable to suppose that interest may safely be earned upon the amount that is awarded, the ascertained future benefits ought to be discounted in the making up of the award"); *see also Williams v. Rene*, 72 F.3d 1096, 1102 (3rd Cir. 1995) ("Moreover, at no time was the $6 million projection reduced to present worth, an obligation that plaintiff must shoulder.") citing *Gorniak v. National R.R. Passenger Corp.*, 889 F.2d 481, 486 (3d Cir.1989). In order to present evidence of net present value to a jury, an expert witness is required. *See Chesapeake & O. Ry. Co.*, 241 U.S. at 489 ("to figure interest on deferred payments, with annual rests, and reach a present cash value of such loss to

18

each dependent is more than ought to be asked of anyone less qualified than an actuary.").[18] Therefore, the College is entitled to a judgment that Plaintiffs cannot pursue damages for future economic losses because they failed to identify the necessary experts before the deadline for such identification.

---

[18] Another way to introduce potentially understandable evidence of net present value is through actuarial tables, but no such evidence has been produced by Plaintiffs. *See Chesapeake & O. Ry. Co.*, 241 U.S. at 491 ("Whether the difficulty should be met by admitting the testimony of expert witnesses, or by receiving in evidence the standard interest and annuity tables in which present values are worked out at various rates of interest or for various periods covering the ordinary expectancies of life, it is not for us in this case to say").

19

## CONCLUSION

For the foregoing reasons, the College requests that the Court grant its motion for summary judgment.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

_____

David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III (#4284)
jmcmackin@morrisjames.com
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE  19899
(302) 888-6900/5849
Attorneys for Defendant

Dated:  June 2, 2006

20

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH COLE,<br>BRIGITTE L. BROWN,<br><br>Plaintiffs,<br><br>v.<br><br>DELAWARE TECHNICAL AND<br>COMMUNITY COLLEGE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)      C. A. No.  05-270 KAJ<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I, James H. McMackin, III, hereby certify that on June 2, 2006, I electronically filed the attached **DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

>Jeffrey K. Martin, Esquire
>Lori A. Brewington, Esquire
>Margolis and Edelstein
>1509 Gilpin Avenue
>Wilmington, DE  19806

>MORRIS, JAMES, HITCHENS & WILLIAMS LLP

>_____
>David H. Williams (#616)
>dwilliams@morrisjames.com
>James H. McMackin, III, Esquire
>jmcmackin@morrisjames.com
>222 Delaware Avenue
>P.O. Box 2306
>Wilmington, DE 19899
>(302) 888-6900/5849

Dated:  June 2, 2006          Attorneys for Defendant