**TAB C**

Not Reported in F.Supp.2d
(Cite as: 2005 WL 1500819 (N.D.Tex.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas, Dallas Division.

**Laurie R. HAMLETT, Plaintiff,**
v.
**Alberto GONZALES, [FN1] Attorney General,**
**United States of America,**
**Defendant.**

FN1. Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed.R.Civ.P. 25(d)(1).

**No. Civ.A. 303CV2202BHM.**

June 15, 2005.

Laurie R. Hamlett, Waxahachie, TX, pro se.

Stephen P. Fahey, US Attorney's Office, Dallas, TX, for Defendant.

MEMORANDUM OPINION AND ORDER

RAMIREZ, Magistrate J.

*1 Pursuant to the District Court's Order of Reassignment, filed July 26, 2004, this matter has been transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). Before the Court are:
(1) Defendant John Ashcroft's Motion for Summary Judgment, filed December 30, 2004;
(2) Defendant Ashcroft's Brief in Support of his Motion for Summary Judgment ("Def. MSJ Br."), filed December 30, 2004;
(3) Appendix to Defendant Ashcroft's Motion for Summary Judgment, and Brief in Support Thereof ("Def. MSJ App."), filed December 30, 2004;
(4) Plaintiff's Response to Defendant's Motion for Summary Judgment, filed January 19, 2005;
(5) Plaintiff's Brief in Support of Her Response to Defendant's Motion for Summary Judgment ("Pl.Resp.Br."), filed January 19, 2005;
(6) Appendix to Plaintiff's Response to Defendant's Motion [sic] for Summary Judgment and to Plaintiff's Brief in Support of Her Response to Defendant's Motion for Summary

Judgment ("Pl.Resp.App."), filed January 19, 2005;
(7) Defendant Ashcroft's Reply Brief in Support of His Motion for Summary Judgment ("Def. Reply Br."), filed February 3, 2005;
(8) Supplemental Appendix to Defendant Ashcroft's Reply Brief in Support of His Motion for Summary Judgment ("Def. Reply App."), filed February 3, 2005;
(9) Plaintiff's Brief in Reply to Defendant Ashcroft's Reply Brief in Support of His Motion for Summary Judgment Filed on February 3, 2005 ("Pl. Surreply Br."), filed February 23, 2005;
(10) Appendix to Plaintiff's Brief in Reply to Defendant Ashcroft's Reply Brief in Support of His Motion for Summary Judgment Filed on February 3, 2005 ("Pl. Surreply App."), filed February 23, 2005;
(11) Plaintiff's Report of Results of Mediation and Plaintiff's Motion for Relief ("Pl. Mot. for Relief"), filed March 9, 2005;
(12) Plaintiff's Brief in Support of her Motion for Relief Filed on March 9, 2005 ("Pl. Br. in Support of Mot. for Relief"), filed March 15, 2005; and
(13) Defendant Gonzalez' Response to Plaintiff's Brief in Support of Her Motion for Relief ("Def. Resp. to Pl. Mot. for Relief"), filed March 24, 2005.

Having reviewed the pertinent pleadings and the law applicable to the issues raised, the Court finds that Defendant John Ashcroft's Motion for Summary Judgment should be GRANTED, and Plaintiff's Motion for Relief should be DENIED.

I. BACKGROUND

A. Facts and Administrative Proceedings

Plaintiff Laurie Hamlett ("Plaintiff"), who is proceeding pro se, is a practicing attorney who has been licensed by the State of Texas since 1986. On September 30, 1990, she began working for the Department of Justice ("DOJ") as an Assistant United States Attorney ("AUSA") in the Corpus Christi, Texas, Division of the United States Attorney's Office ("USAO") for the Southern District of Texas ("SDTX"). (Pl. Resp.App., Exh. 1 at 1.) In 1992, Plaintiff was transferred to the McAllen Division of the SDTX; in 1996, she was assigned to the Financial Litigation Unit ("FLU") within the Civil Division. (Pl. Resp.App., Exh. 2

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1500819, *1 (N.D.Tex.))

at 129, 152.)

*2 Between 1998 and 1999, Plaintiff filed three separate complaints with the Equal Employment Opportunity Commission ("EEOC") against the DOJ, alleging claims of discrimination and retaliation based on her pay, office assignment, and failure to receive a promotion. (Pl. Surreply App., Exh. 1-3.) Plaintiff's counsel, who represented her throughout the administrative proceedings on those complaints, requested that the administrative judge consolidate the complaints. (Pl. Surreply App., Exh. 5 at 22.) That request was granted on April 20, 2000. Id.

On October 18, 2000, the United States Attorney for the SDTX, Mervyn Mosbacker ("Mosbacker") proposed Plaintiff's removal from employment with the DOJ. (Def. MSJ App., Exh. 1 at 1.) That proposal was sustained by the DOJ's Executive Office for United States Attorneys, and Plaintiff was terminated on March 23, 2001. (Def. MSJ App., Exh. 1 at 15.)

Plaintiff appealed her termination to the Merit Systems Protection Board ("MSPB"). An administrative judge conducted a hearing on that MSPB appeal on July 8, 2002. (Pl. Surreply App., Exh. 6 at 24-26.) The record does not indicate the outcome of that appeal, but Plaintiff's appendix includes a final order issued by the MSPB on April 30, 2004, well after the instant suit had been filed, denying Plaintiff's petition for review of the administrative judge's decision. (Pl. Surreply App., Exh. 6 at 27-30.)

In the interim, on July 11, 2002, an administrative judge conducted a hearing regarding Plaintiff's consolidated EEOC complaints. (Pl. Surreply App., Exh. 20 at 142.) Although the record does not include information regarding the outcome of that hearing, the EEOC's Office of Federal Operations denied Plaintiff's request for reconsideration of the EEOC's decision on her consolidated complaints on June 25, 2003. (Pl. Surreply App., Exh. 7 at 41A-42.)

B. Procedural History

On September 26, 2003, Plaintiff filed this action pro se, alleging that the United States Attorney General John Ashcroft ("Defendant") and Cari Dominguez, Chair of the EEOC, discriminated against her under Title VII. Plaintiff amended her complaint on October 21, 2003, alleging that Defendants engaged in "unlawful practices in violation of the Constitution of the United States, Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, [and] the Administrative Procedure Act." (Am. Compl. at 1.)

Defendant moved for dismissal of Plaintiff's claims for lack of subject matter jurisdiction under 12(b)(1) and for failure to state a claim under 12(b)(6). See Hamlett v. Ashcroft, 2004 WL 813184, at *1 (N.D.Tex. Apr.14, 2004). On April 14, 2004, this Court issued its Findings, Conclusions and Recommendation on Defendant's motion to dismiss, recommending that Plaintiff's Title VII claims against the EEOC be dismissed for lack of subject matter jurisdiction, and that her Equal Pay Act and Administrative Procedures Act claims be dismissed for failure to state a claim. Id. at *3-5. This Court further recommended that Plaintiff receive leave to amend her complaint to clarify her intent to pursue claims of employment discrimination against the DOJ. The District Court accepted these findings, conclusions and recommendations on May 11, 2004. Hamlett v. Ashcroft, 2004 WL 1074028, at *1 (N.D.Tex. May 11, 2004).

*3 On June 1, 2004, Plaintiff filed her Second Amended Complaint, alleging that Defendant violated Title VII by discriminating and retaliating against her. (Second Am. Compl. at 1.) In that complaint, she asserts that "[f]rom on or about mid-May 1992 until on or about the present," Defendant intentionally discriminated against her on the basis of her sex and employed practices that had the effect of discriminating against her because of her sex. Id. at ¶ 1-2. She also alleges that in that same time period, Defendant retaliated against her for opposing unlawful discrimination, participating in investigations about unlawful discrimination, and filing charges of discrimination. Id. at ¶ 3-5. She further alleges that Defendant retaliated against her "[f]rom on or about 1999 until on or about the present" for contacting her United States Senators regarding a former United States Attorney. Id. at ¶ 6. By her suit, Plaintiff seeks monetary damages and "all other available relief." Id. at ¶ 3.

C. Motion for Summary Judgment

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1500819, *3 (N.D.Tex.))

On December 30, 2004, Defendant filed a motion for summary judgment asserting that dismissal of Plaintiff's Second Amended Complaint is appropriate due to her failure to demonstrate a prima facie case of sex discrimination under Title VII. (Def. MSJ Br. at 5.) Defendant argued in part that Plaintiff's complaint did not identify specific adverse employment actions. Id.

Plaintiff filed a response on January 19, 2005, asserting that she had suffered numerous adverse employment actions. In her response, she identified the following actions, which were not mentioned in her complaint or second amended complaint: (1) an involuntary transfer in 1992 from the Corpus Christi Division to the McAllen Division; (2) failure to receive Performance Appraisal Reports ("PARs") for the period from January 1, 1992 to August 3, 1992; (3) failure to receive PARs for the period of January 1, 1996 to September 1, 1996; (4) failure to receive accurate PARs; (5) an involuntary transfer from the Criminal Division to the Civil Division; and (6) removal from employment. (Pl. Resp. Br. at 2.)

On January 27, 2005, Defendant filed a motion for leave to submit additional summary judgment evidence with his reply briefing in order to respond to Plaintiff's enumeration of six adverse employment actions in her response. The Court granted Defendant's motion on January 28, 2005, and allowed Plaintiff to file a surreply.

Defendant's reply, filed on February 3, 2005, argues that the sex discrimination and retaliation claims Plaintiff listed in her response are barred for failure to exhaust administrative remedies. (Def. Reply Br. at 2-4; 7.) Defendant further argues that even if Plaintiff timely exhausted her remedies with respect to her termination claim, she has failed to establish a prima facie case of sex discrimination or retaliation. Id. at 5. Alternatively, Defendant argues that even if Plaintiff could prove a prima facie case, there were legitimate, nondiscriminatory reasons for terminating her employment. Id. at 7, n. 3.

*4 In her surreply filed February 23, 2005, Plaintiff states that she did not intend to limit her claims against Defendant to those six actions she specifically mentioned in her response. She states that she "merely set forth some illustrations. Moreover, Plaintiff has thoroughly advised Defendant of each of the plethora of adverse employment actions caused by the discriminatory conduct of the USAO-SDTX ....in the following ways[.]" (Pl. Surreply Br. at 1-2.) Plaintiff then lists the documents found behind Tabs 1 through 9 in her appendix, including her EEOC complaints, documents filed as part of the administrative proceedings on those EEOC complaints, documents related to her appeal of her removal to the MSPB, as well as her complaint, amended complaint, second amended complaint, and response submitted in the instant proceedings. Id. at 1. Plaintiff asserts that her claims are not time-barred because she timely filed three formal complaints with the EEOC, timely appealed her removal to the MSPB, and should not have been required to exhaust remedies as to any of her other claims. Id. at 3-5. This matter is now before the court and ripe for determination.

## II. STANDARD OF REVIEW

"Summary judgment is an appropriate mechanism for resolving issues of law arising from a materially complete factual record." Burlington N. and Santa Fe Ry. Co. v. Brotherhood of Maint. of Way Employees, 93 F.Supp.2d 751, 756 (N.D.Tex.2000). "Furthermore, disputes over the legal inferences to be gleaned from the facts in evidence will not prevent summary judgment; thus, where a non-movant merely debates the consequences flowing from admitted facts, summary judgment is proper." Id. "Interpretations of statutory provisions that are dispositive and which raise only questions of law, there being no contest as to the operative facts, are appropriate for summary judgment." United States v. Miller, 2003 WL 23109906, at *3 (N.D.Tex. Dec.22, 2003).

With regard to factual issues, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that the movant is entitled to judgment as a matter of law. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994). "[T]he substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant makes such a showing by informing the court of the basis of its motion and by identifying

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
**(Cite as: 2005 WL 1500819, \*4 (N.D.Tex.))**

the portions of the record which reveal there are no genuine material fact issues. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. Celotex, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show ... some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. Anderson, 477 U.S. at 249. The opponent to summary judgment has the duty to point to specific facts in the record that create a genuine issue of material fact. Jones v. Sheehan, Young, & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir.1996). Rule 56 "does not impose upon the district court a duty to survey the entire record in search of evidence to support a nonmovant's position." Id. (citing Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir.1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.1992); Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1307 (5th Cir.1988)).

\*5 While all of the evidence must be viewed in a light most favorable to the motion's opponent, Anderson, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. Little, 37 F.3d at 1075; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

### III. ANALYSIS

A.    Title    VII    Administrative    Exhaustion

Requirements for Federal Employees

Defendant argues that Plaintiff's Title VII claims are barred for failure to exhaust administrative remedies. (Def. Reply Br. at 2-4.) Before bringing suit pursuant to Title VII, "an employee must exhaust his administrative remedies against his federal employer." Fitzgerald v. Sec'y, U.S. Dep't of Veterans Affairs, 121 F.3d 203, 206 (5th Cir.1997) (citing Brown v. Gen. Servs. Admin., 425 U.S. 820, 832-833, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); Francis v. Brown, 58 F.3d 191, 192 (5th Cir.1995)).

1. Termination

Defendant moves for summary judgment on Plaintiff's termination claims on the grounds that she failed to exhaust her administrative remedies by complaining to an EEOC counselor within 45 days of her removal. (Def. Reply Br. at 4.) Plaintiff responds that she properly challenged her removal from employment before the MSPB. (Pl. Surreply Br. at 7.)

