**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KENNETH COLE,<br>BRIGITTE BROWN, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 05-270 (GMS) |
| DELAWARE TECHNICAL AND<br>COMMUNITY COLLEGE, | ) | **FILED UNDER SEAL** |
| Defendant. | ) | |

**DEFENDANT'S TRIAL BRIEF**

David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III (#4284)
jmcmackin@morrisjames.com
MORRIS JAMES, LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900/5849
Attorneys for Defendant

Dated: August 31, 2007

# TABLE OF CONTENTS


**PAGE**

TABLE OF AUTHORITIES ..... iii

NATURE OF THE CASE ..... 1

CONTESTED FACTS THE COLLEGE EXPECTS THE EVIDENCE WILL ESTABLISH ..... 1

THE COLLEGE'S THEORY OF DEFENSE BASED ON THE FACTS IN THE CASE ..... 5

1. The Relocation Of Plaintiffs' Office Space Is Not Adverse Employment Action Because It Made Plaintiffs Unhappy, And At Most Presented An Inconvenience ..... 5

2. The Relocation Of Plaintiffs' Office Space Cannot Constitute Discrimination Because The Plan To Relocate UBMS Predated The Plaintiff's Employment, And Cannot Constitute Retaliation For Protected Activity Given The Fact The Decision To Relocate Preceded The Protected Activity ..... 6

3. The Plaintiffs Were Not Discriminated Against On The Basis Of Their Race When Their Office Was Relocated ..... 7

4. The College Had A Good Faith Business Reason To Relocate UBMS To Office 408 ..... 7

5. Plaintiffs' Complaints The Office Relocation Was "Unfair" Was Not Protected Activity ..... 8

6. Insisting Plaintiffs Adhere To College Policies Was Not Adverse Employment Action ..... 8

7. The College Did Not Discriminate Or Retaliate Against Cole By Requesting Him To Document His Reduced Working Schedule ..... 8

8. A Half-Hour Switch In Working Hours Is Not Adverse Employment Action ..... 9

9. Alleged Micromanagement Of UBMS Concerned Not Plaintiffs ..... 9

10. The College Had Good Faith Business Reasons To Require Compliance With College Policy .......... 9

11. The Failure To Assign Cole The Additional Duties That Resulted In Morris' Reclassification Was Not Discriminatory Or Retaliatory Given The Fact He Was Part-Time And Never Expressed An Interest In A Full-Time Position .......... 9

12. Plaintiffs Who Do Not Seek Transfers Or Promotions Cannot Claim The Failure To Be Awarded Such Transfers Or Promotions Constitutes Race Discrimination Or Retaliation .......... 10

13. When A Promotion Sought By A Plaintiff Is Awarded To A Member Of The Protected Class, The Absence Of Any Evidence Of A Discriminatory Or Retaliatory Motive Dictates The Conclusion Plaintiff Fails To Establish An Inference Of Discrimination .......... 10

14. The Alleged Retaliation Suffered By Brown Concerning The Program Manager Position Was Too Attenuated From Her Protected Activity .......... 11

15. In Both The Case Of Coleman And Morris, The College Had A Good Faith Business Reason To Reclassify Morris And Promote Coleman .......... 12

16. Certain Claims Are Barred By The Statute Of Limitations .......... 12

17. The Plaintiffs Failed To Comply With Jurisdictional And Procedural Prerequisites Under Title VII To Bring This Action .......... 13

THE COLLEGE'S THEORY OF DAMAGES IN THE EVENT LIABILITY IS ESTABLISHED .......... 14

THE DEFENDANT'S THEORY OF MOTIONS FOR DIRECTED VERDICT .......... 14

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Anderson v. McIntosh Inn*,
295 F. Supp.2d 412 (D. Del. 2003)........................................9

*Annett v. Univ of Kansas*,
82 F. Supp. 2d 1230 (D. Kan. 2000)........................................7

*Bickerstaff v. Vassar College*,
354 F. Supp. 2d 276, n. 6 (S.D. NY 2004),
*aff'd* 160 Fed. Appx. 61 (2nd Cir. 2005)........................................6

*Bray v. Marriott Hotels*,
110 F.3d 986 (3rd Cir. 1997)........................................7