The MSPB has jurisdiction over specific adverse employment actions affecting federal employees, including terminations, demotions, and suspensions. See Chappell v. Chao, 388 F.3d 1373, 1375 (11th Cir.2004) (citing 5 U.S.C. § 7512). A federal employee who is terminated and also alleges discrimination in violation of Title VII presents a so-called "mixed case" that may be appealed directly to the MSPB. See 5 U.S.C. § 7702(a)(1)(B)(I). "Although the MSPB does not have jurisdiction over discrimination claims that are not related to adverse actions, it can entertain appeals in 'mixed cases,' where an employee alleges a Title VII violation in relation to one of the specified adverse employment actions." Chappell, 388 F.3d at 1375 (citing 5 U.S.C. § 7702; 29 C.F. R. § 1614.302; Sloan v. West, 140 F.3d 1255, 1259 (9th Cir.1998)). "Federal employees with Title VII claims that are not mixed with adverse actions within the MSPB's jurisdiction must file an initial complaint with their agency EEO to pursue their claims." Chappell, 388 F.3d at 1375 n. 2.

In Butler v. West, the D.C. Circuit outlined the statutory and regulatory framework governing mixed case MSPB appeals:
An employee who intends to pursue a mixed case

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d                                           **Page 54**
**(Cite as: 2005 WL 1500819, \*5 (N.D.Tex.))**

has several paths available to her. At the outset, the aggrieved party can choose between filing a "mixed case complaint" with her agency's EEO office and filing a "mixed case appeal" directly with the MSPB. See 29 C.F. R. § 1614.302(b). By statute, the relevant agency EEO office and the MSPB can and must address both the discrimination claim and the appealable personnel action. See 5 U.S.C. § 7702(a)

**\*6** When a complainant appeals to the MSPB ... the matter is assigned to an Administrative Judge who takes evidence and eventually makes findings of fact and conclusions of law. See 5 C.F.R. §§ 1201.41(b), 1201.111. The AJ's initial decision becomes a final decision if neither party, nor the MSPB on its own motion, seeks further review within thirty-five days. See 5 C.F.R. § 1201.113. However, both the complainant and the agency can petition the full Board to review an initial decision. Should the Board deny the petition for review, the initial decision becomes final, see 5 C.F.R. § 1201.113(b); if the Board grants the petition, its decision is final when issued. See 5 C.F.R. § 1201.113(c). At this point, the complainant again has a choice: within thirty days of receiving a final decision from the MSPB, she can either appeal the discrimination claim to the EEOC, see 5 C.F.R. § 1201.157, or appeal the entire claim (or any parts thereof) to the appropriate district court. See 5 U.S.C. § 7703(b), 5 C.F.R. § 1201.175, 29 C.F.R. § 1614.310(b). Finally, if the MSPB fails to render a judicially reviewable decision within 120 days from the filing of a mixed case appeal, the aggrieved party can pursue her claim in federal district court. See 5 U.S.C. § 7702(e)(1)(B). 164 F.3d 634, 638-39 (D.C.Cir.1999). "[S]ection 7702(e)(1)(B) explicitly sanctions a civil action in the federal district courts once 120 days have passed without final decision from the MSPB." Id. at 643. "[A]lthough the MSPB does not lose its jurisdiction when 120 days elapse without a final decision, the appropriate federal district court can take jurisdiction as well." [FN2] Id. at 642.

> FN2. The Butler court rejected the defendant's argument that a literal reading of the statute creates an absurd result by allowing a complainant to simultaneously pursue a claim in the administrative and court systems. 164 F.3d at 644.

In this case, because Plaintiff is a federal employee asserting that she was terminated in violation of Title VII, she presents a "mixed case" that may be appealed directly to the MSPB. Thus, her failure to complain to an EEOC counselor regarding her termination is not fatal to her Title VII termination claims if she can demonstrate that she exhausted remedies as to those claims through the MSPB process.

Plaintiff was informed by letter that her removal from federal service was effective as of March 23, 2001, and that she had 30 days from that date to file an appeal with the MSPB. (Def. MSJ App., Exh. 1 at 15.) Plaintiff has presented no evidence that she in fact filed her appeal within 30 days of March 23, 2001. Rather, she states that she challenged her removal from employment "before the United States Merit Systems Protection Board from on or about April 26, 2001 to April 30, 2004," and that "[t]hose claims became ripe on April 30, 2004." (Pl. Surreply Br. at 7.) In support of these contentions, Plaintiff refers the Court to Tab 6 of her Appendix, which contains the first three pages of the first volume of a transcript of a hearing on Plaintiff's MSPB appeal, held July 8, 2002. (Pl. Surreply App., Exh. 6 at 24-27.) Tab 6 also contains the MSPB's Final Order, dated April 30, 2004, denying Plaintiff's request for a reconsideration of the administrative judge's decision. Id. at 27-30(A). No other documents are contained in Tab 6, and no documents related to Plaintiff's MSPB appeal are included elsewhere in the appendix.

**\*7** Because Plaintiff must have appealed her termination to the MSPB in order to receive the July 8, 2002 hearing, it is apparent that the instant action, filed September 26, 2003, was brought more than 120 days after she filed her appeal, and prior to the receipt of the April 30, 2004 final decision. Further, Defendant does not challenge the timeliness of Plaintiff's MSPB appeal. Plaintiff therefore appears to have complied with the exhaustion requirements for filing a lawsuit based on an MSPB appeal. See Sorrels v. Veterans Admin., 576 F.Supp. 1254, 1261 (D.C.Ohio 1983) (concluding that plaintiff exhausted his administrative remedies where, although he presented no evidence that his appeal was timely filed, he submitted evidence that the MSPB held a hearing and that more than 120 days had passed without a final decision prior to plaintiff's filing of his suit).

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1500819, *7 (N.D.Tex.))

Other than the claims based on her removal, Plaintiff has not specifically identified any other alleged discriminatory or retaliatory actions within the jurisdiction of the MSPB, such as demotions or suspensions. Accordingly, the Court now turns to the administrative exhaustion requirements governing Plaintiff's remaining Title VII claims.

### 2. Transfer and PAR Claims

Defendant moves for summary judgment on Plaintiff's pre-2001 claims on grounds that she failed to exhaust her administrative remedies by contacting an EEOC counselor within 45 days of her transfer to McAllen in 1992; her failure to receive PARs in 1992 and in 1996; her failure to receive adequate PARs; and her transfer to the Civil Division in 1996. (Def. Reply Br. at 2.) Plaintiff concedes that she did not file EEOC complaints with respect to those actions, or any other actions encompassed within the broad allegations of discrimination and retaliation in her second amended complaint. However, she contends that she should not have been required to do so. (Pl. Surreply Br. at 4.) She also asserts that she filed three EEOC complaints with respect to her pay, office space, and failure to receive a promotion-claims she did not mention specifically in her second amended complaint or response. [FN3] (Pl. Surreply Br. at 3.)

> FN3. Plaintiff presents evidence that she did file EEOC complaints with respect to her pay, office space, and failure to promote claims, and Defendant concedes that she filed these complaints. (Def. Reply Br. at 3.)

The Code of Federal Regulations ("Code") establishes the procedures governing the administrative processing of Title VII claims against the federal government. See 29 C.F.R. §§ 1614.101-110. The Code requires that aggrieved federal employees initiate contact with an agency counselor for pre-complaint counseling within 45 days of the alleged discriminatory action. 29 C.F.R. § 1614.105(a). Within 30 days of the date the employee initiated contact with the counselor, the counselor must conduct a final interview with the employee. 29 C.F.R. § 1614.105(d). If the EEOC counselor is unable to resolve the matter informally, the counselor must notify the employee of his right to file a formal administrative complaint with the

employing agency. See id. An employee who chooses to file a formal complaint must do so within 15 calendar days of receiving notice of the right to file a complaint. 29 C.F.R. § 1614.106(b). After filing this complaint, an employee is authorized to file an action in district court within 90 days of receiving a final agency action on the complaint or, if the employee appeals the EEOC's action on the complaint, within 90 days of receiving the EEOC's final decision on the appeal. [FN4] 29 C.F.R. § 1614.407.

> FN4. An employee is also authorized to file suit if the EEOC fails to issue a final agency action on a complaint, or render a final decision on an appeal, within 180 days of receipt of the complaint or appeal. 29 C.F.R. § 1614.407.

*8 Plaintiff does not assert, nor has she presented evidence, that she filed timely EEOC complaints with respect to any of the claims she specifically enumerates in her response, including her claims about her transfer to McAllen; her failure to receive PARs in 1992 and 1996; her failure to receive accurate PARs; and her transfer to the Civil Division. Plaintiff has neither asserted nor presented evidence of exhaustion as to any of the additional but unspecified Title VII claims she may be asserting, as set forth in her second amended complaint in the form of broad, general allegations of discriminatory and retaliatory actions between 1992 and the present. Id. In fact, Plaintiff concedes in her surreply that she exhausted administrative remedies only as to the claims contained in the three EEOC complaints regarding her pay, office space, and failure to receive a promotion, and her MSPB appeal of her termination. She appears to argue, however, that all of her other claims of discrimination and retaliation should not be barred for failure to exhaust administrative remedies. (Pl. Surreply Br. at 3, 5.) She asserts that she "should not be required, in law or in equity, to exhaust administrative remedies that Defendant controlled and never did afford, or would have afforded, to Plaintiff." Id. at 4. Plaintiff does not state how this should affect the Court's analysis of her claims, but it appears that she is asserting a claim for equitable relief from the requirement that she have exhausted administrative remedies as to all her claims prior to bringing suit. Plaintiff cites no authority for her contention.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1500819, *8 (N.D.Tex.))

a. Equitable Relief from Exhaustion

"The procedural requirements governing a plaintiff's right to bring a Title VII claim in court are not unimportant." Velikonja v. Mueller, 315 F.Supp.2d. 66, 71 (D.D.C.2004). The Supreme Court has stated that Congress designed Title VII with the goal of eliminating discrimination in the federal civil service by providing "a careful blend of administrative and judicial enforcement powers." Brown, 425 U.S. at 833. The regulatory scheme provides an opportunity for agencies to resolve discrimination complaints informally by means of conciliation, conference, and persuasion. Wrenn v. Sec'y, Dep't of Veterans Affairs, 918 F.2d 1073, 1078 (2d Cir.1990) (citations omitted). Such a scheme reflects a balancing between the right of employees to nondiscriminatory treatment, and the avoidance of costs associated with litigation. Waiters v. Parsons, 729 F.2d 233, 237 n. 9 (3d Cir.1984). Giving federal agencies an opportunity to handle matters internally whenever possible also helps ensure that the federal courts are burdened only when reasonably necessary. Velikonja, 315 F.Supp.2d. at 71 (citing Brown v. Marsh, 777 F.2d 8, 14 (D.C.Cir.1985)).

Notwithstanding the important role that administrative procedures play in addressing allegations of discrimination by federal employees, the administrative exhaustion requirement may under limited circumstances be subject to waiver, estoppel, and equitable tolling. [FN5] See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 392, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) ("[F]iling a timely charge of discrimination with the EEOC is … a requirement … subject to waiver, estoppel, and equitable tolling."); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling applies to the statutory filing deadline in a federal employee's Title VII action); Waiters, 729 F.2d at 236 (stating that Zipes requires courts to consider whether the doctrines of waiver, estoppel, or tolling apply when a plaintiff fails to file a formal complaint). Holding that filing requirements in discrimination cases are subject to waiver and equitable tolling "honor[s] the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer." Zipes, 455 U.S. at 398.

FN5. The Court notes that the terms "estoppel" and "tolling" are often used interchangeably, even though the terms refer to distinct doctrines. Estoppel relates to situations in which the defendant's misconduct prevented the plaintiff from complying with a deadline, while tolling focuses on whether the plaintiff acted with reasonable prudence. See Baker v. Peters, 145 F.Supp.2d 1251, 1257 (M.D.Ala.2000) (citing Cocke v. Merrill Lynch & Co., 817 F.2d 1559, 1561 (11th Cir.1987)). The distinction is not essential to the resolution of this case.

*9 Although available to Title VII claimants who fail to exhaust administrative remedies, "equitable doctrines are 'to be applied sparingly.' " Ramirez v. City of San Antonio, 312 F.3d 178, 183 (5th Cir.2002) (quoting Nat'l RR Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)). "Courts grant requests for equitable tolling most frequently where 'the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.' " Teemac v. Henderson, 298 F.3d 452, 457 (5th Cir.2002) (quoting United States v. Patterson, 211 F.3d 927, 930 (5th Cir.2000)). In addition, "equitable tolling may apply where the claimant has vigorously pursued his action, but has missed deadlines due to his or her lack of sophistication with the procedural requirements of Title VII claims." Rowe v. Sullivan, 967 F.2d 186, 192 (5th Cir.1992).

None of these circumstances appear to apply to Plaintiff's situation. While she alleges that the "DOJ did not timely appoint an EEO counselor to Plaintiff [,]" she has not alleged that the DOJ's failure to do so affected her ability to file a timely complaint. (Pl. Surreply Br. at 3.) She does not allege that Defendant actively misled her or deliberately prevented her from filing a complaint. She has not alleged that despite exercising due diligence, a lack of sophistication prevented her from fulfilling the procedural requirements of the administrative process. Plaintiff had been through the EEOC process before, and thus had familiarity with the procedural requirements associated with filing a complaint. In addition, Plaintiff herself is a practicing attorney licensed by the State of Texas since 1986, and she was represented by counsel during the pendency of her EEOC proceedings. Under such circumstances, extending equitable relief

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



is not appropriate. See English v. Freeh, 1994 WL 160487, at *3 (E.D.La. Apr.22, 1994) (declining to extend equitable relief for failure to file an EEOC complaint where plaintiff himself was an attorney, and had been represented by other attorneys in the proper filing of previous EEOC complaints).