*Buffa v. NJ Dept. of Judiciary*,
56 Fed. Appx. 571 (3rd Cir. 2003)........................................8, 9

*Bullock v. Children's Hosp. of Phila.*,
71 F. Supp. 2d 482 (E.D. Pa. 1999)........................................11

*Clark v. Kraft Foods, Inc.*,
18 F.3d 1278, 1279-180 (5th Cir. 1994)........................................18

*Clary v. Marley Cooling Tower Company*,
1997 WL 150048 (D. Kan. March 12, 1997)........................................6

*Conrad v. Amp., Inc.*,
20 FEP 905 (M.D.N.C. 1979)........................................13

*Daniel v. Skudder Kemper Investments, Inc.*,
2002 WL 1160934 (N.D. Ill. May 23, 2002)........................................5

*Daves v. Payless Cashways, Inc.*,
661 F.2d 1022 (5th Cir. 1981)........................................10

*Duffy v. Southeastern PA Transp. Co.*,
67 FEP 1797, 1797 (E.D. PA 1995)........................................14

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)........................................8, 9

*Farrell v. Planters Lifesavers Co.*,
206 F.3d 271 (3d Cir. 2000)....................................................................................6

*Fuentes v. Perskie*,
32 F.3d 759 (3d Cir. 1994)....................................................................................11

*Gonzalez v. National R.R. Passenger Corp.*,
49 FEP 1135, 1135 (E.D.. PA 1989)....................................................................14

*Goosby v. Johnson and Johnson Medical, Inc.*,
228 F.3d 313 (3rd Cir. 2000) ..............................................................................12

*Green v. Edward J. Bettinger Co.*,
608 F. Supp. 35 (E.D. PA 1984),
*aff'd* 791 F.2d 917 (3d Cir. 1986).......................................................................10

*Haimovitz v. U.S. Dept. of Justice*,
720 F. Supp. 516 (W.D. PA 1989),
*aff'd* 902 F.2d 1560 (3d Cir. 1990).......................................................................5

*Hamlett v. Gonzales*,
2005 WL 1500819 (N.D. Tex, June 15, 2005) .......................................................6

*Hampton v. Tokai Fin. Servs.*,
2001 WL 881443 (E.D. PA. May 7, 2001)...........................................................11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...............................................................................................7

*McBride v. Hospital of the University of Pennsylvania*,
2001 WL 1132404 (E.D.PA. September 21, 2001)...............................................8

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)........................................................................... 5, 7, 9, 11

*Nielsen v. Acorn Corrugated Box Co.*,
2002 WL 1941365 (N.D. Ill. Aug. 21, 2002) ....................................................6, 9

*Obi v. Anne Arundel County, MD*,
142 F. Supp. 2d 655 (D. MD 2001),
*aff'd* 28 Fed. Appx. 333 (4th Cir. 2002) ..............................................................6

*Parker v. Univ. of Penn.*,
128 Fed.Appx. 944 (3rd Cir. 2005)......................................................................10

*Pivirotto v. Innovative Sys., Inc.*,
191 F.3d 344 (3d Cir. 1999) ..... 11

*Robinson v. BT Financial Corp.*,
2003 WL 288402 (W.D. Pa. 2003) ..... 7

*Robinson v. City of Pittsburgh*,
120 F.3d 1286 (3rd Cir. 1997) ..... 5

*Sanchez v. Standard Brands, Inc.*,
431 F.2d 455 (5th Cir. 1970) ..... 14

*Sandom v. Travelers Mortgage Services*,
752 F. Supp. 1240 (D. NJ 1990) ..... 14

*Wanamaker v. Columbian Rope Company*,
108 F.3d 462 (2nd Cir. 1997) ..... 7

*Weston v. Pennsylvania*,
251 F.3d 420 (3d Cir. 2001) ..... 6, 12

*Wilson v. Kansas Department of Administration*,
45 FEP 1481, 1481 (D. Kan. 1986) ..... 13

## NATURE OF THE CASE

Plaintiffs' claim the assignment of office space rises to the level of a Title VII violation. Plaintiffs also allege retaliation and racial discrimination in connection with the failure to promote or transfer to positions they did not, with one exception, apply for; and requiring the Plaintiffs comply with the policies applicable to other employees. On May 5, 2005, Plaintiff Brigitte L. Brown ("Brown") and Plaintiff Kenneth Cole ("Cole") filed Complaints.