Furthermore, dissatisfaction with the DOJ's handling of the previous complaints does not excuse Plaintiff's failure to exhaust administrative remedies as to each alleged instance of discrimination. Congress created a remedy for federal employees dissatisfied with the agency's handling of their EEOC complaints by authorizing them to file suit in federal court requesting de novo review of their discrimination claims after a specified time. See 42 U.S.C. § 2000e-16(c) ("an employee ... if aggrieved by the final disposition of [the] complaint, or by the failure to take final action on [the] complaint ... may file a civil action ..."); Zusmer v. Richardson, 211 F.3d 1276, 2000 WL 219745, at *1 (9th Cir. Feb.24, 2000) ("A dissatisfied employee may remove an EEO claim to federal court at several points during the administrative process if there is agency inaction, dismissal of the charge or unsatisfactory resolution of the charge.") (citations omitted); Mayes v. Potter, 2003 WL 23220738, at *5 (W.D.Mich. May 22, 2003) ("Plaintiff's remedy, when he was unhappy with the processing of his administrative claim, was to file a lawsuit challenging the agency's decision."). Accordingly, Plaintiff has failed to demonstrate that equitable relief is warranted for her failure to exhaust administrative remedies.

b. Exhaustion of Post-Charge Retaliation Claims

*10 With respect to Plaintiff's other retaliation claims, the Court notes that plaintiffs are not required to exhaust administrative remedies under narrow circumstances. "[R]etaliation that occurs as [a] result of filing an EEOC charge can be included in a Title VII case in district court without filing a new charge." Perez, 154 F.Supp.2d at 938 (citing Gupta v. E. Tex. State Univ., 654 F.2d 411, 414 (5th Cir.1981)). However, "retaliation claims arising prior to the filing of an EEOC charge may only be included [in the Title VII case] if mentioned in the original charge." Perez, 154 F.Supp.2d at 938 (citing McCray v. DPC Indus., Inc., 942 F.Supp. 288, 294-95 (E.D.Tex.1996)). A retaliation claim arising prior to the filing of an EEOC charge, but

not mentioned in the charge, is subject to dismissal for failure to exhaust administrative remedies. Perez, 154 F.Supp. at 938; Musgrove v. Mobil Bus. Res. Corp., 1999 WL 1080931, at *6 (N.D.Tex. Nov.29, 1999).

In her complaint, response, and surreply, Plaintiff has not identified any specific acts of retaliation that allegedly occurred as a result of her filing EEOC complaints on June 9, 1998, October 1, 1998, and February 23, 1999, other than those mentioned within those EEOC complaints themselves, or her termination in March 2001. (Resp. at 6.) Accordingly, none of her other retaliation claims fall within the narrow exception to exhaustion, and therefore are barred.

In sum, Plaintiff has also failed to demonstrate that equitable relief is warranted for her failure to exhaust her transfer and PAR claims, or that her other retaliation claims need not be exhausted because they arose after she filed an EEOC complaint but prior to her filing of the instant action. Accordingly, summary judgment for Defendant on grounds of failure to exhaust administrative remedies is appropriate with respect to those discrimination and retaliation claims Plaintiff lists in her response, including her transfer in 1992, her transfer to the Civil Division, and the claims related to her PARs, for which she did not file an MSPB appeal or an EEOC complaint. See Anderson v. City of Dallas, 116 Fed. Appx. 19, 25 (5th Cir.2004) (per curiam) (finding that summary judgment for the defendant on plaintiff's discrimination and retaliation claims was appropriate due to plaintiff's failure to demonstrate that she had filed EEOC charges and exhausted administrative remedies with respect to those claims). Summary judgment is also appropriate for Defendant on any of Plaintiff's additional but unidentified Title VII claims, as set forth in her second amended complaint in the form of broad, general allegations of discriminatory and retaliatory actions between 1992 and the present. Id.

The Court now turns to the merits of Plaintiff's Title VII claims included in her MSPB appeal and EEOC complaints.

B. Title VII Framework

Title VII's burden-shifting paradigm is well-



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1500819, *10 (N.D.Tex.))

Page  58

established. "First, the plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination." Nichols v. Lewis Grocer, 138 F.3d 563, 566 (5th Cir.1998). A plaintiff may establish a prima facie case of sex discrimination through either direct evidence, statistical proof, or the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Urbano v. Cont'l Airlines, Inc., 138 F.3d 204, 206 (5th Cir.1998). In the instant action, Plaintiff has not presented direct or statistical evidence of sex discrimination or retaliation as to any of her claims. Accordingly, the Court will apply the framework set forth in McDonnell Douglas, as applicable to each of Plaintiff's particular Title VII claims, in determining whether she has established a prima facie case with respect to those claims. [FN6]

> FN6. The McDonnell Douglas framework varies slightly as applied to different types of discriminatory action a plaintiff alleges. The Court will set forth the applicable framework below as part of the discussion of each particular discriminatory action alleged.

*11 If the plaintiff makes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action." Id. "Once the defendant meets this burden of production, the plaintiff must demonstrate that the proffered explanation is not the actual reason for its decision, but is instead a pretext for discrimination." Id. "An employer's reason cannot be shown to be a 'pretext for discrimination' unless the plaintiff introduces some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." Id. This burden-shifting paradigm also applies to claims for retaliation under Title VII. Mato v. Baldauf, 267 F.3d 444, 452 (5th Cir.2001).

Although Defendant has not specifically addressed Plaintiff's discrimination and retaliation claims with respect to her pay, office space, and failure to receive a promotion, Defendant argues that Plaintiff has failed to produce evidence establishing a prima facie case with respect to all of her Title VII claims. (Pl. MSJ Br. at 5-7.) Because Defendant will not have the burden at trial concerning the elements of Plaintiff's prima facie case, Defendant can meet its

summary judgment obligation by pointing the court to the absence of evidence to support Plaintiff's case. See Keeley v. Cisco Sys., 2003 WL 21919771, at *3 (N.D.Tex. Aug.8, 2003) (noting that although the defendant did not explicitly argue that plaintiff had failed to establish a prima facie case, the defendant had satisfied its summary judgment burden by pointing to the absence of evidence to support one prong of the prima facie case) (citing Celotex Corp., 477 U.S. at 325 (1986)). Once Defendant does so, Plaintiff must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. See Keeley, 2003 WL 21919771, at *3 (citing Celotex Corp., 477 U.S. at 325 (1986); Little, 37 F.3d at 1075)). "Summary judgment is mandatory when the nonmoving party fails to meet this burden." Keeley, 2003 WL 21919771, at *3 (citing Little, 37 F.3d at 1076).

C. Plaintiff's Discrimination Claims

1. Termination

Applying the McDonnell Douglas framework to Plaintiff's termination claim, she must make a prima facie showing " 'that she (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class,' or, in the case of disparate treatment, shows 'that others similarly situated were treated more favorably.' " Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 513 (5th Cir.2001) (quoting Shackleford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir.1999)) (other citations omitted). Plaintiff has provided evidence of the first three prongs: she is a woman, a licensed attorney, and was terminated from employment. With respect to the fourth prong, Plaintiff has not identified evidence in the record showing that she was replaced by someone outside the protected class, or, in the alternative, that others similarly situated were treated more favorably. Thus, Plaintiff has failed to show a genuine issue of material fact concerning the existence of a prima facie case of discrimination. However, even if the Court assumes for purposes of this motion that she has satisfied the prima facie case, as discussed below, Plaintiff's claim would still fail on the issue of pretext.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1500819, *11 (N.D.Tex.))

a. Legitimate Nondiscriminatory Reason

**\*12** Defendant asserts that Plaintiff was terminated because of her insubordination, disrespectful conduct, failure to carry out work assignments, and disruptive conduct. (Def. Reply Br. at 7, n. 3.) In support of this assertion, Defendant points to a sixteen-page letter from the Office of the Director of the Executive Office for United States Attorneys. (Def. MSJ App., Exh. 1 at 1-16.) In that letter, Louis DeFalaise, Senior Counsel to the Director, addresses each charge leveled by United States Attorney Mervyn Mosbacher in proposing Plaintiff's removal. Id. DeFalaise states that after considering the evidence, including Plaintiff's written response and oral reply, he found that she had committed the following infractions: (1) failure to follow a direct order; (2) disrespectful conduct; and (3) disruptive conduct. [FN7] Id. at 1. Defendant has therefore met its burden of production to provide a legitimate, nondiscriminatory reason for terminating Plaintiff. Because Defendant has met its burden, Plaintiff must raise a genuine issue of material fact that Defendant discriminated against her, either by showing that Defendant's proffered reasons are a pretext for discrimination or by providing direct evidence of discrimination. See Okoye, 245 F.3d at 413 (citing LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 449 (5th Cir.1996)); Hall v. Gillman Inc., 81 F.3d 35, 37 (5th Cir.1996).

FN7. DeFalaise stated that the charge of insubordination merged with that of failure to follow a direct order, because the charges were based on the same set of facts. (Def. MSJ App., Exh. 1 at 2.) He merged the charge of failure to carry out work assignments with one of the charges that she failed to follow an order given by her supervisor. Id. at 5, 9.

b. Pretext or Intentional Discrimination

"An employer's reason cannot be shown to be a 'pretext for discrimination' unless the plaintiff introduces some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." Nichols v. Lewis Grocer, 138 F.3d 563, 566; see also Blow v. City of San Antonio, Tex., 236 F.3d 293, 297 (5th Cir.2001) (citing Reeves v. Sanderson Plumbing Prods., Inc.,

530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (holding that such evidence may be circumstantial)). Whether direct or circumstantial, "the evidence offered to counter the employer's proffered reasons must be substantial." Nichols, 138 F.3d at 566.

Plaintiff appears to contend that Defendant's stated reasons for terminating her are a pretext for discrimination because she asserts that other male employees were not removed for engaging in similar acts of misconduct. To establish pretext by showing disparate treatment, a plaintiff must show that the employer gave preferential treatment to an employee outside the protected class under "nearly identical" circumstances. Little v. Republic Refining Co., 924 F.2d 93, 97 (5th Cir.1991) (quoting Smith v. Wal-Mart Stores, 981 F.2d 1177, 1180 (5th Cir.1990); citing Davin v. Delta Airlines, 678 F.2d 567, 570-71 (5th Cir. Unit B 1982)). That is, the plaintiff must show that the misconduct for which she was discharged was nearly identical to that engaged in by a male employee whom [the defendant] retained." Smith, 981 F.2d at 1180 (citing Davin, 678 F.2d at 570).

**\*13** Plaintiff appears to assert that other male AUSAs were retained despite committing the same acts of misconduct for which she was removed. She argues that she: "is accused of violating an order. The male employees whom the Plaintiff identified in her initial brief violated an order. The Plaintiff allegedly violated the same 'company policy' as the male employees whom she identified violated. That policy is to obey orders." (Pl. Surreply Br. at 6.) In support of this contention, Plaintiff refers the Court generally to the following documents: (1) Complainant's Response to the Agency's Motion for Decision Without a Hearing; (2) Complainant's Response to the Agency's Third Motion in Limine, and (3) Complainant's Response to the Agency's Fourth Motion and Fifth Motions in Limine. Id. at 5-6.

A review of Plaintiff's response reveals that it does not, as Plaintiff contends, specifically list any male employees by name. In an affidavit she submitted with her response, however, she does identify some male employees and acts of misconduct allegedly committed by those employees. (Pl. Resp. Br., Exh. 2 at 153.) For example, she alleges that "AUSA Robert Berg, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1500819, *13 (N.D.Tex.))

male supervisors of Robert Berg, AUSA Kenneth Cusick, and AUSA Timothy Hammer did not follow the DOJ's explicit orders to report fraud, waste, abuse and gross mismanagement."   [FN8] Id. Plaintiff has failed to produce any evidence that she was similarly situated to these or any of the other male employees she identified. See Okoye, 245 F.3d at 515 (stating that plaintiff failed to demonstrate disparate treatment by citing to employees who allegedly committed acts of misconduct, because she had not produced evidence that those employees were similarly situated to her). Furthermore, while she has alleged that a number of different employees committed a variety of acts of misconduct, she has not alleged that any employees committed all three of the types of misconduct for which she was removed, including failure to follow a direct order, disrespectful conduct, and disruptive conduct. [FN9] Accordingly, even if Plaintiff could demonstrate that she were similarly situated to these employees, she cannot demonstrate that her situation was nearly identical to theirs. See id. (finding that plaintiff failed to demonstrate that her situation was nearly identical to that of other employees because they were not accused of the same act of misconduct that led to plaintiff's termination) (citing Little, 924 F.2d at 97 (finding that circumstances were not nearly identical where employees actions were reviewed by different supervisors); Smith, 891 F.2d at 1180 (finding that employees who committed different violations of company policy were not nearly identical); Davin, 678 F.2d at 571 (finding that acts of misconduct were not so similar that employer was compelled to treat employees equally)).