## CONTESTED FACTS THE COLLEGE EXPECTS THE EVIDENCE WILL ESTABLISH

**Paul Morris' "Promotion"**

On July 8, 2002, a memo was issued reclassifying Paul Morris ("Morris") from Program Manager to Special Programs Director. This memo mistakenly announced Morris was "promoted" rather than reclassified. Cole filed a grievance alleging a violation of Delaware Technical and Community College (the "College") policy because the position was not posted. Morris was not "promoted." He was assigned additional duties that resulted in the reclassification of the position he held at the time. There was no new position to post. Thus, the failure to post did not violate College policy.

The College had no reason to suspect Cole wanted the additional duties assigned to Morris. Cole was a part-time employee who worked at the College for approximately three years and never applied for a full-time position, or expressed a desire to work full-time. Moreover, Cole could not have worked the extra hours that would have been required to perform the duties assigned to Morris that resulted in Morris' reclassification. Cole signed a contract obligating him to work between 15 and 29 hours per week. Cole was a part-time employee because he owned and operated a business. Shortly after Morris was reclassified to Special Program Director, Cole was unable to work more than 20 hours per week upon doctor's orders.

Furthermore, Cole was not qualified for Morris' position as it was a significant step up in responsibility. Morris was the employee most qualified to perform the additional assigned duties. In short, Morris' reclassification had "nothing to do" with Cole.

**The Office Relocation**

The Plaintiffs allege they were assigned to an office ("Office 408") because they are African-American. At worst, the relocation was merely an inconvenience and does not rise to the level of an adverse employment action.

At least as early as 1998, before the Plaintiffs starting working at the College, it was a goal of the College to locate the Upward Bound Math/Science ("UBMS") department in a central office. The office relocation was approved and announced prior to Plaintiffs' protected activity. The UBMS department was the last of the TRIO programs to have its staff consolidated into a central office. The other TRIO staff (which included both Caucasian and non-Caucasian employees) were housed in office space similar to Room 408.

On August 14, 2002, the UBMS staff sent an e-mail to Zawislak claiming the relocation would impact "employee relations, employee morale, and employee productivity." The Plaintiffs contacted the Fire Marshall, who confirmed the occupancy of Room 408 by the UBMS staff presented no safety issues. Brown worked in Office 408 until she resigned on June 27, 2005. Cole continued to work in Office 408 with a full-time secretary and Brown's replacement – neither of whom are parties to this case, and both of whom are African-American. Cole now works alone in Office 408 with an African-American secretary.

The equipment available to the UBMS department is equivalent to the equipment available to other TRIO departments. Each member of the UBMS staff in Office 408 had their own furniture, desk, chair, computer, and phone. The UBMS department brought new furniture

to Office 408. They have partitions. When previously offered partitions, Plaintiffs refused them. The office is lit adequately, including direct sunlight. The office is accessible by two entry doors. The UBMS department is located in a private office as opposed to a hallway. The UBMS staff members had a secretary both before and after the relocation to Office 408. There was no loss of salary, benefits, title or responsibilities as a result of the office relocation.

Before being relocated, UBMS staff was in small, non-contiguous "semi-private" offices. The College was and is experiencing growing pains, and struggling to find enough space to accommodate all of its programs. Before the UBMS department was relocated to Office 408, it was occupied by two full-time employees and a secretary. Once the UBMS department was relocated to Office 408, it was occupied by one full-time employee, one part-time employee, and one secretary. Therefore, on a typical day, Office 408 is less crowded than it was before the UBMS relocation.