FN8. Defendant argues that this and other statements made by Plaintiff in her affidavit regarding alleged misconduct of other male employees are conclusory assertions and do not constitute competent summary judgment evidence. (Def. Reply Br. at 6, n. 2.) Plaintiff does not state that she observed those individuals discovering fraud, waste, abuse, or gross mismanagement and then failing to report it, nor does she identify supporting evidence in the record that those individuals violated the DOJ's orders. Plaintiff's statement that other AUSAs committed acts of misconduct appear to be conclusory and speculative rather than based on her personal knowledge. Speculative or conclusory allegations are incompetent summary judgment evidence. See

Savariego v. Melman, 2002 WL 1788012, at *2 n. 4 (N.D.Tex. May 10, 2002) (citing Lujan, 497 U.S. at 888) (finding that unauthenticated hearsay in an affidavit did not constitute competent summary judgment evidence). Because Plaintiff's allegations that Berg, Cusick, and Hammer failed to follow an order is without support in the record, the Court could strike this statement from the summary judgment evidence. See Strain, 23 F.Supp.2d 685, 696 (N.D.Tex.1998) (striking statements as "self-serving and recount[ing] alleged occurrences of which Plaintiffs have no personal knowledge in violation of Fed. R. Civ. P. 56(e)."). Even if the Court considers these allegations, Plaintiff has failed, for the reasons set forth in section III.C.1.b., to create a genuine issue of material fact as to pretext.

FN9. A review of the appendix to Plaintiff's reply brief reveals that Plaintiff alleges that her peers and supervisors committed other acts of misconduct without being terminated. Those allegations include: (1) AUSA Michael McCormick, a supervisor, did not follow DOJ orders not to violate the law when he assaulted Plaintiff; (2) Mirsky, also a supervisor, did not follow DOJ orders not to violate the law when he forged his wife's name on documents in 1995 and 1999 to withdraw money from a Thrift Savings Plan; (3) Mirsky and his male supervisors did not follow explicit policies and procedures of the FLU; (4) none of the male prosecutors followed the USAO's policies and procedures concerning the collection of special assessments, restitution, and fines; and (5) her male supervisors were disrespectful to her. (Exh. 2 at 153.) To the extent that the first four allegations are not based on Plaintiff's personal knowledge, they do not constitute competent summary judgment evidence. See Savariego, 2002 WL 1788012, at *2 n. 4; Strain, 23 F.Supp.2d at 696. Even if the Court considers these allegations, Plaintiff has failed, for the reasons set forth in section III.C.1.b., to create a genuine issue of material fact as to pretext.

Where the plaintiff has offered no evidence to rebut the employer's facially benign explanations, no inference of discrimination can be drawn. See EEOC v. La. Office of Cmty. Servs., 47 F.3d 1438, 1447-1448 (5th Cir.1995) (explaining that a plaintiff must tender factual evidence from which a fact-finder could reasonably conclude that the defendant's reasons were pretext for discrimination).

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Consequently, Plaintiff has failed to show a genuine issue of material fact regarding pretext, and Defendant is entitled to summary judgment on this claim. [FN10]

> FN10. In addition, Plaintiff admits to engaging in some of the conduct for which she was discharged in an affidavit attached to her response. In that affidavit, which is approximately 140 pages, Plaintiff addressed each of the allegations the DOJ raised in removing her. (Pl. Resp.App., Exh. 1; Exh. 2 at 152.) "[W]hen a plaintiff admits to engaging in the conduct that resulted in the adverse employment action, the plaintiff's burden in establishing pretext 'becomes quite difficult.' " Felts v. Combined Ins. Co. of Am., 2000 WL 21317, at *3 n. 2 (N.D.Tex. Jan.11, 2000) (citing Chaney v. New Orleans Pub. Facility Mgmt. Inc., 179 F.3d 164, 168 (5th Cir.1999)). Plaintiff has admitted, for example, that she accused a supervisor of lying to her in an email; for this reason, DeFalaise sustained a charge that Plaintiff engaged in disrespectful conduct by making this accusation. (Pl. MSJ App., Exh. 1 at 9; Pl. Resp.App., Exh. 1 at 116-117.) Plaintiff also acknowledges that she failed to follow direct orders in that she admits to having sent an email to a supervisor regarding an issue related to an office dispute, after receiving an order from him to stop sending emails related to that matter. (Def. MSJ App., Exh. 1 at 4; Pl. Resp.App., Exh. 1 at 49-50.)

2. Level of Compensation

*14 On September 11, 1998, Plaintiff filed an EEOC complaint asserting that "I am being paid less than other AUSAs in the district because of my ... gender[.]" [FN11] (Pl. Surreply App., Exh. 1 at 2.) Plaintiff does not specifically address this claim in her pleadings.

> FN11. In her EEOC complaint, Plaintiff also asserted claims of discrimination based on race, age, and national origin. (Pl. Surreply App., Exh. 1 at 2.) However, in her Second Amended Complaint, she limits her claim to discrimination on the basis of sex. (Second Am. Compl. at 2, ¶¶ 1-2.)

Applying the McDonnell Douglas framework to this claim, Plaintiff must make a prima facie showing that she occupies a job similar to that of higher paid workers of the opposite sex.

Montgomery v. Clayton Homes, Inc., 65 Fed. Appx. 508, 2003 WL 1922917, at *1 (5th Cir.2003) (per curiam) (citing Lenihan v. Boeing Co., 994 F.Supp. 776, 798 (S.D.Tex.1998)). Title VII prohibits discrimination in compensation based on an individual's sex. To make this showing, the plaintiff must present evidence showing that the job content and actual job requirements are identical to those of an individual outside the protected class. Montgomery v. Clayton Homes, Inc., 2003 WL 1922917, at *2 (citing E.E.O.C. v. Hernando Bank, Inc., 724 F.2d 1188, 1196 (5th Cir.1984)). The plaintiff at all times carries the burden of persuading the trier of fact that the pay disparity is due to the employer's intentional sex discrimination. Lenihan, 994 F.Supp. at 799.

Without specifically referring to her disparate pay claim, Plaintiff states in her response that she will "introduce evidence that there were male employees who were similarly situated to her and were treated more favorably." (Resp. at 3.) She points the Court generally to the affidavits filed with her response. A review of those affidavits reveals that they fail to identify similarly situated male employees, or provide evidence establishing that Plaintiff's position and job duties were the same as those of the male employees.

Plaintiff also does not specifically address her disparate pay claim in her surreply. However, one of the attachments submitted with her surreply references this claim. In that attachment, Complainant's Response to the Agency's Motion for Decision Without a Hearing, dated November 2, 2001, Plaintiff's counsel during her EEOC administrative proceedings states in a section entitled "Arguments and Authorities" that nine male, non-supervisory AUSAs with less experience than Plaintiff received between $10,700 and $14,500 more than Plaintiff in basic annual salary. [FN12] (Pl. Surreply App., Exh. 17 at 125, ¶ 31.) That paragraph refers to an appendix that Plaintiff did not include in her own appendix. Plaintiff's counsel also asserts in that document that those male AUSAs are similarly situated to her, but does not refer to any appendix. [FN13] Id. at ¶ 32. Plaintiff's appendix provides no evidentiary support for her counsel's assertions, nor does she provide a basis for her belief such as personal knowledge. Thus, the only support Plaintiff offers is her subjective belief or speculation that her salary was lower than that of

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1500819, *14 (N.D.Tex.))

male AUSAs; such support is insufficient to create a genuine issue of material fact. See Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir.1996) (explaining that summary judgment evidence must be more than mere subjective beliefs or speculation). Plaintiff therefore has failed to point to evidence raising a genuine question of fact that Defendant treated her differently from similarly situated male employees. See Gazda v. Pioneer Chlor Alkali Co., 10 F.Supp.2d. 656, 669 (S.D.Tex.1997) (finding that plaintiff failed to raise a genuine issue of fact regarding her disparate pay claim where she failed to produce evidence establishing that her position and associated duties were the same as those of the male employees she compared herself to) (citing Tonka v. Sealer Corp., 66 F.3d 1295, 1313 (2d Cir.1995); Lloyd v. Phillips Bros., Inc., 25 F.3d 518, 525 (7th Cir.1994)). Accordingly, because Plaintiff has failed to establish a prima facie case of discrimination with respect to her disparate pay claim, Defendant is entitled to summary judgment on this claim.

> FN12. Plaintiff's counsel wrote in Complainant's Motion to the Agency's Motion for Decision Without a Hearing that: The facts show that the complainant was subjected to illegal discrimination and retaliation when her basic annual salary was established in 1998, 1999, and 2000. Other non-supervisory AUSA's in the SDTX, who had less experience than the complainant, have been paid far more tha[n] the complainant for years. Some of the non-supervisory AUSA's who were paid more than the complainant include [Plaintiff lists 9 individuals]. All of these AUSA's are male ... All of them except [one individual] also have less experience with the agency than the complainant ... By May 2000, all of the other AUSA's except for Mr. Morgan were being paid the highest basic annual salary allowed by law. This means that they were each making $14,500 more than the complainant in basic annual salary. Mr. Morgan was making $10,700 more than the complainant. (Pl. Surreply App., Exh. 17 at 125, ¶ 31.)

> FN13. In the Complainant's Response to the Agency's Motion for Decision Without a Hearing, Plaintiff's counsel asserted: These AUSA's are similarly situated to the complainant because the relevant aspects of their jobs were substantially the same as the complainant's. They all work for the USA and the USA sets their basic annual salary.

> They are all attorneys who perform legal work as it was assigned to them by the USA. They all received their law degrees between 1984 and 1987, except for Mr. Guerra and Mr. Hammer. Those two received their degrees earlier, but they have the same or less experience with the agency than the complainant. All non-supervisory AUSA's in the SDTX also have the same or substantially the same annual Performance Work Plans. (Pl. Surreply App., Exh. 17, at 125, ¶ 32.)

### 3. Less Desirable Office Space

*15 On December 17, 1998, Plaintiff filed a complaint asserting that "[n]ew offices in the McAllen Division are being assigned in an arbitrary manner. I have been given a less desirable office because of my gender[.]" [FN14] (Pl. Surreply App., Exh. 2 at 8.) Plaintiff did not address this claim in her pleadings, but provides some detail in one of her affidavits regarding why she felt that her office space was less desirable. (Pl. Resp.App., Exh. 1 at 30-37.) In that affidavit, Plaintiff explains that when the USAO in McAllen moved to a different floor, she was given a choice between two offices among three designated for Civil Division attorneys on the west end of the floor. Id. at 30-31. Those two offices, she states, "were the greatest distance away from amenities such as the USAO's library and the Civil Division's conference room, legal secretary, photocopier, facsimile machine, and printer" and were the most isolated in the USAO. Id. at 31. She also complains that a computer specialist was later moved into the office next to hers when other offices were available, and that the telephone conversations of that employee could be heard clearly in Plaintiff's office and disturbed her work. Id. at 35-36. Furthermore, she asserts that she and the employee were in a vulnerable and unsafe area because of its proximity to a room in which defense attorneys could meet with prisoners. Id. at 35-36.

> FN14. In her EEOC complaint, Plaintiff also asserted claims of discrimination based on race, age, and national origin. (Pl. Surreply App., Exh. 2 at 8.) However, in her Second Amended Complaint, she limits her claim to discrimination on the basis of sex. (Second Am. Compl. at 2, ¶¶ 1-2.)

Under the rigorous standard of the Fifth Circuit, "[a]dverse employment actions include only ultimate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1500819, *15 (N.D.Tex.))

employment decisions such as hiring, granting leave, discharging, promoting, or compensating." Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir.2002) (citing Walker v. Thompson, 214 F.3d 615, 629 (5th Cir.2000)). "As a general rule, employment actions are not adverse where pay, benefits, and level of responsibility remain the same." Richardson v. Monitronics Int'l, Inc., 2004 WL 287730, at *5 (N.D.Tex., Jan.27, 2004) (citing Watts v. Kroger Co., 170 F.3d 505, 512 (5th Cir.1999)). Thus, under Fifth Circuit precedent, assignment to a "less desirable office" does not constitute an adverse employment action. See Wooten v. St. Francis Med. Ctr., 108 Fed. Appx. 888, 891 (5th Cir.2004) (finding that plaintiff's move from a five-by-ten cubicle shared with four other employees to an office converted from a storage area did not constitute an adverse employment action under Fifth Circuit precedent).