**"Micro-Management"**

Plaintiffs allege the College micro-managed the UBMS department, and the alleged micro-management amounts to racial discrimination. For legitimate business reasons, the College scrutinized , the UBMS Program Manager. ineffectiveness as a manager surfaced in September, 2002. In order to provide accountability and ensure compliance with the Federal education grant funding the UBMS department, the College engaged in closer oversight of the UBMS department. This oversight revealed leave from work was being granted without adequate documentation, travel request forms were not being completed as required, and employees were working hours other than the College's required working hours (i.e. from 8:30 a.m. through 4:30 p.m.)[1]. Due to employee

[1] Certain exceptions are made with supporting documentation or to meet College needs.

confidentiality, Plaintiffs were unaware was under scrutiny. Administrators at the College concluded Brown was to work the hours of 8:30 a.m. through 4:30 p.m. because her request for an alternate schedule was for personal reasons. The College maintained its request that Cole provide medical documentation to support his contention he was unable to work regular College hours.

**Promotions and Transfers**

Brown and Cole allege they were denied promotions and transfers on the basis of race and retaliation. Cole never requested a promotion or transfer. Brown never requested a transfer. Brown applied for the position of Program Manager in February 2004.

The Program Manager position was posted from March 15, 2004 through March 29, 2004. Brown applied. The final candidate was African-American, with a master's degree and prior supervisory experience. This candidate did not accept the position. The Program Manager position was posted from June 14, 2004 through June 28, 2004. Brown applied and received an interview, but was not selected. The final candidate, an African-American, was scheduled for a final interview, but canceled the interview. The Program Manager position was posted a third time from September 4, 2004 through September 20, 2004. Brown did not apply. Andrea Coleman, an African-American, is more qualified than Brown.

**Protected Activity**

On August 12, 2002, UBMS staff was informed of the relocation to Office 408. Cole did not mention race, file a grievance, or otherwise engage in protected activity until September 5, 2002, when he filed his grievance concerning the assignment of additional duties to Morris. The UBMS department was relocated to Office 408 on October 8, 2002. Brown did not engage in

protected activity until November 8, 2002. Thus, the relocation decision preceded any protected activity.

## THE COLLEGE'S THEORY OF DEFENSE BASED ON THE FACTS IN THE CASE

### 1. The Relocation Of Plaintiffs' Office Space Is Not Adverse Employment Action Because It Made Plaintiffs Unhappy, And At Most Presented An Inconvenience

Plaintiffs bear the burden of establishing the relocation of the UBMS office space to Office 408 was an adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Adverse employment action is "conduct other than discharge or refusal to rehire . . . [which] alters the employee's 'compensation, terms, conditions, or privileges of employment,' deprives him or her of 'employment opportunities,' or 'adversely affect[s] his [or her] status as an employee.'" *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir. 1997). Whether an adverse employment action occurred is decided using an objective standard. *Haimovitz v. U.S. Dept. of Justice*, 720 F. Supp. 516, 526-527 (W.D. PA 1989), aff'd 902 F.2d 1560 (3rd Cir. 1990). Application of an objective standard leads to the inescapable conclusion the office move was not an adverse employment action.

Courts repeatedly reject claims that inconvenient relocations constitute adverse employment action. *See Haimovitz,*, 720 F. Supp. at 526-527 (noting that the destination was "no Garden of Eden," but finding that a *prima facie* case of age discrimination was not established when the plaintiff set forth no objective evidence that a relocation to another state was an adverse employment action other than his own "subjective and conclusory antipathy toward a reassignment.").[2]

---

[2] *See also Daniel v. Skudder Kemper Investments, Inc.*, 2002 WL 1160934 at *6 (N.D. Ill. May 23, 2002) ("Daniel's seat reassignment may have made her unhappy because she no longer had a window seat, but it certainly did not rise to the level of an adverse employment action.");

**2. The Relocation Of Plaintiffs' Office Space Cannot Constitute Discrimination Because The Plan To Relocate UBMS Predated The Plaintiff's Employment, And Cannot Constitute Retaliation For Protected Activity Given The Fact The Decision To Relocate Preceded The Protected Activity**

Plaintiffs cannot establish an inference of discrimination regarding the relocation to Office 408 because the undisputed record makes clear the relocation was contemplated since, at least, 1998, and before the Plaintiffs starting working at the College.