Based on Fifth Circuit precedent on adverse employment actions and under the circumstances described by Plaintiff, the Court finds that Plaintiff's office assignment does not constitute an adverse employment action. Plaintiff has not asserted that her pay, benefits, or level of responsibility changed as a result of her office assignment. Circumstances such as those described by Plaintiff, while somewhat inconvenient and unpleasant, do not rise to the level of a materially adverse change in the conditions or terms of her employment. See Reiter v. Metro. Trans. Authority of New York, 224 F.R.D. 157, 169 (S.D.N.Y.2004) (stating that loss of desirable office space does not constitute an adverse employment action by itself) (citing Staff v. Pall Corp., 233 F.Supp.2d 516, 532 (S.D.N.Y.2002)); Banks v. Metro-North Commuter R.R., 2000 WL 45435, at *7 (S.D.N.Y. Jan.19, 2000) (granting summary judgment for defendant on plaintiff's claim that he was denied adequate office space and furniture, where plaintiff presented no evidence that the denial constituted a materially adverse change in the condition or terms of his employment); Annett v. Univ. of Kansas, 82 F.Supp.2d 1230, 1244 (D.Kan.2000) ("It is an employer's prerogative to assign its employees such office space as is necessary to do the job."). The conditions Plaintiff describes certainly do not rise to the level of hardship shown by the plaintiff in Singletary v. District of Columbia, in which the D.C. Circuit found merit in the plaintiff's contention that

assignment to an unheated, unventilated, poorly lit storage closet, containing brooms and boxes of debris, accessible only through a clinic for which the plaintiff did not have a key, and where other, more suitable working places were available, constituted an adverse employment action. 351 F.3d 519, 528 (D.D.C.2003). In order to make a prima facie showing of sex discrimination, a plaintiff must demonstrate the occurrence of an adverse employment action. See, e.g. Ward v. Bechtel Corp., 102 F.3d 199, 202 (5th Cir.1997) (noting that third prong of a prima facie case of sex discrimination requires a showing that employee experienced an adverse employment action, such as termination); Davis, 383 F.3d at 319 (noting that the second prong of a prima facie case of retaliation requires a showing that employee experienced an adverse employment action). Because occupying less desirable office space does not constitute an adverse employment action, Plaintiff cannot establish a prima facie case of sex discrimination or retaliation as to this claim. Accordingly, Defendant is entitled to summary judgment on this claim.

4. Failure to Promote

*16 On November 8, 1999, Plaintiff filed a formal complaint asserting that "[o]n January 21, 1999, I learned that another employee was selected to be Chief of the Financial Litigation Unit (FLU), a position for which I am qualified and in which I had repeatedly expressed an interest. I have received financial litigation training and I have spent almost 30 months working on FLU cases." (Pl. Surreply App., Exh. 3 at 14.) Plaintiff does not specifically address this claim in her complaint, response, or surreply, but she does provide some details in the affidavits attached to her response. In one affidavit, Plaintiff states that "[i]n late January or early February of 1999, the USAO-SDTX selected AUSA Mirsky to be the Chief of the Financial Litigation Unit. Although I was the only AUSA who had been continually working in the Financial Litigation Unit for about two and one-half years at that time, I was not selected to be the Chief of the Financial Litigation." (Pl. Resp.App., Exh. 2 at 153.)

Applying the McDonnell Douglas framework in a failure to promote case, Plaintiff must make a prima facie showing that: (1) she is a member of a protected class, (2) she was qualified for the position sought, (3) she was rejected for the position, and (4)

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d                                    Page  64
(Cite as: 2005 WL 1500819, *16 (N.D.Tex.))

the position she sought was filled by someone outside the protected group. Blow, 236 F.3d at 296 (citations omitted). The statements in Plaintiff's affidavit establish the first, third and fourth prongs of a prima facie case of failure to promote-that as a woman, she is part of a protected group, and that the promotion was given to an individual outside that group. Plaintiff's assertion that she repeatedly expressed an interest in the promotion, however, does not satisfy her burden to establish the second element of the prima facie test-that she sought the position of FLU Chief. [FN15]

> FN15. At the prima facie stage, a plaintiff's burden regarding establishment of qualification is not onerous; she simply must provide evidence that she met the objective qualifications for the position, although she need not show that she was better qualified than the individual selected. Medina v. Ramsey Steel, 238 F.3d 674, 681 (5th Cir.2001). Plaintiff, however, has failed to meet her summary judgment burden of pointing to specific evidence in the record establishing that she was qualified. "The Court is not obligated to scour the record in search of evidence" that Plaintiff is qualified for the position she sought. Ahrens v. Perot Sys. Corp., 39 F.Supp.2d 773, 782 n. 24 (N.D.Tex.1999) (citing Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 457 (5th Cir.1998). However, the Court need not determine whether Plaintiff satisfied the objective qualifications for the position of FLU Chief; even if she made such a showing, she has failed to demonstrate that she in fact sought that position, as discussed in section III.C.4.

"The second McDonnell Douglas prong ('he was qualified for the position sought') requires the position to actually be sought--without that, normally a plaintiff cannot be denied employment." Kolpakchi v. Principi, 113 Fed. Appx. 633, 636 (5th Cir.2004). A plaintiff must demonstrate that she applied for the position, unless she can "show that such an application would have been a futile gesture." Shackleford v. Deloitte & Touche, LLP, 190 F.3d 398, 406 (5th Cir.1999) (citing Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 363-66, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); Claiborne v. Ill. Cent. R.R., 583 F.2d 143, 150 (5th Cir.1978)). "Making such a claim usually requires a showing that the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination." Shackleford, 190

F.3d at 406 (citing Teamsters, 431 U.S. at 363-66; Malarkey v. Texaco Inc., 983 F.2d 1204, 1213 (2d Cir.1993)).

Some courts have excused the application requirement under other limited circumstances, although the Fifth Circuit has not expressly adopted exceptions to the requirement that a plaintiff show that she applied for or was deterred from applying for a position by a known and consistently enforced policy of discrimination. See Kolpakchi, 113 Fed. Appx. at 637 (stating that the Fifth Circuit "has not explicitly adopted our sister circuits' rules with regards to the necessity of a formal application; nor have we specifically rejected such a more expansive rule [encompass[ing] situations where, through the fault of the employer, an employee's desire to hold a position is not recognized or properly considered]"). The formal application requirement has been excused, for example, "where a vacant position was not posted, or where the normal hiring procedures did not entail formal application." Lenihan, 994 F.Supp. at 794. "In these situations, however, the plaintiff must show there was an available position and that she expressed some interest in a promotion or that the employer 'has some reason or duty to consider [her] for the post.' " Id.

*17 In the instant action, Plaintiff alleges that she had "repeatedly expressed an interest" in the position of FLU Chief. Plaintiff has neither alleged nor pointed to evidence that she applied for the position she sought. Plaintiff has also failed to assert or point to evidence suggesting that she was deterred from applying by a known and consistently enforced policy of discrimination, or that applying would have been futile due to a policy of known and consistent discrimination. See Lenihan, 994 F.Supp. at 794 (noting that to overcome the lack of an application, a plaintiff must present overwhelming evidence of pervasive discrimination in all aspects of the employer's internal employment practices) (quoting Kreuzer v. Brown, 128 F.3d 359, 363 n. 2 (6th Cir.1997)).

Without deciding whether the exceptions to the requirement that a plaintiff demonstrate that she applied for or was deterred from applying for a position can be applied her, the Court finds that Plaintiff has not satisfied those more lenient standards. While in her EEOC complaint Plaintiff states that she "repeatedly expressed an interest" in

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1500819, *17 (N.D.Tex.))

Page 65

the position of Chief of the FLU, she does not state to whom she expressed her interest. She points to no evidence that she talked to a selecting official or submitted a resume or an informal note. See id. (noting that Plaintiff did not assert that "she submitted a resume, a formal application, or even an informal note seeking the position."). She has not asserted nor pointed to evidence that the USAO had a duty or reason to consider her for the position.

In sum, Plaintiff has failed to demonstrate that she sought the FLU position, either by applying for it or showing that she was deterred from applying, or based on exceptions recognized by some courts. All she has presented is an unsubstantiated assertion in her EEOC complaint that she repeatedly expressed interest in the position. By offering only an unsubstantiated assertion regarding one of the prima facie elements of her discrimination claim, Plaintiff has failed to satisfy her summary judgment burden. See Little, 37 F.3d at 1075. Accordingly, Defendant is entitled to summary judgment on this claim.

D. Retaliation Claims

Applying the McDonnell Douglas framework to Plaintiff's claims of retaliation, she must make a prima facie showing that: (1) she engaged in an activity protected under Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 319 (5th Cir.2004) (citing Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir.2003)). With respect to the first element of a retaliation claim, "[a]n employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir.1996). Plaintiff asserts generally in her second amended complaint and response that she participated in various protected activities from May of 1992 until her termination in March of 2001. (Second Am. Compl. at 2, ¶¶ 3-5; Pl. Resp. Br. at 4.) The Court therefore will assume without deciding that Plaintiff has established the first prong of her prima facie retaliation case with respect to each of her retaliation claims, discussed in greater detail below. [FN16]

FN16. Plaintiff's appendix includes copies of EEOC complaints filed prior to her complaints about office space and her failure to receive a promotion. All three of those EEOC complaints were filed prior to her termination. She also states that her removal was predicated on letters she sent to her United States senators in April 1999 citing reasons she thought that Mosbacker should not have been selected for the position of United States Attorney. (Second Am. Compl. at 2, ¶ 6; Pl. Resp.App. Exh. 2 at 152.) Thus, Plaintiff has established that she engaged in protected activity with respect to her office space, promotion, and termination claims. However, Plaintiff does not identify specific activity prior to the time she filed the EEOC complaint based on her pay, nor does she point to evidence in the record supporting her assertions. In an abundance of caution, the Court has reviewed Plaintiff's appendices and notes that Plaintiff's affidavit states that she had previously filed a grievance regarding alleged gender discrimination in 1994 and gave a deposition in EEOC proceedings on behalf of another USAO employee in 1996. (Pl. Resp.App., Exh. 2 at 147; 150.)

1. Termination

*18 With respect to Plaintiff's retaliation claim based on her termination, she satisfies the second prong of the prima facie case because termination is an adverse employment action. Plaintiff has failed, however, to satisfy the third prong by showing the existence of a causal link between her protected activity and her termination. Her removal was not proposed for nearly a year after she filed her last EEOC complaint, one and a half years after she sent the letters to her senators regarding Mosbacker, and more than eight years after she allegedly began engaging in protected activity. While close temporal proximity can create an inference of retaliation, the timing here appears to create the opposite inference. See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir.1995) (finding nothing suspicious about a suspension occurring several years after plaintiff asserts that he first engaged in protected activity). Thus Plaintiff has failed to present a prima facie case of retaliation based on her termination, and Defendant is entitled to summary judgment on this claim. Even if Plaintiff had established a prima facie claim of retaliation with respect to her termination, her claim would nevertheless fail because, as discussed in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1500819, *18 (N.D.Tex.))

Page   66

previous section, she has failed to establish that Defendant's legitimate, nondiscriminatory reasons for terminating her were pretextual.

2. Level of Compensation

With respect to the second element of a prima facie retaliation claim based on her level of compensation, Plaintiff has not pointed to evidence to support her claim that she received less pay than any similarly situated employee, as discussed above, and thus has failed to create a question of fact regarding the existence of an adverse employment action. Plaintiff has also failed to establish the third element by showing a causal connection between her rate of compensation and any protected activity she engaged in.

"Although the plaintiff's burden at the prima facie state is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of his protected activity." Manning v. Chevron Chem. Co., 332 F.3d 874, 883 n. 6 (5th Cir.2003) (citing Medina, 238 F.3d at 684.) Plaintiff has failed to precisely identify those individuals responsible for determining her level of pay. [FN17] Because she has failed to identify the individuals who set her compensation, she cannot demonstrate that the decisionmakers were aware of her protected activity. As a result, she fails to demonstrate a causal link between her protected activity and her compensation and pay increases. See Manning, 332 F.3d at 884 (finding that plaintiff who failed to show that decisionmakers were aware of his lawsuit failed to establish a causal link between protected activity and adverse employment action). Plaintiff thus has failed to establish a prima facie case of retaliation regarding her disparate pay claim, and Defendant is entitled to summary judgment on this claim.

> FN17. Moreover, inconsistent statements within Plaintiff's appendices fail to shed light on the question of who was responsible for setting Plaintiff's compensation. Plaintiff's affidavit states that "[a]n AUSA's increases in compensation, an AUSA's bonuses, and an AUSA's awards at the USAO-SDTX are based on the AUSA's Performance Appraisal Reports (PARs). Neither Michael McCormick, my immediate supervisor, nor any supervisor of the USAO-SDTX gave me a PAR for the period from January 1, 1996 to September

1, 1996." (Pl. Resp.App., Exh. 2 at 151.) A document in the appendix to her surreply states that "the USA sets [the AUSAs] basic annual salary." (Pl. Surreply App., Exh. 17 at 125, ¶ 32.) Plaintiff has therefore failed to make clear whether her immediate supervisor, another supervisor, the USA, or some combination of those individuals is responsible for determining her pay.

3. Pay Increase

*19 In the same EEOC complaint regarding her level of compensation, Plaintiff also asserts that she has "been denied pay increases because of my participation in the department's EEOC process since 1996." [FN18] (Pl. Surreply App., Exh. 1 at 2.) Plaintiff does not specifically address this retaliation claim in her pleadings.

> FN18. Plaintiff's EEOC complaint plainly alleges a denial of pay increases. Plaintiff has not indicated in any of her submissions to the Court that she was actually dissatisfied with the size of her pay raises. The Court notes that although Plaintiff is proceeding pro se, she is an attorney who has been licensed by the State of Texas since 1986. While pro se parties are normally accorded more leniency in the construction of their pleadings, see Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court need not afford a licensed attorney such leniency when the attorney appears pro se. See Harbulak v. Suffolk Co., 654 F.2d 194, 198 (2d Cir.1981) (holding that the plaintiff "is a practicing attorney and, therefore, cannot claim the special consideration which courts customarily grant to pro se parties"); Tindal v. Gibbons, 156 F.Supp.2d 1292, 1294 n. 1 (M.D.Fla.2001) ("Although the Court generally construes the pleadings of a pro se litigant liberally, because Plaintiff is a practicing attorney, the Court is not required to show him special leniency.") (citation omitted); Define v. Latimer, 79 F.R.D. 5, 7 (E.D.N.Y.1997) ("Plaintiff, proceeding pro se, is an attorney, and the court has a right to expect skillfully drawn pleadings from her."). Accordingly, the Court need not extend the same leniency to Plaintiff that it extends to other pro se parties, and the Court therefore declines to construe her claim as one related to the size of her pay increases.