The office relocation was approved and announced prior to Plaintiffs' protected activity. To establish a *prima facie* case of retaliation, Plaintiffs must show: "(1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action." *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000)). On August 12, 2002, UBMS staff was informed of the relocation to Office 408. Cole did not mention race, file a grievance, or otherwise engage in protected activity until September 5, 2002. Brown did not engage in protected activity until November 8, 2002.

---

*Bickerstaff v. Vassar College*, 354 F. Supp. 2d 276, n. 6 (S.D. NY 2004), *aff'd* 160 Fed. Appx. 61 (2nd Cir. 2005) ("in order to be 'materially adverse,' a change in working conditions must be more disruptive than a mere inconvenience."); *Nielsen v. Acorn Corrugated Box Co.*, 2002 WL 1941365 at *6 (N.D. Ill. 2002) (finding for purposes of summary judgment that a move to a less pleasing workspace did not amount to adverse employment action even though the plaintiff was inconvenienced and unhappy); *Obi v. Anne Arundel County, MD*, 142 F. Supp.2d 655, 674 (D. MD 2001), aff'd 28 Fed. Appx. 333 (4th Cir. 2002) (granting defendant summary judgment where plaintiff alleged, *inter alia*, that an office relocation caused him inconvenience and to feel cramped); *Hamlett v. Gonzales*, 2005 WL 1500819 at *15 (N.D. Tex. 2005) ("occupying less desirable office space does not constitute an adverse employment action" even if it is inconvenient and undesirable); *Clary v. Marley Cooling Tower*, 1997 WL 150048 at *18 (D. Kan. 1997) ("The fact that plaintiff's cubicle for three or four months may have been darker, or located outside the central path of traffic, is a trivial inconvenience that does not warrant a trial.").

**3. The Plaintiffs Were Not Discriminated Against On The Basis Of Their Race When Their Office Was Relocated**

Plaintiffs initially stated the relocation of the UBMS department to Office 408 "would effect employee relations, morale and productivity" and would create difficulties - not that it was motivated by race. Alleging the office relocation was inefficient, even if true, is irrelevant. A "plaintiff cannot prevail under Title VII merely by establishing that the employer made a decision that was wrong or mistaken." *Bray v. Marriott Hotels*, 110 F.3d 986, 990 (3rd Cir. 1997). It is within the purview of an employer's discretion to locate employees as an employer chooses. *See Annett v. Univ of Kansas,* 82 F. Supp. 2d 1230, 1244 (D. Kan. 2000).[3] Instead, "[t]he realities of the workplace...dictate that employees do not always have the option to work in the location they desire." *Robinson v. BT Financial Corp.*, 2003 WL 288402 at *6 (W.D. Pa. 2003) (citation omitted).

Plaintiffs contend the UBMS department was relocated due to a conflict between an African-American employee and a Caucasian supervisor in another program. This allegation, even if true, does not help the Plaintiffs meet their burden. Title VII standing is established by setting forth specific facts which indicate the **party** was injured as a result of discrimination. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

**4. The College Had A Good Faith Business Reason To Relocate UBMS To Office 408**

If the Plaintiffs establish a *prima facie* case, the burden of production then shifts to the College to demonstrate a legitimate, non-discriminatory reason for the employment action. *McDonnell Douglas*, 411 U.S. at 802. The College had a good faith business reason to relocate

---

[3] In fact, an employer can take from an employee both an office and a telephone and still not adversely affect the employee for purposes of Title VII. *See Wanamaker v. Columbian Rope Company*, 108 F.3d 462, 466-467 (2nd Cir. 1997) (decided under the ADEA).

UBMS to Office 408 because it was an adequate workspace, the College was experiencing growing pains which affected most employees, and the relocation put UBMS in a defined workspace.

**5. Plaintiffs' Complaints The Office Relocation Was "Unfair" Was Not Protected Activity**

Plaintiffs' complaints about the relocation of the UBMS department workspace being "unfair" are insufficient to amount to protected activity. *See McBride v. Hospital of the University of Pennsylvania*, 2001 WL 1132404 at *7 (E.D.PA. 2001). In all events, the office relocation decision was made and announced prior to the "unfair" complaint.