Plaintiff has not provided any evidence that she

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
**(Cite as: 2005 WL 1500819, \*19 (N.D.Tex.))**

was denied pay increases between 1996 and the time she filed her complaint in September 1998. In fact, her assertion that she was denied pay increases is inconsistent with statements in an affidavit accompanying her response. Plaintiff's affidavit includes a timeline in which she states that she received a raise of $1,000 in May 1997 and $800 in May 1998. (Pl. Resp.App., Exh. 1 at 132-133.) Plaintiff has therefore presented evidence that she did receive pay raises following her alleged participation in the DOJ's EEOC process between 1996 and the time she filed the complaint regarding her failure to receive pay raises. Because she has presented no evidence that she was denied pay raises between 1996 and the time she filed her EEOC complaint in 1998 regarding pay raises, Plaintiff has failed to create a genuine issue of material fact as to this part of her EEOC complaint, and summary judgment is appropriate for Defendant. See Kang v. Bd. of Supervisors of La. State Univ., 75 Fed. Appx. 974, 976-977 (5th Cir.2003) (per curiam) (declining to say that plaintiff suffered an adverse employment action where he argued that he received a less-than average pay raise but presented evidence that he had in fact received pay raises larger than those of several colleagues).

### 4. Office Space

Plaintiff alleges a claim of retaliation based on her office assignment. As discussed above, the Court found that, in light of Fifth Circuit case law and under the circumstances described by Plaintiff, her office assignment does not constitute an adverse employment action. See Wooten, 108 Fed. Appx. at 891 (finding that plaintiff's move from a five-by-ten cubicle shared with four other employees to an office converted from a storage area did not constitute an adverse employment action under Fifth Circuit precedent); Green, 284 F.3d at 657 (citing Walker, 214 F.3d at 629) ("[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."); Richardson, 2004 WL 287730, at \* 5 (citing Watts, 170 F.3d at 512) ("As a general rule, employment actions are not adverse where pay, benefits, and level of responsibility remain the same."). Plaintiff therefore cannot establish a prima facie case of retaliation regarding her office assignment, and Defendant is entitled to summary judgment on this claim.

### 5. Failure to Promote

With respect to Plaintiff's claim that she did not receive a promotion to FLU Chief, Plaintiff's response and surreply assert, and Defendant does not refute, that Plaintiff was not promoted. The failure to receive a promotion clearly constitutes an adverse employment action, and thus she has satisfied the second prong of the prima facie retaliation case. See Webster v. Bass Enters. Prod. Co., 192 F.Supp.2d 684 (N.D.Tex.2002).

**\*20** To establish the third element of a prima facie retaliation case, Plaintiff must show a minimal causal connection between her protected activity and Defendant's decision not to promote her. To demonstrate causation, "a plaintiff must at least raise a question about whether the person who denied him a promotion was aware of the protected activity." Davis, 383 F.3d at 320 (citing Manning, 332 F.3d at 883). In the instant matter, Plaintiff has failed to point to evidence that the decisionmaker was aware of her protected activity; in fact, she has wholly failed to identify who made the decision not to promote her. Thus, Plaintiff cannot establish a prima facie case of retaliation for her failure to promote claim. [FN19] See Manning, 332 F.3d at 884 (finding that plaintiff could not establish a prima facie case of retaliation for a lateral transfer position where he produced no evidence that the decisionmakers were aware of his protected activities). Because Plaintiff has failed to establish a prima facie retaliation claim based on her failure to receive a promotion, Defendant is entitled to summary judgment on this claim.

FN19. Out of an abundance of caution, the Court has examined the appendices to Plaintiff's response and surreply, and in particular has reviewed the timeline set forth in Plaintiff's affidavit. The Court notes that Plaintiff states that in October of 1998, she filed an EEOC complaint regarding office space, discussed above, and testified at an EEOC hearing on behalf of Adelfa Garcia, a Paralegal Assistant in the Corpus Christi office of the USAO-SDTX. (Pl. Resp.App., Exh. 1, 130-131; 135.) The EEOC complaint she refers to was her initial complaint, filed October 1, 1998; she filed a formal EEOC complaint on December 17, 1998. (Pl. Surreply App., Exh. 2 at 7-8.) In her EEOC complaint regarding her failure to receive the promotion, Plaintiff states that she found out she

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



was not selected as FLU Chief on January 21, 1999. (Pl. Surreply App., at Exh. 3 at 14.) Based on the Court's review of Plaintiff's appendices, she appears to have engaged in protected activity approximately one and three months prior to finding out about her non-selection. " '[T]he mere fact that some adverse action is taken after an employee engages in some type of protected activity will not always be enough for a prima facie case.' " Roberson v. Alltel, 373 F.3d at 655 (quoting Swanson v. Gen. Servs. Admin., 110 F.3d at 1188 n. 3). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient causality uniformly hold that the temporal proximity must be 'very close.' " Clark Co. Sch. Dist. v. Breeden, 532 U.S. 268, 272, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (citations omitted). Here, Plaintiff did not point to this temporal proximity in support of her claim, thus failing to satisfy her summary judgment burden to point to specific facts in the record creating a genuine issue of material fact. See Jones, 82 F.3d at 1338. She also failed to point to a decisionmaker or show the decisionmaker's awareness of her protected activity or interest in the promotion. Under such circumstances, temporal proximity alone is insufficient to establish a prima facie case of retaliation. See Clark Co. Sch. Dist., 532 U.S. at 272 (mentioning cases accepting temporal proximity alone as establishing causation, but only where the employer is shown to have knowledge of that protected activity).

## IV. MOTION FOR RELIEF

Plaintiff filed an unspecified motion for relief on March 9, 2005, and a brief in support of that motion on March 15, 2005. In her motion and brief, Plaintiff asserts that "Defendant was not genuinely interested in settling the case" and "Defendant used mediation as a subterfuge to give several of Defendant's attorneys the opportunity to observe Plaintiff's demeanor in preparation for trial". (Pl. Mot. for Relief at 2-3; Pl. Br. in Support of Mot. for Relief at 3.) In her motion and brief, Plaintiff recounts the mediator's description of Defendant's settlement offer. (Pl. Mot. for Relief at 2; Pl. Br. in Support of Mot. for Relief at 2.) She appears to contend that the sum offered by Defendant reveals his lack of genuine interest in settling the case. (Pl. Mot. for Relief at 2; Pl. Br. in Support of Mot. for

Relief at 2.) In addition, Plaintiff appears to contend that Defendant's offer to pay a portion of the mediation fee prior to the mediation evidences Defendant's unwillingness to enter into a settlement, through which Defendant could have later reimbursed her expenses. [FN20] (App. to Pl. Mot. for Relief, Exh. N at 12.) On the basis of these allegations, Plaintiff requests that the Court enter a finding that Defendant intentionally violated Section IV of the Northern District's Civil Justice Expense and Delay Reduction Plan ("Plan") for failure to make a good faith effort to settle the case and that this violation caused Plaintiff to suffer "unnecessary and immeasurable emotional and physical harm" and monetary damages. (Pl. Br. in Support of Mot. for Relief 4-5.) Furthermore, she requests an award of $6,092 in attorney's fees and costs and an order allowing Plaintiff to conduct additional discovery. Id. at 5-6. In a section entitled "Authorities," Plaintiff states that she relies on equity as well as "the explicit and implicit intent and spirit" of Section IV of the Plan and Local Rule 16.3, both of which require that parties make good-faith efforts to settle. Id. at 7. Plaintiff acknowledges, however, that Section IV of the Plan and Local Rule 16.3 "do not identify any sanctions that the Court may impose." Id.

> FN20. Plaintiff wrote " "[i]f EOUSA is genuinely interested in settling the case, then exactly why is EOSUA offering to pay some of my share of the expenses of mediation before the mediation?" My expenses for mediation could be easily reimbursed within 30 days pursuant to a settlement." (App. to Pl. Mot. for Relief, Exh. N. at 12.)

*21 Defendant contends that Plaintiff's motion should be denied for two reasons. First, Defendant argues that by disclosing confidential communications made during the mediation, Plaintiff herself violated the Plan. (Def. Resp. to Pl. Mot. for Relief at 2.) Defendant, citing Gore v. Experian Info. Solutions, Inc., 2004 WL 1381034, at *1 (N.D.Tex. June 21, 2004), contends that under such circumstances, sanctions should not be awarded. Id. In Gore, the Court addressed the plaintiff's motion for sanctions for alleged bad faith conduct during mediation. Id. Because the motion was premised on confidential communications, and such disclosure violated Section III. F of the Plan, which provides that "communications made during ADR procedures are confidential and protected from



Not Reported in F.Supp.2d
**(Cite as: 2005 WL 1500819, \*21 (N.D.Tex.))**

Page 69

disclosure," the Court denied the motion. Id.

In her motion and brief, Plaintiff has revealed confidential communication that occurred during mediation, as did the plaintiff in Gore. (See Pl. Mot. for Relief at 2; Pl. Br. in Support of Mot. for Relief at 2.) Based on Plaintiff's revelation of confidential communication, denial of Plaintiff's motion for relief is appropriate. See Gore, 2004 WL 1381034, at \*1; see also In re Lake Utopia Paper Ltd., 608 F.2d 928, 930 (2d Cir.1979) (denying appellee's motion for attorneys fees and costs because appellee's brief revealed confidential communication during a settlement conference).

Although denial of Plaintiff's motion for relief is appropriate on grounds that she disclosed confidential communications, the Court also addresses Defendant's second assertion that relief should be denied because Defendant did in fact act in good faith at the mediation. (Def. Resp. to Pl. Mot. Relief at 3.) Defendant argues that he offered to settle the case for a sum based on his assessment of the case's settlement value. Id. at 4. He argues that such an offer does not constitute bad faith simply because the sum differs from that demanded by Plaintiff. Id.

In Dawson v. United States, the Fifth Circuit reversed the district court's award of sanctions based on the defendant's refusal to make a settlement offer. 68 F.3d 886, 899 (5th Cir.1995). Noting that the defendant appeared to have had numerous legitimate reasons for not making a settlement offer, the Fifth Circuit determined that the district court had erred in reading a local rule requiring that parties make good faith efforts to settle as authorizing an award of sanctions for a party's failure to make a settlement offer. Id. at 893-99. In the instant matter, Defendant made a settlement offer and provided a legitimate reason for offering a sum lower than that sought by Plaintiff. In addition, Plaintiff has presented no evidence that Defendant failed to act in good faith. The Court thus finds that Defendant's failure to make a settlement offer satisfactory to Plaintiff does not constitute failure to mediate in good faith as required by the Plan and the Local Rule 16.3. Accordingly, Plaintiff's motion for relief should be denied.

V. CONCLUSION

\*22 For the foregoing reasons, the Court concludes that no genuine issue of material fact exists with respect to Plaintiff's Title VII claims, and that summary judgment is appropriate in this case. Accordingly, Defendant John Ashcroft's Motion for Summary Judgment is GRANTED. In addition, Plaintiff's motion for relief is DENIED.

SO ORDERED.

2005 WL 1500819 (N.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



**TAB D**

Not Reported in F.Supp.2d
(Cite as: 2001 WL 881443 (E.D.Pa.))

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

**Donna Marie HAMPTON Plaintiff,**
v.
**TOKAI FINANCIAL SERVICES Defendant.**

**No. Civ.A. 98-5074.**

May 7, 2001.

Vivienne A. Crawford, Phila, PA, for Donna Marie Hampton, Plaintiff.

Lawrence B. Fine, Lawrence B. Fine, Michael J. Eagles, Morgan, Lewis & Bockius, Phila, PA, for Tokai Financial Services, Inc., Defendant.

MEMORANDUM AND ORDER

TUCKER, J.

**\*1** Presently before this Court is a Motion for Summary Judgment (Document No. 19) filed by Defendant Tokai Financial Services ("Defendant") on February 23, 2000. For the reasons set forth below, upon consideration of the motion, the response (Documents 20) of Plaintiff Donna Marie Hampton ("Plaintiff"), Defendant's reply (Doc. 21), Plaintiff's addendum (Doc. 24), and Defendant's supplemental memorandum, this Court denies the motion for summary judgment.

BACKGROUND

Plaintiff was employed by Defendant as the supervisor of its accounting services department. During her thirteen year tenure, Plaintiff received numerous promotions and commendations for her service. In May 1998, Defendant experienced a problem with missing and forged checks. Plaintiff had previously told her employer on numerous occasions that its procedures for securing the checks were inadequate and that tampering was highly possible. Defendant's Director of Human Resources, Harris Butler, asked Plaintiff to a meeting with himself, the company attorney, and two agents from the Federal Bureau of Investigation. Plaintiff was shown eight check requests and asked if she recognized the signature. Plaintiff indicated that only two of the requests bore

her signature and that the other six were forgeries. Plaintiff denied any personal involvement with the forgeries and cooperated with the investigation. Nevertheless, on June 16, 1998, she was fired for initialing fraudulent check requests without properly reviewing them. A week later, one of the FBI special agents contacted Plaintiff's counsel to inform him that Plaintiff was not, nor has she ever been the focus of its investigation. Paradoxically, Mr. Butler informed Plaintiff that she was fired because the forged checks were cashed in primarily African-American neighborhoods and it was therefore assumed that only African-American employees could have forged the checks. Plaintiff and one other African-American employee were terminated. As a result, Plaintiff became emotionally upset and requires medical attention.

LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U . S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence of support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2001 WL 881443, *1 (E.D.Pa.))

element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir.1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts must await trial. Id.

## DISCUSSION

*2 Defendants advances two arguments in this motion. First, Defendants asserts that Plaintiff fails to state a prima facie case and that summary judgment should be granted in the Defendants' favor. Alternatively, Defendants assert that even if a prima facie case exist, Plaintiff fails to adduce evidence that Defendants' articulated business reason for termination is pretextual. After viewing the facts in the light most favorable to Plaintiff, the Court finds that there are a number of material facts in dispute that preclude the granting of summary judgment in this matter.

### A. Prima Facie Case

Under the well-known McDonnell Douglas analysis, a plaintiff bringing a claim for race discrimination in employment bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. [FN1] With respect to the claim for race discrimination, she must show that (1) she is a member of a protected class, (2) that she was qualified for the position in question, (3) that she suffered an adverse employment decision, and (4) that the circumstances give rise to an inference of unlawful discrimination, for example, that similarly situated individuals who are not in the protected class were treated more favorably than she. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1972).

FN1. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) established the mode of analysis for employment discrimination claims under Title VII. This burden-shifting analysis also applies to employment discrimination claims under § 1981, see Pamintuan v. Nanticoke Memorial Hosp., 192 F.2d 378, 385 (3d Cir.1999); Stewart v. Rutgers, The State University, 120 F.3d 426, 432 (3d Cir.1997).

If the Court finds that a plaintiff has established a prima facie case of race discrimination, the "burden shifts to defendant to articulate some legitimate, non-discriminatory reason for the employee's rejection." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-23 (1981) (quoting McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). If Defendants are able to meet this burden, then Plaintiff must show that Defendants' articulated non-discriminatory reason was, in fact, a pretext for discrimination by pointing to some evidence from which a jury could:

(1) disbelieve the employer's articulated legitimate reasons; or
(2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Walton v. Mental Health Ass'n of S.E. Pa., 168 F.3d 661, 668 (3d Cir.1999). Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them 'unworthy of credence.' " Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir.1994) (citations, emphasis omitted).

This case has a number of material disputes that make summary judgment inappropriate in this case. Plaintiff meets all four factors of a prima facie discrimination case. Defendant proffers its contention that Plaintiff was fired due to her failure to complete her job responsibilities in its efforts to meet its statutory burden under McDonnell; however, looking at the facts in the manner most favorable to Plaintiff, a reasonable fact-finder could find evidence of pretext sufficient enough to defeat Defendant's instant motion. The failure to take proper security measures, the potential forgeries, and the information from the FBI special agent, coupled with Mr. Butler's alleged explanation for Plaintiff's termination and the fact that only African-

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
**(Cite as: 2001 WL 881443, \*2 (E.D.Pa.))**

American employees were fired, gives this Court ample reason to doubt the employer's rationale. The standard for summary judgment is not whether or not a plaintiff would win should a case proceed to trial, but whether or not the moving party has proved that no issues of material dispute exist, and that they are entitled to summary judgment as a matter of law. Defendant has not met this burden; as such, summary judgment must be denied at this time.

### CONCLUSION

**\*3** In conclusion, the Court denies Defendants' Motion for Summary Judgment.   An appropriate Order follows.

### ORDER

ACCORDINGLY, this 3rd day of May, 2001, upon consideration of Defendant's Motion for Summary Judgment (Document No. 19), Plaintiff's Response (Doc. 20), Defendant's Reply (Doc. 21), Plaintiff's Addendum (Doc. 24), and Defendant's Supplemental Memorandum (Doc. 25),

IT IS HEREBY ORDERED and DECREED that Defendants' Motion is DENIED. The parties are ordered to confer with each other and jointly submit a new trial pool date for the Court's consideration.

2001 WL 881443 (E.D.Pa.)



**TAB E**

Not Reported in F.Supp.2d
**(Cite as: 2001 WL 1132404 (E.D.Pa.))**

Page 112

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

**Beverly Campbell MCBRIDE, Paulette Martin, Rose Anderson,**
**v.**
**HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA, Lisa Malloy and Elaine Thompson.**

**No. CIV.A. 99-6501.**

Sept. 21, 2001.

MEMORANDUM

WALDMAN, J.

### I. Introduction

**\*1** Plaintiffs have asserted claims pursuant to 42 U.S.C. §§ 1981 and 1985(3) for discrimination and conspiracy to discriminate in employment decisions because of race, creating a hostile work environment and retaliation. Presently before the court is defendants' motion for summary judgment.

### II. Legal Standard

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir.1986). Only facts that may affect the outcome of a case are "material." See Anderson, 477 U.S. at 248. All reasonable inferences from the record must be drawn in favor of the non-movant. See id. at 256.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. See J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir.1990)

(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), cert. denied, 499 U.S. 921 (1991). A plaintiff cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather must present evidence from which a jury could reasonably find in his favor. See Anderson, 477 U.S. at 248; Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir.1999); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir.1989); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa.1995).

### III. Facts

From the evidence of record, as uncontroverted or otherwise viewed in a light most favorable to plaintiffs, the pertinent facts are as follow.

Plaintiffs are three African American women who worked as assistants in the Occupational and Physical Therapy Department ("OT/PT") at the Hospital of the University of Pennsylvania ("HUP").

Plaintiff McBride worked at HUP from January 1995 until July 1998 when she requested and received a medical leave of absence which continued to November 19, 2000 when she resigned.

Plaintiff Anderson worked at HUP from October 1989 until August 1998 when she requested and received a medical leave of absence which continued to October 28, 1998 when she resigned. [FN1]

> FN1. At some point during her employment in the OT/PT Department, Ms. Anderson requested and received a transfer to another department. She was unhappy in the new position and transferred back to the OT/PT Department.

Plaintiff Martin was interviewed and hired by defendant Malloy in June 1994. She worked until August 10, 1998 when she requested and received a medical leave of absence which continued to October 26, 1998 when she resigned.

**\*2** Defendant Malloy was employed by HUP from 1993 to 1999. She began her career at HUP as a Clinical Specialist. She then became the Outpatient Unit Supervisor for the Physical Therapy Department and in June 1994 became the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Ambulatory Care Coordinator. The Physical Therapy Department merged with the Occupational Therapy Department in June 1996, creating the OT/ PT Department which was relocated to a facility at 37th and Market Streets. Ms. Malloy was promoted to Director of Ambulatory Services for the OT/PT Department. She left HUP in June 1999.

Defendant Thompson was employed by HUP from 1992 to 2000. She was Director of the Physical Therapy Department from 1992 to 1995. From 1995 to 1997 Ms. Thompson was a hospital director and from 1997 to 2000 she was the chief administrative officer for the trauma network.

Plaintiffs' duties included scheduling patients' physical therapy appointments, maintaining the gym area, including stocking supplies, and sometimes assisting patients on the therapy equipment. After the merger of the Occupational and Physical Therapy Departments and the relocation to the new facility, plaintiffs' responsibilities changed. Plaintiffs were all situated at the front desk of the reception area and were responsible for answering the telephones, scheduling patient appointments and greeting the incoming patients. The OT/PT Department hired an athletic trainer to perform the patient care duties and as a result, the plaintiffs' patient care responsibilities were terminated.

At times never specified, Ms. Anderson applied for other "clerk positions" and some "patient care positions" which she did not receive. No other details are provided. At unspecified times, Ms. McBride applied for a nursing assistant position in a department she could not recall and clerk positions in departments she could not recall except for one which was in the otolaryngology department. She testified that she went to Human Resources "all the time" to see what positions were available. Ms. Martin applied for various patient registrar positions. The only one she could recall was in gynecology.

Ms. Anderson acknowledged that Ms. Malloy did not want her to transfer because Ms. Malloy depended on her in the OT/PT Department. Ms. McBride testified that Ms. Malloy did not want her to transfer out of OT/PT because of the "good job" Ms. McBride did. When plaintiffs complained sometime in 1997 to Ms. Malloy about their classification and salary, she approved their promotion from Clerk II to Clerk III. Ms. Malloy believed plaintiffs would receive some retroactive pay as a result. When they complained to Ms. Malloy that they had not received such pay, she advised them that she was too busy to deal with the matter.

Plaintiffs assert that defendants Malloy and Thompson acted in concert to discriminate against them in filling these other positions because of race and took actions which created a racially hostile work environment. These actions included not allowing plaintiffs to all have lunch hours at the same time; not providing plaintiffs with voice mail on their office telephones; [FN2] installation of a security camera in the front reception area where plaintiffs' desks were located; locking of the thermostat at a set temperature in the front reception area; [FN3] failure to provide a coat rack for plaintiffs; [FN4] and, a prohibition on leaving personal belongings in the front reception area. [FN5] Plaintiffs assert that they were forced to resign because of the resulting hostile working environment created by these allegedly discriminatory acts.

FN2. There was no voice mail on the front reception desk telephones during hours of operations. Therapists with direct lines did have telephones with voice mail.

FN3. At plaintiffs' request, the thermostat would be unlocked and the temperature adjusted by Bob LaBelle who maintained a key. Mr. LaBelle was not always available.

FN4. Employees in the back sometimes hung their personal coats on racks provided for lab coats.

FN5. Plaintiffs were provided with lockers but complained to Ms. Malloy that they were not large enough when Ms. McBride's and Ms. Martin's leather coats were torn. Ms. Malloy noted that the plaintiffs all wore black leather coats and said she would try to get larger lockers to accommodate them. Because Ms. McBride's leather coat was brown, she thought "maybe [Ms. Malloy] wasn't talking about the black leather jackets but us black women." Ms. McBride also perceived as racist Ms. Malloy's reference to a black patient as "crazy." This patient "kept calling and calling" to press a complaint about having to wait too long in the lobby



Not Reported in F.Supp.2d
(Cite as: 2001 WL 1132404, *2 (E.D.Pa.))

before receiving attention.

Plaintiffs assert that Ms. Thompson denied them other positions, and Ms. Malloy denied them retroactive pay for the promotion they received from Clerk II to Clerk III, in retaliation for "complaining to [HUP's] Human Resource Department." At an unspecified time, Ms. McBride complained to Diane Allen at Human Resources about not receiving interviews for positions she had applied for. Ms. McBride did not recall what else she may have said to Ms. Allen but assumes she would "have said something about race" because "I know Diane Allen's husband was black." Ms. Anderson complained to Marilyn Caldwell at Human Resources about being treated unfairly by Ms. Malloy. There is no competent evidence of record that Ms. Anderson was any more specific or ever related that the alleged unfair treatment was because of race. Ms. Anderson could not recall when, even by year, she spoke with Ms. Caldwell.

IV. Discussion

A. § 1981 Claim for Intentional Discrimination

*3 To sustain a § 1981 discrimination claim, a plaintiff must show that the defendant intentionally discriminated against her because of race in the making, performance, enforcement or termination of a contract or for such reason denied her the enjoyment of the benefits, terms or conditions of the contractual relationship. See Saint Francis College v. Al-Khazraji, 481 U.S. 604, 609, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 385 (3d Cir.1999); Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th Cir.1994); Mian v. Donaldson, Lufkin & Jenrette Securities, 7 F.3d 1085, 1087 (2d Cir.1993); Williams v. Carrier Corp., 889 F.Supp. 1528, 1530 (M.D.Ga.1995); Flagg v. Control Data, 806 F.Supp. 1218, 1223 (E.D.Pa.1992).

The McDonnell Douglas analytic framework for Title VII claims also applies to employment discrimination claims under § 1981. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Patterson v. McLean Credit Union, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (applying McDonnell Douglas framework to claims under 42 U.S.C. § 1981); Pamintuan, 192 F.3d at 385

(same); Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir.1997) (same); Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 112 (3d Cir.1996) (same).

The plaintiff has the initial burden of establishing a prima facie case of employment discrimination. See McDonnell Douglas, 411 U.S. at 802; Pamintuan, 192 F.3d at 385. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. See McDonnell Douglas, 411 U.S. at 802; Hampton, 98 F.3d at 112. The plaintiff may then discredit the defendant's articulated reason and show that it was pretextual from which a factfinder may infer that the real reason was discriminatory or otherwise present evidence from which one reasonably could find that unlawful discrimination was more likely than not a determinative cause of the adverse employment action. Id. at 112-3.

To discredit a legitimate reason proffered by the employer, a plaintiff must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in that reason that one could rationally conclude it is incredible and unworthy of credence, and ultimately infer that the employer did not act for the asserted non-discriminatory reasons. See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir.1994). The ultimate burden of proving that a defendant engaged in intentional discrimination remains at all times on the plaintiff. See Hicks, 509 U.S. at 508.

*4 To establish a prima facie case of racial discrimination in the circumstances presented, a plaintiff must show that plaintiff belongs to a racial minority; that plaintiff applied and was qualified for a position for which the employer was seeking applicants; that plaintiff was rejected; and, that thereafter, the position was filled by another or remained open while the employer continued to seek applications from persons of plaintiff's qualifications. See McDonnell Douglas, 411 U.S. at 802.