**6. Insisting Plaintiffs Adhere To College Policies Was Not Adverse Employment Action**

In order to establish the alleged micro-management was an act of racial discrimination, Plaintiffs bear the burden of establishing the micro-management was an adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. Insisting employees follow procedures and be accountable is not an adverse employment action. *See Buffa v. NJ Dept. of Judiciary*, 56 Fed. Appx. 571, 576 (3d Cir. 2003). Furthermore, requiring employees to document their whereabouts and be accountable for their job duties is a mere inconvenience that is not actionable for purposes of Title VII. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

**7. The College Did Not Discriminate Or Retaliate Against Cole By Requesting Him To Document His Reduced Working Schedule**

Cole alleges his hours were changed from 8:00 a.m. to 2:00 p.m., to 8:30 a.m. to 2:30 p.m. as an act of retaliation on or about September 19, 2002. All employees of the College were

required to start work at 8:30 a.m.[4] The College repeatedly requested that Cole provide medical documentation to support his desire to work an alternate schedule. Cole refused to do so. Asking him to work the hours required of all College employees is not an act of retaliation or discrimination. *Anderson v. McIntosh Inn*, 295 F.Supp.2d 412, 418 (D.Del., 2003).

**8. A Half-Hour Switch In Working Hours Is Not Adverse Employment Action**

A one-half hour change in Cole's hours is not an adverse employment action. *See Nielsen*, 2002 WL 1941365 at *5.

**9. Alleged Micromanagement Of UBMS Concerned Henderson, Not Plaintiffs**

The "micromanagement" of the UBMS department was focused on remediation of failure to insist UBMS staff adhere to College policy.

**10. The College Had Good Faith Business Reasons To Require Compliance With College Policy**

The College had good faith business reasons to require compliance with College policy with respect to hours, travel requests, and other alleged "micro-managing." An employer who demands its employees follow procedures and be accountable is not imposing an adverse employment action. *See Buffa*, 56 Fed. Appx. at 576. Furthermore, requiring employees to document their whereabouts and be accountable for their job duties is a mere inconvenience that is not actionable for purposes of Title VII. *See Faragher*, 524 U.S. at 788.

**11. The Failure To Assign Cole The Additional Duties That Resulted in Morris' Reclassification Was Not Discriminatory Or Retaliatory Given The Fact He Was Part-Time And Never Expressed An Interest In A Full-Time Position**

Cole bears the burden of establishing the circumstances surrounding the reclassification give rise to an inference of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802. A Title VII plaintiff must have applied for a job, or generally made his interest in a position known

[4] Certain exceptions are made with supporting documentation or to meet College needs.

to his employer, before knowledge of an employee's desire to be hired for a position can be imputed to the employer. *See Parker v. Univ. of Penn.*, 128 Fed.Appx. 944, 946 (3rd Cir. 2005). Cole never applied for a full-time job, never requested a promotion and never expressed an interest in another position. Even as recently as his deposition, Cole would not commit to an interest in the Special Programs Director position. Brown never expressed an interest in the Special Programs Director position. As a consequence, Plaintiffs fail to set forth their *prima facie* case because the College had no reason to know they were available for the position. *See Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1026 (5th Cir. 1981).

Plaintiffs must also show the position held by Morris was a position for which the College was seeking applicants. *Green v. Edward J. Bettinger Co.*, 608 F. Supp 35, 42 (E.D. PA 1984), *aff'd* 791 F.2d 917 (3d Cir. 1986). Plaintiffs cannot meet this burden because there was no open position for which they could have applied. *See Daves,* 661 F.2d at 1026.

**12. Plaintiffs Who Do Not Seek Transfers Or Promotions Cannot Claim The Failure To Be Awarded Such Transfers Or Promotions Constitutes Race Discrimination Or Retaliation**

Cole and Brown allege retaliation in the form of being denied transfers. Neither Cole, nor Brown, requested a transfer. Moreover, Cole could not have worked hours additional to those he was already working due to his desire to work part-time, as well as medical issues.