Plaintiffs are members of a racial minority. Plaintiffs, however, have failed to show that they applied for any position which was filled by another with comparable or lesser qualifications, or that they were qualified for any position for which they did

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2001 WL 1132404, *4 (E.D.Pa.))

apply.

Ms. Anderson, an outpatient clerk at level two, claims that she applied for another clerk position which was given to someone else. There is no showing, however, that she was qualified for the level five inpatient position that she applied for. [FN6]

> FN6. Plaintiff Anderson acknowledged that on one occasion she applied for and received a transfer to a desired position.

Ms. McBride testified that she applied for several clerk positions outside of the physical therapy department and never received an interview. She cannot recall which positions she applied for. She provides no evidence that any such position was filled with a person of comparable or lesser qualifications. An employer is not required to interview every applicant for a position. A mere failure to receive an interview is not sufficient to establish a prima facie case of intentional discrimination.

Ms. Martin states she applied for several patient registrar positions and only received one interview. Ms. Martin never asked why she did not get the position. She was simply told it was given to somebody else. Ms. Martin provides no evidence that the position was given to someone with comparable or lesser qualifications than hers. Indeed, she acknowledges that one position was filled by someone with a degree that Ms. Martin did not have.

That plaintiffs may have been qualified for positions within HUP filled by others, even others less qualified, would not satisfy the second requirement of a prima facie case that plaintiffs applied for and were qualified for particular positions. In response to defendants' argument that plaintiffs have provided no evidence they applied for other positions, plaintiffs state only that defendant HUP failed to provide notice of new positions. It appears, however, from Ms. McBride's testimony that she went to Human Resources "all the time" to see what positions were available that HUP did not withhold or obscure such information.

Plaintiffs assert that there is rarely direct evidence of discriminatory motive. This may be true,

however, plaintiffs have failed to produce any evidence, direct or indirect, to demonstrate that defendants intentionally discriminated against them on the basis of race. [FN7] Indeed, there is no competent evidence of record that Ms. Malloy or Ms. Thompson had authority to place any plaintiff in any position for which she did apply or were involved in the pertinent decisionmaking.

> FN7. One cannot reasonably or objectively find in context that Ms. Malloy's observation about black leather coats or characterization of a persistent complaining patient as "crazy" evince racial animus.

*5 Conclusory assertions of discrimination are insufficient to raise an issue of material fact. See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985). A prima facie case of discrimination cannot be established by conjecture or speculation. See Bray v. L.D. Caulk Dentsply Int'l, 2000 WL 1800527, *5 (D.Del. July 31, 2000).

B. § 1981 Hostile Work Environment Claim

To sustain a racially hostile work environment claim, a plaintiff must prove that she suffered intentional discrimination because of her race; the discrimination was pervasive and regular; the discrimination detrimentally affected her; the discrimination would detrimentally affect a reasonable person in the same position; and, respondeat superior liability. See Andrews, 895 F.2d at 1482; Lanzot v. Sacred Heart Healthcare Sys., 2001 WL 872685, *4 (E.D.Pa. July 5, 2001).

An employer is subject to liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate, or successively higher, authority over the employee. See Faragher v. City of Boca Raton, 524 U.S. 775, 808, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). When no tangible adverse employment action is taken, a defending employer may raise an affirmative defense that it exercised reasonable care to prevent and correct promptly any harassing behavior and that the plaintiff employee unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer or otherwise to avoid harm. See Id.

A hostile work environment exists when a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2001 WL 1132404, *5 (E.D.Pa.))

workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). See also Kohn v. Lemmon Co., 1998 WL 67540, *4 (E.D.Pa. Feb. 19, 1998). Conduct that is not severe or pervasive enough to create an objectively hostile or abusive environment is not actionable. See Harris, 510 U.S. at 21; Kohn, 1998 WL 67540, *4. Incidents of harassment are pervasive if they occur in concert or with regularity. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir.1990).

In determining whether a work environment is hostile or abusive, the pertinent factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; [and] whether it unreasonably interferes with an employee's work performance." Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir.2001) (quoting Harris, 510 U.S. at 23).

*6 Defendants assert that the security camera was installed as a safety measure for the protection of the front desk employees and to record anyone who harmed the employees to aid the police in apprehending the assailant. Plaintiffs have produced no evidence to show that the placement of the security cameras in the front lobby was for any reason other than security.

The only evidence proffered that the thermostat in the front waiting area was pre-set and locked because of plaintiffs' race is Ms. McBride's testimony that "most black people, by nature, are cold most of the time and most Caucasian people that I know are more warm-blooded" and thus she was were more comfortable with a warm temperature. Plaintiffs have presented no competent evidence to refute defendants' assertion that the thermostat was locked to control sharp fluctuations in temperature which had resulted when persons in the waiting area variously complained that it was too warm or too cold. Plaintiffs Anderson and McBride acknowledged that at plaintiffs' request, the thermostat would be unlocked by Bob LaBelle to adjust the temperature. Moreover, there is no evidence that the thermostat was set at an unusually

low temperature, and no evidence to support a conclusion that the thermostat was locked as an act of intentional racial discrimination.

The only evidence proffered that plaintiffs' lunch hours were staggered in half hour increments for racial reasons is Ms. McBride's statement that she perceived this as a reversion "to slavery days" when "they never wanted African Americans to talk to each other because that means divide us and you can conquer us." It is uncontroverted that plaintiffs were the only employees who covered the reception area. Ms. Malloy avers that plaintiffs were unable to all take lunch together because someone always had to be available to answer the phones and interact with the patients as they entered the facility. Plaintiffs have presented no competent evidence to show that this was not the true reason or otherwise that lunch schedules were racially motivated. That other employees with different responsibilities may have been able to take lunch together is irrelevant.

There is no competent evidence that plaintiffs were not permitted to leave their personal belongings at the front desk or were required to keep their pocketbooks and coats in a locker for reasons of race. That professional staff in the back area may have put purses in their desks or placed coats on hooks in the professional offices for lab coats is simply not probative in connection with rules regarding security and appearances at the front desk and reception area.

Plaintiffs have presented no competent evidence from which one could find they did not receive voice mail on their telephones for reasons of race. They have presented no competent evidence to refute Ms. Malloy's testimony that there was no voice mail during hours of operation on the telephone lines covered by plaintiffs because all calls had to be handled as they came in and that the professional staff in the back offices had voice mail because there was no one to answer their direct lines when they were away from their desks.

*7 Plaintiffs also suggest that racism may be inferred from their having to sit together and being physically separated from the other white employees in the OT/PT Department. This is fatuous. Plaintiffs performed reception functions at the front desk while the physical therapists and others in the department worked with the patients in the back

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



area. [FN8]

> FN8. At least one of the physical therapists, Nicole Holder, was African American.

A reasonable factfinder could not conclude from the competent evidence of record that plaintiffs were subjected to intentional racial discrimination, let alone on a regular and pervasive basis. See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir.1996). Even assuming the acts complained of were racially motivated, they clearly did not 0reate an abusive working environment. See Weston, 215 F.3d at 426. Placing a security camera at the reception area of a busy urban hospital, pre-setting a thermostat, staggering lunch hours of those assigned to the reception area and requiring that personal belongings be secured were not remotely threatening, humiliating or disruptive to plaintiffs' work performance and would not detrimentally affect any reasonable person in the same position.

C. § 1981 Retaliation Claim

A retaliation claim is also cognizable under § 1981. See Kohn, 1998 WL 67540, *5. To make out a prima facie case of retaliation, a plaintiff must show that she engaged in protected conduct; the employer took adverse action against her; and, there was a causal link between the protected conduct and the adverse action. See Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir.1997); Twyman v. Dilks, 2000 WL 1277917, *8 (E.D.Pa. Sept. 8, 2000).

Plaintiffs claim that after complaining to HUP's Human Resources Department and Ms. Thompson about poor treatment by Ms. Malloy, they did not receive promotions or transfers from Ms. Thompson and were denied retroactive pay by Ms. Malloy for promotions they did receive from Clerk II to Clerk III.

Protected activity includes formal charges and informal complaints of unlawful discrimination to management. See Abramson v. William Patterson College, 260 F.3d 265, 287-88 (3d Cir.2001) EEOC v. L.B. Foster Co., 123 F.3d 746, 754 (3d Cir.1997); Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir.1990) (same). Expressions of dissatisfaction and grievances about working conditions, however, are not protected

activity. See Walden v. Georgia-Pacific Corp., 125 F.3d 506, 513 n. 4 (3d Cir.1997); Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir.1995). There is no competent evidence of record that any plaintiff related a complaint to anyone at HUP to racial discrimination. The closest thing to such evidence is the testimony of Ms. McBride, who said "I don't recall" if I complained of racial discrimination, that she assumes she must "have said something about race" to Diane Allen because "I know [her] husband was black." This kind of assumption is not evidence.

Further, even if there were competent evidence of protected activity, there has been no showing of a causal link between plaintiffs' complaints and the allegedly retaliatory acts.

*8 Plaintiffs provide no dates and there is otherwise no evidence of when they made complaints to Human Resources. In the absence of a pertinent time line, one cannot reasonably infer that Ms. Thompson declined to promote or transfer plaintiffs because of any complaints to Human Resources. [FN9] There is no competent evidence that Ms. Thompson had authority to promote or transfer plaintiffs at the pertinent time. Ms. Thompson was not connected to the OT/PT Department after 1995.

> FN9. Plaintiffs incorrectly assert that Ms. Thompson was the Director of Human Resources. It is uncontroverted on the evidence that Ms. Thompson never held this position or any other position with Human Resources.

There is no competent evidence of record that Ms. Malloy promised or could have promoted the retroactive pay sought by plaintiffs. Moreover, there is no competent evidence of record that Ms. Malloy ever knew plaintiffs had complained about her. When plaintiffs complained to Ms. Malloy about their classification and salary, she approved a reclassification to Clerk III. It was Ms. Malloy's "understanding and belief that [plaintiffs] received retroactive pay increases" as a result of the reclassification. There is no evidence that she could ensure such pay or interfered with any plaintiff receiving it.

Plaintiffs state that when they complained to Ms. Malloy that they had not received retroactive pay,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2001 WL 1132404, *8 (E.D.Pa.))

she said she was too busy to address the matter. There is no evidence that Ms. Malloy was not in fact busy with more pressing matters at the time and no evidence that plaintiffs were prevented from pursuing the retroactive pay issue directly with Human Resources or the Payroll Office.

D. § 1985(3) Conspiracy Claim

To sustain a claim of conspiracy under § 1985(3), a plaintiff must prove the existence of a conspiracy, motivated by racial discriminatory animus, for the purpose of depriving a person or class of persons of the equal protection of the law or equal privileges and immunities under the laws, and an act in furtherance of the conspiracy whereby a person is injured. See United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott, 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). See also Jackson, 2000 WL 562741, *5; Armstrong v. School Dist., 597 F.Supp. 1309, 1313 (E.D.Pa.1984).

Plaintiffs have failed to provide competent evidence from which one could reasonably find that Ms. Malloy or Ms. Thompson engaged in any racially discriminatory acts, let alone that they conspired to do so. There is no competent evidence to show an agreement or that the conduct complained of involved concerted action by these defendants. [FN10]

FN10. Although not argued by defendants, it appears that this claim may suffer from an even more fundamental deficiency. There is no showing or suggestion that HUP is not a private entity or that Ms. Thompson or Ms. Malloy were state actors. See, e.g., Wells v. Thomas, 569 F.Supp. 426, 428 n. 1 (E.D.Pa.1983). To sustain a § 1985(3) deprivation claim for a private conspiracy, a plaintiff must show that the conspirators intended to deprive her of a right protected by the Constitution against private infringement. See Brown v. Philip Morris, Inc., 250 F.3d 789, 805 (3d Cir.2001); Libertad v. Welch, 53 F.3d 428, 446-47 (1st Cir.1995); Welch v. Board of Dir. of Wildwood Golf Club, 877 F.Supp. 955, 958-59 (W.D.Pa.1995). The Supreme Court has recognized only two such rights, the right against involuntary servitude and the right to interstate travel. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 278, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).

V. CONCLUSION

If there is evidence to support plaintiffs' claims, they have failed to adduce or produce it. Subjective perceptions, contrived or strained interpretations, suppositions and sheer speculation are not competent evidence.

One cannot reasonably conclude from the record presented to the court that any plaintiff applied for a position which was given to someone else with comparable or lesser qualifications. One cannot reasonably conclude from the record that the acts which purportedly constitute a hostile work environment were abusive, would detrimentally affect a reasonable person similarly situated or resulted from intentional racial discrimination. One cannot reasonably find that any plaintiff was a victim of retaliation. One cannot reasonably find from the record that Ms. Thompson or Ms. Malloy engaged in any act of intentional race discrimination, or that they entered into a conspiracy to deprive any plaintiff of a secured right.

Defendants are entitled to summary judgment. Their motion will be granted. An appropriate order will be entered.

ORDER

*9 AND NOW, this day of September, 2001, upon consideration of defendants' Motion for Summary Judgment (Doc. # 12) and plaintiffs' response thereto, consistent with the accompanying memorandum, IT IS HEREBY ORDERED that said Motion is GRANTED and accordingly, JUDGMENT is ENTERED in the above action for the defendants.

2001 WL 1132404 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