**13. When A Promotion Sought By A Plaintiff Is Awarded To A Member Of The Protected Class, The Absence Of Any Evidence Of A Discriminatory Or Retaliatory Motive Dictates The Conclusion Plaintiff Fails To Establish An Inference Of Discrimination**

To establish a prima facie case on her failure to promote claim, Brown must show that "(1) she is a member of a protected class, (2) that she was qualified for the position in question, (3) that she suffered an adverse employment decision, and (4) that the circumstances give rise to an inference of unlawful discrimination." *Hampton v. Tokai Fin. Servs.*, 2001 WL 881443 at *2

(E.D. PA. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972)). The "circumstances" surrounding Brown not receiving the Program Manager position do not give rise to such an inference.

Circumstances that give rise to an inference of discrimination include, "similarly situated individuals who are not in the protected class [who] were treated more favorably than [the plaintiff]." *Id.* A plaintiff generally satisfies this prong of her *prima facie* burden with evidence that she was replaced by an individual outside of her protected class. *See Bullock v. Children's Hosp. of Phila.*, 71 F. Supp. 2d 482, 487 (E.D. Pa. 1999). Although the Third Circuit held that replacement by an individual outside of the plaintiff's protected class is not required to establish a *prima facie* case of discrimination, *see Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 354 (3d Cir. 1999), the absence of such evidence is meaningful in the analysis of the circumstances that the plaintiff claims give rise to an inference of discrimination. *See id.* (recognizing the possible "evidentiary force" of a replacement from within a plaintiff's protected class and explaining that "it would be prudent for a plaintiff in this situation to counter (or explain) such evidence"). Here, a member of Brown's protected class received the promotion, and Brown has offered no counter, or explains such evidence.

Even to the extent Brown can establish a *prima facie* case of race discrimination, she will not be able to produce sufficient evidence to "allow a factfinder reasonably to infer that each of . . . the employer's proffered non-discriminatory reasons" was a pretext. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

**14. The Alleged Retaliation Suffered By Brown Concerning The Program Manager Position Was Too Attenuated From Her Protected Activity**

Brown cannot establish not offering her the vacant Program Manager position or awarding this position to another African-American employee constituted retaliation. Brown

must establish that "a causal link exists between the protected activity and the adverse action." *Weston*, 251 F.3d at 430. Brown's protected activity occurred in November 2002. The allegedly retaliatory act occurred fifteen months later. A fifteen month period is too attenuated for purposes of establishing that adverse action was linked to protected activity. *See, Goosby v. Johnson and Johnson Medical, Inc.*, 228 F.3d 313, 323 (3d Cir. 2000). Furthermore, Brown presents no evidence of pretext.

**15. In Both The Case Of Coleman And Morris, The College Had A Good Faith Business Reason To Reclassify Morris And Promote Coleman**

In each case, the person who received the position, Coleman and Morris respectively, was the most qualified employee who accepted the position.

**16. Certain Claims Are Barred By The Statute Of Limitations**

On October 15, 2002, Cole filed a charge of discrimination concerning Morris' reclassification and the office relocation. On November 1, 2002, Brown filed a charge of discrimination concerning the relocation, the scrutiny of the UBMS department, and that she was denied promotions and scheduling.

Pursuant to §706 of Title VII, a charge of discrimination must be filed within 180 days after the alleged unlawful employment practice, or within 300 days if the aggrieved party institutes proceedings with the State or local agency. Brown never filed a charge of discrimination concerning the Program Manager position or transfers. The Programs Manager position was awarded in 2004, more than 2 years after Brown filed her charge of discrimination. Similarly, Brown never filed a charge of discrimination concerning the alleged retaliatory conduct. Cole never filed a charge of discrimination concerning the alleged retaliatory conduct or transfers, and his charge mentions nothing of micromanaging, including his allegations

concerning hours, travel requests and scrutiny. Each of these allegedly unlawful acts occurred more than 300 days ago, and are thus barred by the statute of limitations set forth in Title VII.

**17. The Plaintiffs Failed To Comply With Jurisdictional And Procedural Prerequisites Under Title VII To Bring This Action**

Numerous of the Plaintiffs' claims were not encompassed within the scope of their charge of discrimination. Brown's allegations concerning the Program Manager position and transfers, and Cole's allegations concerning retaliation, transfers and micromanagement cannot be pursued. The alleged unlawful practices identified in the charges, and the alleged unlawful practices identified in the Complaints, are sufficiently different such that Plaintiffs' failure to exhaust their administrative remedies precludes them from pursuing these claims. Courts refuse to expand the Complaint to include specific discriminatory practices not alleged in the charges. For example, Courts dismiss complaints that allege age and race discrimination in promotion and leave policies when the charge alleged only a hostile work environment claim. See *Wilson v. Kansas Department of Administration*, 45 FEP 1481, 1481 (D. Kan. 1986). When the subject of an EEOC charge is discriminatory discharge, Courts preclude a plaintiff from proceeding with a broad based attack on employment practices generally. *See e.g,. Conrad v. Amp, Inc.*, 20 FEP 905 (M.D.N.C. 1979). Generally, an expanded Complaint is disallowed unless the Complaint rises on the same facts as are set forth in the charge. *See e.g., Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1279-1280 (5th Cir. 1994).

The Complaint and the charges arise out of different facts. The issue with respect to the Program Manager position concerning Brown had nothing to do with the charge of discrimination filed more than 2 years beforehand. Similarly, Cole's allegations concerning the Morris reclassification and the relocation had nothing to do with the subsequent alleged scrutiny of his supervisor, denied transfers and the requirement he adhere to College policy. These

claims cannot be pursued. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970 ); *see also Gonzalez v. National R.R. Passenger Corp.*, 49 FEP 1135, 1135 (E.D. PA 1989); *see also Duffy v. Southeastern PA Transp. Co.*, 67 FEP 1797, 1797 (E.D. PA 1995); *see also Sandom v. Travelers Mortgage Services*, 752 F. Supp. 1240, 1247-1248 (D. NJ 1990).

**THE COLLEGE'S THEORY OF DAMAGES IN THE EVENT LIABILITY IS ESTABLISHED**

Plaintiffs' claims for punitive damages are barred because the College has made good faith efforts to comply with anti-discrimination laws at all times and has adopted, publicized and enforced policies against the type of discrimination alleged in the Complaint.

**THE DEFENDANT'S THEORY OF MOTIONS FOR DIRECTED VERDICT**

The College anticipates making the following motions for a directed verdict for the following reasons:

On the issue of the relocation being discriminatory, because the office relocation was not adverse employment action, and because the College had a proper business purpose to relocate the UBMS program to Room 408.

On the issue of Morris' reclassification, Cole was not subject to adverse employment action when Morris was reclassified, and the College had a proper business purpose for the reclassification because Cole could not have worked the required hours and the College could not have known Cole wanted to perform the additional duties.

On the micromanagement issue, the plaintiffs were not subjected to adverse employment action through scrutiny of , because the College had a proper business purpose to require the Plaintiffs to comply with College policies. Cole failed to exhaust his administrative remedies by filing a charge of discrimination on this issue.

On the issue of Andrea Coleman receiving the Program Manager position, Coleman was more qualified than Brown, and is a member of the same protected class. Brown failed to exhaust her administrative remedies by filing a charge of discrimination on this issue.

On the issue of transfers, neither Plaintiff requested a transfer, and they failed to exhaust their administrative remedies by filing a charge of discrimination on this issue.

On each issue above, the College also may move for a directed verdict on grounds there is no evidence of pretext.

On the issue that certain plaintiffs' claims are barred by the applicable statute of limitations.

MORRIS JAMES LLP

David H. Williams

David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III (#4284)
jmcmackin@morrisjames.com
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801
(302) 888-6900/5849
Attorneys for Defendant

Dated: August 31, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KENNETH COLE, BRIGITTE L. BROWN, Plaintiffs, | ) | |
| v. | ) | C. A. No. 05-270 GMS |
| DELAWARE TECHNICAL AND COMMUNITY COLLEGE, Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I, David H. Williams, hereby certify that on August 31, 2007, I served two copies of **DEFENDANT'S TRIAL BRIEF** by hand delivery on the following counsel:

Herbert W. Mondros, Esquire
Margolis Edelstein
750 S. Madison Street, Suite 102
Wilmington, DE 19801

MORRIS JAMES LLP

[signature]

David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III, Esquire
jmcmackin@morrisjames.com
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900/5849
Attorneys for Defendant

Dated: August 31, 2007